## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIAM R. PESKIN; MARK PERKINS; KENNETH L. KLAER; and MARIE R. KLAER, on behalf of themselves and all other similarly situated, | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | **CASE NO. 1:21-cv-00002-SCJ** |
| v. | ) ) | |
| PEACHTREE INVESTMENT SOLUTIONS, LLC, et al., | ) ) ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS FIRST AMENDED COMPLAINT

David R. Deary (*pro hac vice*)
W. Ralph Canada, Jr. (*pro hac vice*)
Jeven R. Sloan (GA Bar No. 652727)
Wilson E. Wray (*pro hac vice*)
John W. McKenzie (*pro hac vice*)
Donna Lee (*pro hac vice*)
Tyler M. Simpson (*pro hac vice*)
**LOEWINSOHN DEARY SIMON RAY LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
(214) 572-1700 Telephone
(214) 572-1717 Facsimile
davidd@ldsraw.com
ralphc@ldsrlaw.com
jevens@ldsrlaw.com
wilsonw@ldsrlaw.com
johnm@ldsrlaw.com
donnal@ldsrlaw.com
tylers@ldsrlaw.com

Edward J. Rappaport
(GA Bar No. 594841)
**THE SAYLOR LAW FIRM LLP**
1201 W. Peachtree Street
Suite 3220
Atlanta, GA 30309
(404) 892-4400 Telephone
erappaport@saylorlaw.com

*ATTORNEYS FOR PLAINTIFFS*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... iii

I.      INTRODUCTION ..........................................................................1

II.     LEGAL STANDARD .....................................................................2

III.    ARGUMENT....................................................................................3

      A.     The alleged disclaimers do not negate justifiable reliance. .................3

          1.      Defendants' documents are incomplete and disputed. ..............3

          2.      There are numerous factual issues that preclude dismissal based on the alleged disclaimers.................................................4

          3.      Defendants have not made a showing that the benefit of any disclaimers extends to them. ...............................................7

      B.     Plaintiffs have properly pleaded a claim for rescission. ......................8

          1.      Plaintiffs have satisfied the promptness requirement. ...............8

          2.      Plaintiffs are not required to tender back any consideration. ..........................................................................13

          3.      Defendants' privity argument should be rejected....................14

      C.     Plaintiffs pleaded their fraud-based allegations with particularity. .......................................................................................15

          1.      Rule 9(b) applies to only certain of Plaintiffs' claims..............15

          2.      For the claims requiring particularity, Plaintiffs have met the Rule 9(b) standard. ............................................................17

      D.     Plaintiffs state claims for substantive RICO violations as well as RICO conspiracy under both state and federal law. ......................22

          1.      Plaintiffs adequately allege a RICO enterprise.........................22

          2.      Plaintiffs adequately allege RICO predicate acts. ...................27

          3.      Plaintiffs have adequately alleged a RICO conspiracy............30

E.   Defendants' other reasons are not grounds to dismiss the RICO claims.................................................................32

    1.   Plaintiffs' federal RICO claims are not barred by the PSLRA. ...............................................................32

    2.   Defendants conducted the enterprise's affairs. .........................35

F.   Plaintiffs have sufficiently pleaded their breach of fiduciary duty and aiding and abetting claims.....................................37

G.   The Court should not dismiss Plaintiffs' civil conspiracy claim. .......40

H.   Plaintiffs' state law claims are timely. ................................................42

    1.   Defendants assert an incorrect accrual date.............................43

    2.   The limitations period for Plaintiffs' claims were tolled..........46

I.   Plaintiffs' claims are not barred by the rulings of the Tax Court and Plaintiffs claims are ripe.............................................................48

IV.   CONCLUSION...................................................................................................50

CERTIFICATE OF COMPLIANCE.................................................................................52

CERTIFICATE OF SERVICE .........................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler & Drobny, Ltd. v. United States*,
  9 F.3d 627 (7th Cir. 1993) ...............................................................................39

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017) .......................................................................23

*Am. Family Life Assur. Co. of Columbus v. Invervoice, Inc.*,
  659 F. Supp. 2d 1271 (M.D. Ga. 2009) ..................................................10, 13, 14

*Amstead v. McFarland*,
  287 Ga. App. 135 (2007) .................................................................................43

*In re Arby's Rest. Grp. Inc. Litig.*,
  317 F. Supp. 3d 1222 (N.D. Ga. 2018)................................................................2

*Armstrong v. Cuffie*,
  860 S.E.2d 504 (Ga. 2021) ....................................................................43, 44, 45

*Atlanta Mkt. Ctr. Mgmt., Co.v. McLane*,
  296 GA. 604 (1998) ........................................................................................39

*Avrahami v. Clark*,
  CV-19-04631, 2020 WL 2319922 (D. Ariz. May 8, 2020)................................36

*Bibb County Sch. Dist. v. Dallemand*,
  No. 5:16-CV-549, 2019 WL 1519301 (M.D. Ga. Apr. 8, 2019).......................23

*Bocciolone v. Solowsky*,
  No. 08-20200-CIV, 2009 WL 936667 (S.D. Fla. Apr. 6, 2009) .......................36

*Boyle v. United States*,
  556 U.S. 938 (2009)...................................................................................22, 27

*Burgess v. Religious Tech. Ctr., Inc.*,
  600 F. App'x 657 (11th Cir. 2015)...................................................................27

*Cameron v. Montgomery*,
  225 N.W.2d 154 (Iowa 1975) ..........................................................................44

*Cardenas v. Toyota Motor Corp.*,
   418 F. Supp. 3d 1090 (S.D. Fla. 2019) ...............................................16

*Carolina Casualty Ins. Co. v. Alavi*,
   No. 1:10-CV-0750-CAP, 2012 WL 13001889 (N.D. Ga. Sept. 26,
   2012) .....................................................................................................10

*Cervantes v. Invesco Holding Co. (US), Inc.*,
   No 1:18-cv-2551, 2019 WL 5067202 (N.D. Ga. Sept. 25, 2019) .....................43

*Chisholm v. Scott*,
   86 N.M. 707 (N.M. App. 1974) ...........................................................44

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ...........................................................24

*Clark v. Deloitte & Touche LLP*,
   34 P.3d 209 (Utah 2001) .....................................................................44

*Cline v. St. Jude Med., Inc.*,
   No. 1:13-cv-2628, 2013 WL 12067482 (N.D. Ga. Oct. 31, 2013) ...................21

*Coe v. Proskauer, LLP*,
   360 Ga. App. 68 (2021) ........................................................44, 45, 47

*Coface N.A. Ins. Co. v. Davis*,
   No. 1:19-cv-0242-AT, 2019 WL 7831142 (N.D. Ga. June 21,
   2019) .....................................................................................................41

*Coulter v. Grant Thornton, LLP*,
   388 P.3d 834 (Ariz. Ct. App. 2017) .....................................................44

*Crosby v. Kendall*,
   247 Ga. App. 843 (2001) .....................................................................42

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) .............................................................2

*Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*,
   816 F. Supp. 2d 1308 (M.D. Ga. 2011) .........................................10, 14

*United States ex rel. Dildine v. Pandya*,
   389 F. Supp. 3d 1214 (N.D. Ga. 2019).............................................16, 47

*Diverse Power, Inc., v. City of LaGrange, GA*,
No. 3:17-cv-3-TCB, 2018 WL 9651475 (N.D. Ga. Feb. 21, 2018) ...................41

*Fed. Deposit Ins. Corp. v. Loudermilk*,
305 Ga. 558 (2019) ..........................................................................................42

*Feldman v. Granger*,
255 Md. 288 (1969) ..........................................................................................44

*Goldston v. Bank of Am. Corp.*,
259 Ga. App. 690 (2003) ..................................................................................46

*Greenwald v. Odom*,
314 Ga. App. 46 (2012) ....................................................................................21

*Hamburger v. PFM Cap. Mgmt., Inc.*,
286 Ga. App. 382 (2007) ..................................................................................42

*Handeen v. Lemaire*,
112 F.3d 1339 (8th Cir. 1997) ..........................................................................35

*Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*,
267 Ga. 424 (1997) ...........................................................................................42

*Hill v. BellSouth Corp.*,
313 F. Supp. 2d 1361 (N.D. Ga. 2004).............................................................38

*Hill v. Morehouse Med. Assocs., Inc.*,
No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003).........................17

*Holloman v. D.R. Horton, Inc.*,
251 Ga. App. 141 (1999) ..................................................................................12

*Hoover v. Gregory*,
835 S.W.2d 668 (Tex. App. 1992).....................................................................44

*HPC US Fund 1, L.P. v. Wood*,
0:13-CV-61825, 2014 WL 12496558 (S.D. Fla. June 11, 2014) ......................16

*Int'l Bhd. of Teamsters v. Daniel*,
439 U.S. 551 (1979)...........................................................................................33

*Int'l Engine Parts, Inc. v. Feddersen & Co.*,
   9 Cal. 4th 606 (1995) ............................................................45

*Intelligent Inv. Int'l LLC v. Fu*,
   No. 1:17-cv-5296, 2019 WL 1281204 (N.D. Ga. Mar. 20, 2019)....................33

*J.P. Carey Enters., Inc. v. Cuentas, Inc.*,
   No. A21A0703, 2021 WL 4738600 (N.D. Ga. Oct. 12, 2021) ..........................13

*Jankowski v. Taylor, Bishop & Lee*,
   246 Ga. 804 (1980) ................................................................43

*Johnson v. Proskauer Rose LLP*,
   129 A.D.3d 59 (N.Y. App. Div. 2015) ...............................................5

*Jones v. Deutsche Bank AG*,
   C 04-05357 JW, 2005 WL 1683614 (N.D. Cal. July 19, 2005)........................36

*Jones, Day, Reavis & Pogue v. Am. Envirecycle, Inc.*,
   217 Ga. App. 80 (1995) ...........................................................42

*K.T. v. Royal Caribbean Cruises, Ltd.*,
   931 F.3d 1041 (11th Cir. 2019) ....................................................2

*Khan v. Deutsche Bank AG*,
   978 N.E.2d 1020 (Ill. 2012) ......................................................44

*Klopfenstein v. Deutsche Bank Sec., Inc.*,
   592 F. App'x 812 (11th Cir. 2014)................................................46

*Kothari v. Patel*,
   262 Ga. App. 168 (2003) ..........................................................42

*Lechter v. Aprio. LLP*,
   No. 1:20-cv-1325-AT, 2021 WL 4564816 (N.D. Ga. Sept. 30,
   2021) ......................................................................*passim*

*Leibel v. Johnson*,
   291 Ga. 180 (2012) ...............................................................44

*Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*,
   741 F. App'x 612 (11th Cir. 2018)................................................42

*Mauldin v. Weinstock*,
   201 Ga. App. 514 (1991) ....................................................................43

*Megel v. Donaldson*,
   288 Ga. App. 510 (2007) ...................................................................12

*Menzies v. Seyfarth Shaw LLP*,
   943 F.3d 328 (7th Cir. 2019) .............................................................34

*Mills v. Garlow*,
   768 P.2d 554 (Wyo. 1989)..................................................................44

*Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*,
   288 Ga. 236 (2010) ............................................................................42

*Newmyer v. Philatelic Leasing, Ltd.*,
   888 F.2d 385 (6th Cir. 1989) .............................................................33

*Novare Grp., Inc. v. Sarif*,
   290 Ga. 186 (2011) ............................................................................10

*Ouwinga v. Benistar 419 Plan Servs., Inc.*,
   694 F.3d 783 (6th Cir.) ...................................................4, 23, 24, 34

*Partner Servs., Inc. v. Avanade, Inc.*,
   No. 1:13-cv-1, 2013 WL 12180442 (N.D. Ga. Aug. 26, 2013) ...................9, 11

*In the Matter of Paul Edward Ed Lloyd, Jr., CPA*,
   Release No. 2366 (Feb. 27, 2015) .....................................................33

*Payne v. Doco Credit Union*,
   734 F. App'x 623 (11th Cir. 2018) ....................................................10

*Peat, Marwick, Mitchell & Co. v. Lane*,
   565 So.2d 1323 (Fla.1990) ................................................................44

*Pullar v. Gen. MD Grp.*,
   No. 1:12–CV–4063–TWT, 2013 WL 5284684 (N.D. Ga. Sept. 17,
   2013) ...................................................................................................42

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
   No. 1:12-CV-0258-WSD, 2012 WL 3065419 (N.D. Ga. July 27,
   2012) .............................................................................................22, 50

*R.W. Holdco, Inc. v. Johnson*,
  267 Ga. App. 859 (2004) ..................................................................12

*Raysoni v. Payless Auto Deals, LLC*,
  296 Ga. 156 (Ga. 2014) ................................................................4, 5

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)....................................................................35, 36

*Roche Diagnostics v. Priority Heathcare Corp.*,
  407 F. Supp. 3d 1216 (N.D. Ala. 2019)............................................23

*Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*,
  181 F. Supp. 3d 1161 (N.D. Ga. 2016), *rev'd and remanded on
  other grounds sub nom. Rowe v. Gary*, 703 F. App'x 777 (11th Cir.
  2017) ................................................................................................16

*S.E.C. v. W.J. Howey Co.*,
  328 U.S. 293 (1946)..........................................................................33

*Schmuck v. United States*,
  489 U.S. 705 (1989)..........................................................................29

*See Textile Rubber & Chem. Co., Inc. v. Thermo-Flex Techs.*,
  Inc., 308 Ga. App. 89 (2011) .............................................................7

*Shea v. Best Buy Homes, LLC*,
  No. 1:20-CV-02387-SCJ, 2021 WL 3087661 (N.D. Ga., Mar. 30,
  2021) ................................................................................................16

*Snipes v. Jackson*,
  316 S.E.2d 657 (N.C. App. 1984)......................................................44

*Thomas v. Cleary*,
  768 P.2d 1090 (Alaska 1989) ...........................................................44

*Thomas v. Grant Thornton LLP*,
  478 S.W.3d 440 (Mo. Ct. App. 2015) ...............................................44

*Thomas v. United States*,
  No. 88-0529C6, 1990 WL 61957 (E.D. Mo. Mar. 12, 1990)............34

*TOT Prop. Holdings, LLC v. Comm'r of Internal Revenue*,
No. 5600-17, 2019 WL 11880554 (T.C. Nov. 22, 2019) ...................................49

*TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*,
716 F. Supp. 2d 1275 (N.D. Ga. 2010)................................................................40

*Tri-State Consumer Ins. Co., Inc. v. LexisNexis Risk Sols., Inc.*,
823 F. Supp. 2d 1306 (N.D. Ga. 2011)................................................................12

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
717 F. Supp. 1565 (N.D. Ga. 1989)....................................................................21

*United States v. Browne*,
505 F.3d 1229 (11th Cir. 2007) ...................................................................31, 35

*United States v. Church*,
955 F.2d 688 (11th Cir. 1992) ............................................................................31

*United States v. Elliott*,
571 F.2d 880 (5th Cir. 1978) ..............................................................................23

*United States v. Silvestri*,
409 F.3d 1311 (11th Cir. 2005) ..........................................................................31

*United States v. Zaslavskiy*,
No. 17-cr-647, 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) ..........................34

*Wender & Roberts, Inc. v. Wender*,
238 Ga. App. 355 (1999) ...............................................................................9, 10

*Westlake v. Abrams*,
504 F. Supp. 337 (N.D. Ga. 1980)......................................................................34

*Wilchombe v. TeeVee Toons, Inc.*,
555 F.3d 949 (11th Cir. 2009) ............................................................................40

*Williams v. Fouche*,
157 Ga. 227 (1924) .............................................................................................10

*Williams v. Mohawk Indus.*,
465 F.3d 1277 (11th Cir. 2006) ..........................................................................22

*Yarbrough v. Kirkland*,
    249 Ga. App. 523 (2001) ..................................................................40

**Statutes**

I.R.C. § 6227(a)(2) ..........................................................................14

18 U.S. Code § 1962(c) .....................................................................35

18 U.S. Code § 1962(d) .....................................................................31

O.C.G.A. § 9-3-24 .............................................................................42

O.C.G.A. § 9-3-25 .............................................................................42

O.C.G.A. § 9-3-31 .............................................................................42

O.C.G.A. § 13-4-60 .........................................................................9, 10

O.C.G.A. § 16-14-4(a) ....................................................................22, 35

O.C.G.A. § 16-14-4(b) ....................................................................22, 35

O.C.G.A. § 23-2-58 .........................................................................21, 39

O.C.G.A. § 51-1-8 ...........................................................................43, 45

Private Securities Litigation Reform Act of 1995 (PSLRA) ...................32

Racketeer Influenced and Corrupt Organization Act (RICO) ...........*passim*

**Other Authorities**

AM. Crim. L. Rev. 1379, 1405-06 (2019) ..............................................33

Fed. R. Civ. P. 8 .................................................................................16

Fed. R. Civ. P. 8(c) .............................................................................42

Fed. R. Civ. P. 9 .......................................................................16, 27, 28

Fed. R. Civ. P. 9(b) .............................................................15, 16, 17, 38

Fed. R. Civ. P. 12(b)(6) .....................................................................2, 40

Fed. R. Civ. P. 15(a)(2) ........................................................................... 15

14 Ga. Jur. § 17:12 ................................................................................. 21

Julia Dimitriadis et. al., *Securities Fraud* ............................................. 33

## I.    INTRODUCTION

Plaintiffs' First Amended Class Action Complaint (Dkt. 105) ("FAC") alleges that Defendants were part of a fraudulent conspiracy to sell Plaintiffs and other participants interests in SCE Strategy transactions that promised both benefits to the environment and considerable tax deductions to the participants.  To perpetrate their scheme, *inter alia*, Defendants made promises about deductions that they knew could not withstand IRS scrutiny, claimed conservation purposes that were dubious or false, provided legal opinions that contained false statements and omissions of law and fact, and prepared Appraisal Summaries required by the IRS that purposely omitted required information about the acquisition date and purchase price of the properties that would have been sure to cause the IRS to scrutinize and disallow the deductions Defendants promised.  Most central, the Defendants used inflated and fraudulent appraisals to value the donated easements at many multiples of the amounts paid for the properties, which in some cases had been acquired just weeks before the appraisals.  Defendants hid these and other facts from the Plaintiffs.

Defendants' Joint Memorandum of Law In Support of Defendants' Motion to Dismiss First Amended Complaint (Dkt. 112-1) ("Motion" or "Mot.") reaches outside of the FAC to cite to documents and purported facts (or to offer purported facts with no cite) that are inappropriate on a motion to dismiss.  And the Motion argues and asks the Court to make inferences in favor of Defendants rather than in

favor of Plaintiffs as required.  But most frequently of all, the Motion cites sentences or paragraphs in the FAC in isolation while failing to acknowledge extensive allegations regarding fraud, RICO, conspiracy, and other subjects that are also in the FAC.  The Court should deny the Motion.

## II.   LEGAL STANDARD

A court must accept the allegations supporting a claim as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in plaintiff's claim.  *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019).  "A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a 'plausible' claim for relief."  *In re Arby's Rest. Grp. Inc. Litig.*, 317 F. Supp. 3d 1222, 1223 (N.D. Ga. 2018).  "The plausibility standard requires that a plaintiff allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that supports the plaintiff's claim."  *Id*. at 1224.  "A complaint may survive a motion to dismiss for failure to state a claim even if it is improbable that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely remote and unlikely."  *Id*.  "[T]he threshold is 'exceedingly low' for a complaint to survive a motion to dismiss for failure to state a claim."  *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).

## III.   ARGUMENT

### A.   The alleged disclaimers do not negate justifiable reliance.

Defendants argue that alleged disclaimers in documents to which Defendants are not parties negate Plaintiff's justifiable reliance as a matter of law.  Defendants are incorrect for three reasons.  First, as further discussed in Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence ("Motion to Exclude"), this Court should not consider these documents in ruling on a 12(b)(6) motion to dismiss based *inter alia* on the fact that they are incomplete and inadmissible.  Second, as Judge Totenberg held under similar facts in the similar action *Lechter v. Aprio, LLP*, there are "lingering factual questions" that defeat Defendants' disclaimer argument at the pleadings stage.  *Lechter v. Aprio. LLP*, No. 1:20-cv-1325-AT, 2021 WL 4564816, *27 (N.D. Ga. Sept. 30, 2021).  Third, none of the Defendants are parties to or third-party beneficiaries of any of the agreements on which they seek to rely and any disclaimers, even if valid, expressly flow only to the non-party Syndicate.

#### 1.   Defendants' documents are incomplete and disputed.

Defendants rely on the following language in the Subscription Agreement for each Syndicate: "Purchaser hereby acknowledges, represents and warrants to the [Syndicate that] … [Purchaser is] not relying upon any representation or warranty of the [Syndicate], or of anyone acting or purporting to act on its behalf."  *See* Subscriptions Agreements at Par. G(2).  However, the same Section of the Subscription Agreements states that the Syndicates "made available to Purchaser the

material and information listed on **Exhibit B** to this Subscription Agreement" and this "material and information" is referred to as the "Disclosure Material." *Id.* at Par. G(1) (emphasis in original). Notably absent from Defendants' submission is this Disclosure Material, which contains the very information provided to Plaintiffs in connection with the promotion of the SCE Strategy. Defendants cannot prevail on a motion to dismiss by relying on an incomplete document whose validity is in question. *See Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir.). This is particularly unfair when, as here, the missing portion of the documents identifies the very information Defendants claim they did not provide Plaintiffs.

Although not mentioned in their "disclaimer" section, Defendants also suggest in their fraud section that certain disclaimers contained in the Private Placement Memorandums for the Syndicates (the "PPMs") also disclaim reliance as a matter of law. Mot. at 31, 33 (citing to Exhibits B and C of Motion). However, the PPMs submitted by Defendants are also incomplete and do not contain many of the exhibits that are referenced in the PPMs.

### 2. There are numerous factual issues that preclude dismissal based on the alleged disclaimers.

"Whether it was reasonable for one to rely upon a certain misrepresentation is generally a question for a jury…." *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156, 158-60 (Ga. 2014). Reliance arguments based on limited, partial, unclear, or contradictory disclaimers are not "question[s] that courts should answer as a matter

of law on the bare pleadings." *Id.* at 160.  And where, as here, the defendants are fiduciaries with superior knowledge of the law and tax code, the defendant's burden to provide clear and unambiguous warnings is higher still.  *Johnson v. Proskauer Rose LLP*, 129 A.D.3d 59, 72 (N.Y. App. Div. 2015).

There are numerous factual questions raised by the Defendants' disclaimer argument that preclude a dismissal under 12(b)(6).  In addition to the Disclosure Material described above, the Subscription Agreements on which Defendants rely expressly acknowledge that the Syndicates also made available to each of the Plaintiffs "information relating to certain federal income tax aspects of an investment in the [Syndicate] and the likely income tax treatment to be accorded an investment in the [Syndicate]."  Subscription Agreements at G.5.  While this paragraph also states that Plaintiffs consulted their own counsel and other advisors regarding the tax consequences of investing in the Syndicate, it does not in any way say that the Defendants did not themselves provide tax advice.  Disclaimers that are contradicted by other language contained in the very same document do not justify dismissal on a 12(b)(6) motion.  *See Raysoni*, 296 Ga. at 158-160.

The same is true of the PPMs referenced in the fraud section of the Motion. In Georgia, general disclaimers warning the parties to seek their own counsel or partial disclaimers of only some material risks do not negate reliance as a matter of law.  They instead present fact questions for the jury.  *See Raysoni*, 296 Ga. at 158-

60 (numerous disclaimers in car sales contract including "WE STRONGLY RECOMMEND CUSTOMERS SHOULD GET VEHICLE INSPECTED BY A MECHANIC OF THEIR CHOICE BEFORE MAKING THE PURCHASE" did not negate reliance at the pleadings stage).

The so-called disclaimers contained in the Subscription Agreements and PPMs, at best, equivocally point out certain risks and suggest that investors discuss the tax consequences with their tax advisor or CPA.[1]  They do not, however, disclose that Defendants *knew* the deductions would be disallowed if scrutinized by the IRS. The scheme to defraud here was not intended to simply hide the risks of an audit or deduction disallowance.  Instead, Plaintiffs allege that Defendants marketed and sold the SCE Strategy to Plaintiffs knowing that it was fatally flawed and would not survive IRS scrutiny.  *See, e.g.,* FAC ¶¶ 10, 169,171-203.

Notably, Judge Totenberg rejected the defendants' identical disclaimer argument in *Lechter.*  Like the Defendants here, the *Lechter* defendants argued that disclaiming language in promotional materials prevented plaintiffs from satisfying the element of reliance as a matter of law.  Judge Totenberg considered the following allegations in concluding that "there are factual questions as to whether Plaintiffs viewed any of Defendants as their own tax advisors":[2]

---

[1] It is unclear whether "tax advisor or CPA" includes one or more of the Defendants who acted in this role or if it means a separate, independent advisor or CPA.
[2] *Lechter,* 2021 WL 4564816, at *26.

- The allegation that plaintiffs decided to invest in the Syndicates based not only on the written representations contained in the materials containing the purported disclaimers, "but also based on the advice and representations they separately received from Defendants;"[3] and

- The allegation that, as a result of the defendants' misrepresentation and omissions, plaintiffs had to hire "new tax and legal advisors to rectify the situation" (thus implying that defendants were the "old" tax and legal advisors).[4]

Judge Totenberg concluded that these allegations "raise a plausible inference that Plaintiffs viewed Defendants as their own tax advisors." *Lechter,* 2021 WL 4564816, *26; *accord id.* at *27 ("There is a least a question of fact as to whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations and omissions, *notwithstanding the presence of disclaimers*….") (emphasis added).

### 3. Defendants have not made a showing that the benefit of any disclaimers extends to them.

Defendants have also failed to demonstrate that the benefit of any disclaimers flow to any of the Defendants, none of whom are actually parties to the Subscription Agreements or PPMs. In Georgia, a non-signatory cannot invoke disclaimer language to dispose of a fraud claim as a matter of law unless they prove that they are third-party beneficiaries of the agreement. *See Textile Rubber & Chem. Co., Inc. v. Thermo-Flex Techs., Inc.*, 308 Ga. App. 89, 96 (2011).

---

[3] *Id.* at *26-27. This allegation is also made here. *See, e.g.*, FAC ¶¶ 94, 129.
[4] *Lechter,* 2021 WL 4564816, at *26. This allegation is also made here. *See, e.g.*, FAC ¶¶ 362-63.

Although Defendants note that the Subscription Agreements say Plaintiffs are not relying on representations made by the Syndicate "or anyone acting or purporting to act on its behalf," (Mot. at 25) they fail to quote the most important language from the Subscription Agreements that expressly identifies to whom the benefit of the purported disclaimers flow.   The opening sentence of paragraph G of that Agreement, which modifies the entire disclaimer clause on which Defendants rely, states: "Purchaser hereby acknowledges, represents and warrants *to the [Syndicate]*...." (emphasis added).   Based on this express language, it is clear the parties to the Subscription Agreements did not intend for any of the Defendants to be third-party beneficiaries of the representations and warranties contained in the Subscription Agreements.   The Defendants also make no attempt at all to show they are third-party beneficiaries of any disclaiming language contained in the PPM.

## B.   Plaintiffs have properly pleaded a claim for rescission.

Defendants argue that Plaintiffs' rescission claim should be dismissed based on Plaintiffs' (1) purported failure to timely announce their intention to rescind, (2) purported failure to tender back any consideration received under the contracts in question, and (3) lack of privity with Defendants.   Defendants are incorrect.

### 1.   Plaintiffs have satisfied the promptness requirement.

With respect to the timeliness of the rescission claim, Defendants advance a bright-line rule that a rescission claim first raised in a lawsuit cannot be considered

timely "under any circumstances."  Mot. at 27.  In support of this, Defendants cite

to *Partner Servs., Inc. v. Avanade, Inc.*, No. 1:13-cv-1, 2013 WL 12180442, at *4

(N.D. Ga. Aug. 26, 2013), in which this Court found no precedent for a party to "be

relieved of its obligation to announce its intention to rescind."  *Id.* at *4 (cited in

Mot. at 26).  However, this argument misconstrues the basis for Plaintiffs' allegation

that they had no duty to rescind before filing this lawsuit.  Under the facts of this

case, raising the rescission claim in the FAC satisfied the promptness requirement—

as opposed to a contention that an untimely announcement was somehow excused

(which is the subject matter of the holding in *Partner Servs.*).[5]

Moreover, the conclusion in *Partner Servs.* that failing to announce an

intention to rescind prior to filing a lawsuit violates the timeliness requirement as a

matter of law is, respectfully, at odds with the relevant Georgia statute, as well as

caselaw construing this statute from Georgia, this Court, and the Eleventh Circuit.

Georgia law does not require an announcement prior to filing suit, but rather that the

rescinding party do so "promptly, upon discovery of the fraud."  O.C.G.A. § 13-4-

60.  In construing this promptness requirement, the Georgia Court of Appeals has

held that "*[a]s a general rule*, rescission must occur prior to, and as a condition

precedent to, the bringing of an action."  *Wender & Roberts, Inc. v. Wender*, 238 Ga.

---

[5] *See Partner Servs.*, 2013 WL 12180442, at *4 (plaintiff argued that its requirement
to promptly announce its intention to rescind was "excused").

App. 355, 361 (1999) (emphasis added); *see also Am. Family Life Assur. Co. of Columbus v. Invervoice, Inc.*, 659 F. Supp. 2d 1271, 1281 (M.D. Ga. 2009) ("*Generally*, an attempt to seek rescission contemporaneously with the filing of a lawsuit is insufficiently prompt under Georgia law") (emphasis added). A "general rule" is not an absolute bar and, in fact, the court in *Wender* looked at the facts of the case to determine whether there was a "basis for departing from this rule." 238 Ga. App. at 361. Moreover, there is precedent from this District and other Georgia courts for finding that the promptness requirement of O.C.G.A. § 13-4-60 can be satisfied when rescission is raised for the first time with the filing of a lawsuit. *E.g., Carolina Casualty Ins. Co. v. Alavi*, No. 1:10-CV-0750-CAP, 2012 WL 13001889, *8 (N.D. Ga. Sept. 26, 2012); *Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, 816 F. Supp. 2d 1308, 1320-22 (M.D. Ga. 2011).

That there are exceptions to this "general" rule is made even more apparent by examining the *Sarif* case cited by Defendants. *See Novare Grp., Inc. v. Sarif*, 290 Ga. 186 (2011) (cited in Mot. at 27). In *Sarif*, the Georgia Supreme Court cited its prior decision in *Williams v. Fouche*, 157 Ga. 227 (1924) for the rule that rescission must be raised prior to filing a lawsuit. *Id.* at 188. However, *Williams* expressly held that '[t]here are exceptions to this general rule based upon equitable reasons." 157 Ga. At 227; *see also Payne v. Doco Credit Union*, 734 F. App'x 623, 626 (11th

Cir. 2018) ("The promptness inquiry is not mechanical").  As explained below, there are equitable reasons in the instant case for a departure from the general rule.

Plaintiffs filed their Original Complaint on January 2, 2021, and did not assert a claim for rescission.  Doc. 1.  On June 30, 2021, the Defendants filed their Motion to Dismiss and argued for the first time that certain claims were barred by purported disclaimers contained in agreements between Plaintiffs *and certain non-parties* (*i.e.*, the Syndicates).  Dkt. 97-1 at 33-37.  Upon discovering Defendants were seeking to rely on purported disclaimers contained in agreements to which Defendants were not even a party, Plaintiffs filed the FAC *just three weeks later* on July 21, 2021, and raised their rescission claim.  For Plaintiffs to have announced their intention to rescind prior to commencing this lawsuit would have required Plaintiffs to be clairvoyant and predict that Defendants would invoke provisions from an agreement to which they were not parties.

Moreover, the purpose of the prompt announcement requirement is to "ensure[] that when a party abandons a contract and seeks rescission, the other party is not left with the mistaken belief that it is still bound by the agreement."  *Partner Servs.*, 2013 WL 12180422, at * 4.  This purpose is not served where, as here, it is a non-party to the agreement seeking to challenge the promptness of the announcement.  Neither are Plaintiffs here trying to 'have [their] cake and eat it, too," as the Georgia Court of Appeals warned in *R.W. Holdco, Inc. v. Johnson*, 267

Ga. App. 859, 871 (2004).  Plaintiffs have not sued for breach of any of the agreements.

The cases cited by Defendants at pages 27-28 of their Motion for the proposition that Plaintiffs are also precluded from raising a rescission claim because it was not raised in the Original Complaint do not change the result.  In two of these cases, the plaintiff brought a breach of contract claim in the original complaint and then sought to add a rescission claim in the amended complaint.  *See, e.g.*, *Tri-State Consumer Ins. Co., Inc. v. LexisNexis Risk Sols., Inc.*, 823 F. Supp. 2d 1306, 1321 (N.D. Ga. 2011) ("A claim for breach of contract unaccompanied by a claim for rescission is an affirmation of the contract"); *Megel v. Donaldson*, 288 Ga. App. 510, 515 (2007) ("The record in this case shows that [plaintiff] chose…[to file] her complaint seeking damages for…breach of contract…").  As noted above, Plaintiffs are not bringing a breach of contract claim on the same contract they seek to rescind and have not otherwise affirmed this contract.

In the third case, the Court "carefully examined all the circumstances of the…alleged discovery of the defects in the house, their demand for rescission, their initial complaint, and their conduct after the litigation began" before concluding that a rescission claim was "waived."  *See Holloman v. D.R. Horton, Inc.*, 251 Ga. App. 141, 148 (1999).  Under Georgia law, a waiver is "not favored under the law" and the evidence offered to prove a waiver "must be so clearly indicative of an intent to

relinquish a then known particular right or benefit as to exclude any other reasonable explanation." *J.P. Carey Enters., Inc. v. Cuentas, Inc.*, No. A21A0703, 2021 WL 4738600, *8 (N.D. Ga. Oct. 12, 2021). As explained above, the totality of the circumstances in the instant case at the very least create a fact issue regarding whether recission was timely raised and certainly do not support a finding that Plaintiffs waived a known right or benefit.

### 2. Plaintiffs are not required to tender back any consideration.

Plaintiffs had no duty, on the facts of this case, to offer to restore all consideration before seeking rescission. This is because "Georgia law recognizes an exception … when tender would be inequitable or otherwise unreasonable." *Am. Fam. Life*, 659 F. Supp. 2d at 1281-82. Here, Plaintiffs allege that

> Plaintiffs had no duty to rescind before filing, nor to restore any consideration because it would be unreasonable to require them to do so, if not impossible, given disposition of all of the assets of the PropCos/LLCs and the years of tax returns already filed and under audit.

FAC ¶ 386. Defendants say this is "nonsensical" and not "plausible." Mot. at 28. However, the FAC alleges: (1) the transactions were done years ago, (2) the property on which the contested conservation easement was placed was transferred in its entirety shortly after Plaintiffs' acquired their ownership interests, (3) years of tax returns have been subsequently filed reflecting Plaintiffs' ownership interests and subsequent disposition of the entities owning the properties, and (4) the transaction has been contested by the IRS and that issue is now pending in Tax Court. *See, e.g.*,

13

FAC ¶¶ 94, 105-06, 108, 110-11, 113-21; 129, 135-36, 142-44, 148-49, 151-52, 155-68.  Defendants, for their part, offer the suggestion that Plaintiffs could have returned "their membership interests," but do not state exactly how Plaintiffs could have accomplished this.  Given the transfer of the property years ago, Plaintiffs could not then return their interests other than as a worthless "shell."[6]  Additionally, no matter what Plaintiffs do now, the deductions they took based on Defendants' assurances will remain under contest by the IRS.[7]  And, as some courts have recognized, it is relevant that these difficulties are alleged to be the result of "Defendants' wrongful conduct."  *See, e.g.*, *Denim N. Am. Holdings*, 2011 WL 318127 at *13.  It would thus have been pointless—and unreasonable, if not impossible—for Plaintiffs to have offered return of consideration.  On facts far less labyrinthine, courts have found a fact issue as to whether it is unreasonable or impossible to offer to restore all consideration. *See, e.g., Am. Fam. Life Assur. Co.*, 659 F. Supp. 2d at 1281-82.  At the least, a fact issue is present here, where the transaction cannot be undone, nor the bell of IRS consequences be unrung.

### 3.     Defendants' privity argument should be rejected.

Defendants' privity argument provides a stark illustration of why it would be inequitable to hold that Plaintiffs have somehow waived their rescission claim.

---

[6] *See Am. Fam. Life,* 659 F. Supp. 2d at 1282.

[7] "IRC § 6227(a)(2) (pre-2018) prevents any effort by an individual partner to deviate from the numbers on the K-1s once an FPAA has been issued.

Defendants simultaneously (a) claim that they are absolved of liability based on purported disclaimers contained in agreements to which they are not a party and (b) seek to take advantage of their non-party status by arguing that Plaintiffs are estopped from seeking rescission due to lack of privity.  However, as discussed earlier, under Georgia law, Defendants, as non-signatories to the agreements Plaintiffs seek to rescind, cannot invoke any purported disclaimer language in those documents unless they prove they are third-party beneficiaries of these agreements. Defendants have not done so and thus should not be allowed to argue the disclaimers. If they are permitted, then Plaintiffs should be allowed to join the Syndicates who are parties to the agreements under Fed. R. Civ. P. 15(a)(2).

**C.    Plaintiffs pleaded their fraud-based allegations with particularity.**

**1.    Rule 9(b) applies to only certain of Plaintiffs' claims.**

The Motion asserts that Rule 9(b)'s heightened pleading standard applies to Plaintiffs' claims for federal and Georgia RICO (Counts I-V), common law fraud (Count V), aiding and abetting breaches of fiduciary duty (Count VII), negligent misrepresentation (Count X), rescission (Count XI), and civil conspiracy (Count XII).  Mot. at 29-30.[8]  The Motion is partially correct.

---

[8] The Motion does not assert that Rule 9(b) applies to Plaintiffs' claims for breach of fiduciary duty and disgorgement (Count VI), professional malpractice (Count VIII), and negligence (Count IX).  Mot. 30.

Contrary to the Motion's assertion, Plaintiffs' claim for negligent misrepresentation (Count X) is *not* subject to Rule 9(b). *Shea v. Best Buy Homes, LLC*, No. 1:20-CV-02387-SCJ, 2021 WL 3087661, *10, (N.D. Ga., Mar. 30, 2021).

By its own text, Rule 9(b) only applies in "alleging fraud or mistake," the circumstances of which must be stated with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) specifically does not apply to "intent, knowledge, and other conditions of a person's mind," which "may be alleged generally." *Id.; see also United States ex rel. Dildine v. Pandya*, 389 F. Supp. 3d 1214, 1218 (N.D. Ga. 2019).[9] The RICO elements of enterprise and pattern, as well as RICO conspiracy claims, are not subject to Rule 9. *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1102-03 (S.D. Fla. 2019). And allegations that go to RICO's "operation or management" element need only meet Rule 8's plausibility requirement. *See HPC US Fund 1, L.P. v. Wood*, 0:13-CV-61825, 2014 WL 12496558, *3 (S.D. Fla. June 11, 2014).

Where, as here, Defendants have engaged in fraud that occurred over time or engaged in prolonged, multi-act schemes, "Rule 9(b)'s heightened pleading requirement also may be applied less stringently," and plaintiffs may plead the overall nature of the fraud and provide representative examples of the defendant's

---

[9] "A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*, 181 F. Supp. 3d 1161, 1190 (N.D. Ga. 2016), *rev'd and remanded on other grounds sub nom. Rowe v. Gary*, 703 F. App'x 777 (11th Cir. 2017).

16

fraud. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *5 n. 6 (11th Cir. Aug. 15, 2003). The 9(b) standard also may be applied "less stringently," when "specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control." *Id.* (alterations in original). "In that instance, the plaintiff may plead based upon information and belief, provided that she accompanies her legal theory with factual allegations that make [her] theoretically viable claim plausible." *Id.*

### 2.  For the claims requiring particularity, Plaintiffs have met the Rule 9(b) standard.

The Motion asserts that "[a]s support for their fraud-based claims, Plaintiffs allege that Defendants 'made affirmative and intentional omissions of material fact' that Plaintiffs relied on when they chose to invest in the transactions." Mot. at 30. The Motion goes on to assert in sweeping generalization that "the FAC does not identify a *single* fraudulent statement of fact may by *any* Defendant—much less *all* Defendants—that any Plaintiff relied on when making his or her investment (or at any other time)." *Id.* (emphasis in original). But in directing the Court's attention only to paragraphs 337 and 279, 374, 383, and 388 of the FAC, the Motion fails to acknowledge the numerous specific allegations regarding individual Defendants'

17

fraudulent statements and omissions set forth elsewhere in the FAC.[10]   In fact, Plaintiffs' fraud claim specifically references the allegations that were made earlier in the FAC (the many details of which could not efficiently be repeated again in the claim section) and specifically states that Defendants' misrepresentations and omissions include but are not limited to the summary referenced there.  *See* FAC at ¶¶ 336-37.  The FAC makes particular allegations regarding individual Defendants' misrepresentations and omissions.  The following are merely examples:

- The two-page summary of the High Point Syndicate transaction prepared by the Peachtree Defendants ("Summary"), which Summary, *inter alia*, falsely and grossly misrepresented that the value of the TOT conservation easement would be $8.85 million (which corresponded to the amount in the Tennille Defendants' Initial Appraisal).[11]   The Summary was part of the Promotional Materials sent to Plaintiffs Peskin and Perkins by the Old Ivy Defendants in or about April 2013 at the Peachtree Defendants' direction.  *Inter alia*, Plaintiffs Peskin and Perkins each paid $200,000 to participate in the High Point Syndicate in reliance upon this and Defendants' other representations and advice.  Further, the Peachtree Defendants received fees for promotion of the High Point Syndicate and Plaintiffs' investments.   FAC ¶¶ 86-88 (discussing the Promotional Materials and the Summary, including the value of the conservation easement), 93-94 (the Promotional Materials were sent to Plaintiffs Peskin and Perkins and their misrepresentations were reiterated to them, Plaintiffs' reliance); *see also* FAC ¶¶ 5 (Defendants' motivation to earn fees), 8 (Plaintiffs' reliance on Defendants), 56 (Peachtree Defendants' motivation to earn fees), 91 (corresponding Initial Appraisal value of $8,853,000), 230 (Defendants' motivation to earn fees).

---

[10] The Motion also points to summaries in the FAC in isolation on page 32 when it argues that "Plaintiffs simply recite a list of allegedly fraudulent statements or omissions that they vaguely assign to all Defendants as an indiscriminate group."

[11] As the FAC alleges, each of the Defendants knew that the Appraisals were grossly inflated.  *See, e.g.*, FAC ¶¶ 52, 173.

- The private placement memorandum for the High Point transaction (*i.e.*, the LCV Fund XVI Private Placement Memorandum) prepared by Bryan Cave ("PPM"), *inter alia*, falsely and grossly misrepresented that the value of the High Point conservation easement was $8,853,000. The PPM was part of the Promotional Materials sent to Plaintiffs Peskin and Perkins by the Old Ivy Defendants in or about April 2013. *Inter alia*, Peskin and Perkins each paid $200,000 to participate in the High Point Syndicate in reliance upon this and Defendants' other representations and advice. Bryan Cave received fees for preparing the PPM. FAC ¶¶ 73 (Bryan Cave prepared the PPM and knew and intended that potential participants would rely on them), 86 (PPM was sent to Plaintiffs in or about April 2013), 94 (Plaintiffs' reliance), 91 (representation regarding the value of the conservation easement); *see also* FAC ¶¶ 5 (Defendants' motivation to earn fees), 8 (Plaintiffs' reliance on Defendants), 230 (Defendants' motivation to earn fees).

- The TOT Initial Appraisal, dated September 16, 2013, prepared by the Tennille Defendants and referenced in the PPM for TOT, *inter alia*, falsely and grossly misrepresented that the value of the TOT Parcel prior to granting the conservation easement was $28,349,000 and that the value of the conservation easement would be $6,879,000. The TOT PPM was part of the Promotional Materials sent to Plaintiff Marie Klaer by Defendant Bush and Peachtree on October 11, 2013. *Inter alia*, the Klaer Plaintiffs paid $100,000 to participate in the TOT Syndicate in reliance upon this and Defendants' other representations and advice. The Tennille Defendants received fees for providing appraisals that misrepresented the value of the properties and conservation easements. FAC ¶¶ 124 (the PPM was included in the Promotional Materials sent to Plaintiff Marie Klaer), 126 (Initial Appraisal values were copied in the PPM), 129 (Plaintiffs' reliance), 174 (details regarding the misrepresentations); *see also* FAC ¶¶ 5 (Defendants' motivation to earn fees), 8 (Plaintiffs' reliance on Defendants), 63 (Tennille Defendants' motivation to earn fees), 230 (Defendants' motivation to earn fees).

- The TOT Appraisal Summary (Form 8283), prepared and verified by the Tennille Defendants and Foothills Defendants and sent to Warren Averett in the first quarter of 2014 and was sent by Defendant Bush of Defendant Peachtree to the Klaer Plaintiffs on or about March 22, 2014. The Appraisal Summary, *inter alia*, falsely and grossly misrepresented that the value of the TOT conservation easement donation was $6,927,000 while failing to disclose other information required by the IRS on the Appraisal Summary including the date the donated property was acquired, how the donor acquired the

property, and the donor's cost basis.  The Appraisal Summary's purported conservation easement value was incorporated by Warren Averett into K-1s for the members of the TOT Syndicate including the Klaer Plaintiffs.  The Klaer Plaintiffs also included the Appraisal Summary with their individual tax returns for 2013.  *Inter alia*, the Klaer Plaintiffs relied upon the Appraisal Summary in claiming their proportionate share of the purported conservation easement deduction on their individual tax returns for 2013.  The Tennille Defendants and Foothills Defendants received fees for being willing to provide the Appraisal Summaries that misrepresented the value of the conservation easement donations.  FAC ¶¶ 145-54 (detail regarding the Appraisal Summary, its preparation by the Tennille and Foothills Defendants, its value misrepresentation and omissions, its transmission to Warren Averett, inclusion of its value representation by Warren Averett in K-1s, the K-1s' transmission to Plaintiffs, the transmission of the Appraisal Summary directly to Plaintiffs, their reliance on it, and their inclusion of it with their returns), 187-91 (additional details regarding the Tennille and Foothills Defendants' knowledge of the value misrepresentation and omission of details); *see also* FAC ¶¶ 5 (Defendants' motivation to earn fees), 8 (Plaintiffs' reliance on Defendants), 63 (the Tennille Defendants' willingness to inflate the value and motivation to earn fees), 70 (the Foothills Defendants motivation to obtain land interests, fees, and cash contributions), 174 (the ways the Tennille Defendants inflated valuations), 230 (Defendants' motivation to earn fees).

- The K-1 for the Klaer Plaintiffs for the TOT Syndicate, prepared by Warren Averett and sent to the Klaer Plaintiffs on or about April 13, 2014.  The K-1, *inter alia*, falsely and grossly misrepresented that the value of the TOT conservation easement donation was $6,927,000.  *Inter alia*, the Klaer Plaintiffs relied upon the K-1 in claiming their proportionate share of the purported conservation easement deduction on their individual tax returns for 2013.  Warren Averett received fees for being willing to provide K-1s that misrepresented the value of the conservation easement donation.  FAC ¶¶ 145-54 (Warren Averett's misrepresentation of the value of the conservation easement donation in the K-1s, awareness that the valuation was false, transmission of the K-1s to Plaintiffs, and Plaintiffs' reliance on their K-1), 172 (Warren Averett's endorsement of the conservation easement valuations), 189-91 (Warren Averett's awareness of irregularities regarding the Appraisal Summaries and the falsity of the valuations); *see also* FAC ¶¶ 8 (Plaintiffs' reliance on Defendants), 230 (Defendants' motivation to earn fees).

20

The Motion also asserts that Plaintiffs cannot allege fraud based upon "mere statements of opinion." Mot. at 31. However, the Motion fails both to identify the particular misrepresentations it asserts are opinions and fails to acknowledge that statements that "touch on issues of fact" are actionable as fraud. *Cline v. St. Jude Med., Inc.*, No. 1:13-cv-2628, 2013 WL 12067482, at *5 (N.D. Ga. Oct. 31, 2013); *accord Greenwald v. Odom*, 314 Ga. App. 46, 53 (2012). Misrepresentations as to a question of law are also actionable as fraud when there is a fiduciary or confidential relationship between the parties as there was between Plaintiffs and certain of the Defendants, as set forth later in Section III.F. *See, e.g., U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 717 F. Supp. 1565, 1576 (N.D. Ga. 1989); 14 Ga. Jur. § 17:12.[12]

The Motion asserts that Plaintiffs' claims are barred by disclaimers. Mot. at 31-34. But as set forth earlier in Section III.A., these so-called disclaimers at most raise fact issues. The Motion also asserts that the FAC does not sufficiently plead conspiracy. Mot. at 34-35. As set forth below in Section III.G., each conspirator is liable for the fraudulent misrepresentations and omissions of their co-conspirators.

---

[12] Georgia's definition of a confidential relationship is broad: "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58.

If the Court believes the allegations are insufficient as to any Defendant or claim, Plaintiffs respectfully request leave to amend the FAC. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, No. 1:12-CV-0258-WSD, 2012 WL 3065419, *7 (N.D. Ga. July 27, 2012) ("The Court normally grants a plaintiff the opportunity to amend before dismissing claims in a complaint for pleading defects").

## D. Plaintiffs state claims for substantive RICO violations as well as RICO conspiracy under both state and federal law.

### 1. Plaintiffs adequately allege a RICO enterprise.

Defendants incorrectly argue that Plaintiffs have not adequately alleged a RICO enterprise. Importantly, and as Judge Totenberg recently held in *Lechter*, Plaintiffs are not required to allege an enterprise for their claims under O.C.G.A. § 16-14-4(a). *Lechter*, 2021 WL 4564816, at *22. The enterprise element only applies to Plaintiffs' federal RICO claims and their claim under O.C.G.A. § 16-14-4(b). Plaintiffs have met their minimal pleading standard on those claims.

An association-in-fact enterprise must have "a purpose, relationship among those associated with the enterprise, and longevity sufficient to permit associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Defendants challenge only the first two enterprise elements. The term "enterprise" is to be liberally construed (*id.* at 944), and the Eleventh Circuit "has never required anything other than a 'loose or informal' association of distinct entities" (*Williams v. Mohawk Indus.*, 465 F.3d 1277, 1284 (11th Cir. 2006)). Pleading a relationship

among RICO defendants is not a demanding task "and can be met by alleging facts indicating the existence of an agreement among the defendants." *See, e.g., Roche Diagnostics v. Priority Heathcare Corp.*, 407 F. Supp. 3d 1216, 1241 (N.D. Ala. 2019). Direct evidence of an agreement is not necessary; Plaintiffs can prove the existence of an enterprise through facts that give rise to a plausible inference that the alleged RICO members agreed to a common purpose. *See, e.g., Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017); *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir. 1978).

Defendants cherry-pick a few paragraphs of the FAC and argue that the allegations are both conclusory and simply show "parallel conduct" as opposed to an agreement to act as a continuing unit. Mot. at 36. But the paragraphs cited by Defendants merely summarize more detailed allegations found elsewhere in the FAC. *See* FAC ¶¶ 256, 260; *see also Bibb County Sch. Dist. v. Dallemand,* No. 5:16-CV-549, 2019 WL 1519301, at *12 (M.D. Ga. Apr. 8, 2019) (when analyzing the enterprise element, a court must consider a complaint as a whole). And the more detailed allegations, which the Defendants do not directly address, demonstrate an agreement among the Defendants to act as a continuing unit (FAC ¶¶ 4-5, 8, 51-168) and to pursue a common course of criminal conduct (*e.g., id.* ¶¶ 169-229). Thus, the allegations suffice to show an enterprise. *Ouwinga*, 694 F.3d at 794-95 (finding a RICO enterprise in a case involving a complaint similar to the one here that

"allege[d] the enterprise functioned for the common purpose of promoting a fraudulent welfare benefit plan to generate commissions and related fees").

The common purpose here was to "generate huge fees and commissions *by fraudulently selling* a series of transactions under the guise of generating a legal and legitimate noncash charitable contribution deduction."   FAC ¶ 254 (emphasis added).   Unlike in *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020), where the plaintiff failed to connect the purpose of making money with an agreement among the defendants to achieve that purpose "through a particular criminal course of conduct," here Plaintiffs have done so.   The purpose of the enterprise and relationship among the Defendants included agreeing to disregard professional rules, breach duties owed to Plaintiffs, and commit criminal acts of mail and wire fraud in furtherance of the enterprise's goals.   *See e.g.,* FAC ¶¶ 169-229; *Ouwinga*, 694 F.3 at 794 ("RICO applies to both legitimate enterprises conducted through racketeering operations as well as illegitimate enterprises").

For example, when Roberts of Tennille died during the Tax Court proceedings, the Peachtree Defendants and Bryan Cave agreed to retain another appraisal firm to serve as an expert in defense of the TOT appraisal.   FAC ¶ 162. They chose this new appraisal expert "based on the appraisers' reputation as SCE Strategy 'proponents' and prior experience with them in another case involving a Peachtree-sponsored SCE Strategy that went to trial in Tax Court," where the Tax

Court rejected the appraisal expert's opinions. *Id.* & n.10. In other words, instead of finding a credible appraisal expert who would evaluate the appraisal objectively, those Defendants agreed to use an expert that they knew, based on the expert's prior relationship with enterprise members, would further the goals of the enterprise regardless of the harm caused to Plaintiffs. All the while, neither the Peachtree Defendants, nor Bryan Cave provided any contemporaneous information to Plaintiffs and the other class members about the Tax Court proceedings, including the selection of the new appraisal expert. *Id.* ¶ 165. The Peachtree Defendants, the Old Ivy Defendants, and Bryan Cave coordinated messaging to Plaintiffs and other class members during the IRS audit and Tax Court proceedings to downplay the negative effect of certain IRS actions and Tax Court rulings concerning the SCE Strategy. *See* FAC ¶¶ 204-23. Those allegations plausibly demonstrate an agreement among those Defendants to "conceal the truth about the SCE Strategy." FAC ¶ 210; *accord id.* ¶ 205. Plaintiffs allege similar coordinated misconduct among the Defendants related to the Appraisals (FAC ¶¶ 171-82), Conservation Easement Deeds (*id.* ¶¶ 183-86), Forms 8283 (*id.* ¶¶ 187-91), Baseline Documentation Reports (*id.* ¶¶ 192-94), and Legal Opinions (*id.* ¶¶ 195-203).

This is not a case where the allegations show "parallel conduct" with the mere "possibility that Defendants all agreed to carry out a fraudulent scheme." *See Lechter*, 2011 WL 4564816, at *21-22. Given (a) the number of times Defendants

ratified each other's fraudulent misrepresentations (FAC ¶¶ 53-229), (b) the preexisting relationship between many of the Defendants (*id.* ¶ 60, 62-63, 72, 76, 81, 202), and (c) the coordinated attempt to cover up the Defendants' wrongdoing during the audit and tax court proceedings (*id.* ¶¶ 204-29), there is no legitimate explanation other than an agreement to form a RICO enterprise. In that way, the allegations are more robust and plausible than the allegations in *Lechter*.

Plaintiffs also respectfully disagree with the analysis in *Lechter* and urge this Court to analyze the enterprise element with fresh eyes. For example, the *Lechter* court plausibly inferred that Aprio, LLP—the promoter and organizer of the tax scheme in *Lechter* which played a similar role to the Peachtree Defendants in this case—"hand-picked" the appraisers "knowing that they would overstate the value of the easements." *Lechter*, 2021 WL 4564816, at *28. And it also assumed for purposes of its order that the appraisers (the same Tennille Defendants as here) "allowed the Aprio Defendants . . . to control, direct, and/or affect the conclusions reached and the methodologies used in each of the Appraisals" and "almost certainly would have been aware of" the inflated nature of the appraisals since they performed the appraisals. *Id.* at *32. Based on those allegations and inferences, the court held that Plaintiffs plausibly alleged a pattern of racketeering activity for purposes of the Georgia RICO claim. *Id.* at *28, 32. However, the court failed to credit those allegations and inferences for purposes of the RICO enterprise element. *See id.* at

26

*21-22.  Indeed, "proof of a pattern of racketeering activity" may be sufficient to infer the existence of a RICO enterprise.  *Boyle*, 556 U.S. at 951, 947.  Given that the *Lechter* court had to construe all reasonable inferences in favor of the non-movant—and did so with respect to the racketeering element, finding that the appraisers allowed the promoter to direct the appraisal values—it should have also inferred an agreement between the promoter and appraisers to pursue a common, unlawful purpose.  Here, Plaintiffs make more robust allegations concerning the agreement between the parties to pursue a common purpose, and specifically allege that the "Peachtree Defendants directed the Tennille Defendants as to the valuation they needed to reach," and "the Tennille Defendants . . . willingly went along with what the Peachtree Defendants directed."  FAC ¶¶ 173-74, 181-82.

## 2.    Plaintiffs adequately allege RICO predicate acts.

Plaintiffs have pleaded numerous predicate acts committed by each Defendant.  The FAC lists 29 representative examples in paragraph 273, a practice that is permitted in the Eleventh Circuit in cases like this involving "prolonged multi-act schemes."  *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015).  The representative examples provide much, and in most cases all, of the factual detailed demanded by Rule 9.  For instance, Plaintiffs allege that

> On December 6, 2013, Bush of Peachtree emailed Marie Klaer and other TOT Syndicate members a copy of the purported development plan for the TOT Parcel, despite knowing that Defendants had designed

27

the SCE Strategy for tax deduction purposes only and that an actual development was neither intended nor feasible.

FAC ¶ 273(b).  These allegations (1) provide the who, what, and when for the alleged act of wire fraud, (2) the method of transmission, and (3) explain how the email was fraudulent.  Moreover, as paragraph 274 makes clear, additional factual details concerning the fraudulent nature of these predicate act examples are found earlier in the FAC.  Relevant to the predicate act listed above, paragraphs 51(g), 132, 138, 164, 177-78, and 276(20, 33, 38, 42, 47) provide more details about the purported development plan, including why it was never intended to occur and how it was used to fraudulently inflate the appraisal needed to induce class members to participate in the tax scheme.  The list of representative examples plus the additional allegations earlier in the FAC satisfy Rule 9.[13]

Defendants are incorrect to the extent they argue that all the predicate acts must contain fraudulent misrepresentation.  For some of the representative examples, it is the purposeful omission of material facts that makes the communication fraudulent.  *See, e.g.,* FAC ¶¶ 273(l) (detailing a misleading email sent by the Peachtree Defendants about Notice 2017-10), 218-23 (explaining that the Peachtree Defendants had internally concluded that they should stop promoting the SCE Strategy in light of Notice 2017-10 but failed to disclose this significant fact).

---

[13] These representative examples and additional allegations support both the federal and Georgia RICO claims.  FAC ¶ 275-76.

Moreover, Plaintiffs are not required to demonstrate that the instances of mail and wire fraud contained misrepresentations; instead, it suffices to show that the mailings or items sent through the wires were "incident to an essential part of the scheme," which Plaintiffs have done. *See Schmuck v. United States*, 489 U.S. 705, 712 (1989); *see also* FAC ¶ 274.

Defendants do not attempt to explain away any of the predicate acts alleged, instead they vaguely mischaracterize the allegations as being "innocuous communications" or "irrelevant conclusory allegations regarding Defendants' state of mind." Defendants are not entitled to any inferences in their favor, especially their self-serving and conclusory characterizations of the allegations.

The Court should follow *Lechter's* analysis with respect to (a) the key organizers and promoters (the Aprio Defendants and the Forever Forest Defendants in *Lechter*, and the Peachtree and Old Ivy Defendants here), (b) the appraisers (the Tennille Defendants both here and in *Lechter*), and (c) the accountants (the Aprio Defendants in *Lechter*, and Warren Averitt here). *Lechter*, 2021 WL 4564816, at *27-28, 33-34. The allegations as to those Defendants here are similar if not more robust on the racketeering element than the allegations in *Lechter*.

Plaintiffs acknowledge that Judge Totenberg dismissed the RICO claims against the land trust defendants (ACC and GALT) and the legal opinion writer (Sirote) in *Lechter* based in part on what the court perceived to be a lack of

allegations showing that those defendants knew about the inflated nature of the appraisals. *See Lechter*, 2021 WL 4564816, at *29, 31. However, the FAC includes even more facts showing that the land trust (the Foothill Defendants) and the opinion writer (Bryan Cave) had a clear understanding of the fraudulent nature of the tax scheme, including knowledge of the inflated nature of the appraisals. *See, e.g.,* FAC ¶¶ 66-71, 80-83, 135, 141, 162 n.10, 183-86, 191-94 (Foothills Defendants); *see also id.* ¶¶ 56, 72-75, 115, 157, 162-68, 172-73, 195-203, 208-16 (Bryan Cave). For example, the Foothills Defendants identified potential real estate, met with landowners, and evaluated the real estate for its alleged "conservancy values as well as alleged development potential." Thus, it is plausible that the Foothills Defendants knew that the real estate was not suited for the HBU and purported development plans underpinning the fraudulent appraisals and knew that its real value was far less than what was claimed in the appraisals. Similarly, Plaintiffs allege that Bryan Cave had been outside counsel to the Peachtree Defendants on the development of Peachtree's SCE Strategy transactions since 2009, was intimately familiar with how the SCE Strategy worked, and was required by Circular 230 to determine the facts of the transaction before issuing its opinion letter.

### 3. Plaintiffs have adequately alleged a RICO conspiracy.

Plaintiffs have adequately pleaded a RICO conspiracy between the Defendants. A RICO conspiracy can be proved in one of two ways: (1) "by showing

an agreement on an overall objective," or (2) "by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in a single objective conspiracy." *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992). For purposes of a Section 1962(d) conspiracy claim, it is the "agreement to commit two predicate acts, and not the actual commission of two predicate acts, [that] is the key issue in a conspiracy charge." *United States v. Browne*, 505 F.3d 1229, 1274 (11th Cir. 2007). Moreover, a plaintiff is not required to allege that "each conspirator agreed with every other conspirator, knew of his fellow conspirators, was aware of all of the details of the conspiracy, or contemplated participating in the same crime." *Id.* Direct evidence of an agreement is not necessary, a plaintiff can allege and prove an agreement through "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005). This circumstantial evidence is sufficient even if it does not eliminate every reasonable hypothesis other than guilt. *Id.*

Plaintiffs have met this standard. Although Plaintiffs need not allege both, the allegations demonstrate that each Defendant (1) agreed to commit at least two predicate acts in furtherance of the conspiracy, and (2) agreed to the overall objective of the conspiracy. As shown in the previous section, each of the Defendants agreed to commit—and did, in fact, commit—multiple predicate acts in furtherance of the enterprise. *See, e.g.,* FAC ¶ 273. As but one example, the Peachtree Defendants

(and other Defendants) agreed to guide the preparation of the appraisals by the Tennille Defendants to ensure that the values hit the desired tax deduction amounts. FAC ¶¶ 62-65, 171-82, 273(u). It is reasonable to infer this agreement based on the allegations that the Tennille Defendants wholly ignored their own professional duties and methodologies and, instead, followed the directions of the Peachtree and other Defendants to come to a specific value that was needed for the tax deductions. *See id.* It is also reasonable to infer this because Roberts of Tennille had previously been suspended for preparing sham appraisals. FAC ¶¶ 62, 179.

The Defendants also each agreed to the overall objective of the conspiracy— to generate fees for the enterprise by fraudulently selling the SCE Strategy under the guise of a legitimate tax strategy. FAC ¶¶ 254, 169-229. A fair reading of the allegations shows coordinated actions beyond coincidental, parallel conduct. To the extent the individual Defendant-groups have addressed this issue specifically in their individual briefs, Plaintiffs have responded to those arguments in their individual response briefs.

**E.      Defendants' other reasons are not grounds to dismiss the RICO claims.**

**1.      Plaintiffs' federal RICO claims are not barred by the PSLRA.**

Defendants argue that the PSLRA bars Plaintiffs' federal RICO claims because the transactions involve LLC interests that are "investment contracts" and hence a "security." Defendants acknowledge, however, that to be an investment

contract there must be "a 'contract, transaction or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or third party.'" *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). Even assuming the first two requisites are met,[14] a recent SEC ALJ held that, in an SCE promising tax benefit, an LLC interest was not a "security" because there was no "expectation of profits." *In the Matter of Paul Edward Ed Lloyd, Jr., CPA*, Release No. 2366 (Feb. 27, 2015) ("tax deduction is not a 'profit' under" *Howey*"). This accords with prior case law that "tax benefits alone cannot satisfy the profit requirement" of *Howey*.[15] *See Newmyer v. Philatelic Leasing, Ltd*., 888 F.2d 385, 394 (6th Cir. 1989); Julia Dimitriadis et. al., *Securities Fraud*, 56 AM. Crim. L. Rev. 1379, 1405-06 (2019). The *Fu* case Defendants cite is inapposite because there "the members were 'attracted solely by the prospects of a return' on their investments." *Fu*, 2009 WL 1281204, at *7.

As in *Lloyd*, here "[t]here can be no other interpretation from these facts other than that the purpose of the investments was to obtain conservation easement tax deductions." Release No. 2366 at 3-4; *see, e.g.*, FAC ¶ 8 ("Defendants identified and

---

[14] This is unlikely given that "real estate transactions are not generally investment contracts." *Intelligent Inv. Int'l LLC v. Fu*, No. 1:17-cv-5296, 2019 WL 1281204, at *6 (N.D. Ga. Mar. 20, 2019).

[15] Any references to the term "securities" in the Promotional Materials do not alone satisfy *Howey*. *See Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 558 (1979) (the existence of a security is determined by "the substance … of the transaction—rather than the names that may have been employed by the parties").

purchased real estate, not for an actual investment . . . purpose . . . but to syndicate as many conservation easement transactions as possible"); *id.* ¶ 52 ("Defendants were . . . packaging and selling grossly overvalued and ineffectively structured federal tax deductions").  Moreover, even if the LLC interest was *not* a security as a matter of law, the absence of a profit motive cannot be determined at this stage. *United States v. Zaslavskiy*, No. 17-cr-647, 2018 WL 4346339, at *4 (E.D.N.Y. Sept. 11, 2018); *Westlake v. Abrams*, 504 F. Supp. 337, 342 (N.D. Ga. 1980); *Thomas v. United States*, No. 88-0529C6, 1990 WL 61957, at *3 (E.D. Mo. Mar. 12, 1990).

Finally, even if the LLC interests were a security, the gravamen of the fraud alleged is about tax savings promised, not "investment" results.  FAC ¶¶ 8, 52.  In *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 335-36 (7th Cir. 2019), the Court observed that "no meaningful number of … federal securities fraud claims [have been] brought to challenge abusive tax shelters" and concluded that "[t]he fraud Menzies alleged is . . . focused not on the sale of the AUI stock but on how and why he charted a particular course in his treatment of the sale for federal tax purposes… ."  The FAC does not complain about the sale of the LLC interests,[16] but is "focused . . . on its tax consequences."  *Id.* at 335; *accord Ouwinga*, 694 F.3d at 791 ("securities transactions here were not integral to or 'in connection with' the fraudulent scheme as a whole.").

---

[16] The LLCs were not essential.  *See* FAC ¶ 48 n.4.

## 2. Defendants conducted the enterprise's affairs.

Plaintiffs adequately allege that each Defendant conducted the enterprise's affairs.  Plaintiffs do not have to establish this RICO element for their claims under O.C.G.A. § 16-14-4(a).  *Lechter*, 2021 WL 4564816, at *28 n.29.  The conduct element only applies to Plaintiffs' federal RICO claims and their claim under O.C.G.A. § 16-14-4(b).  Plaintiffs have met their pleading standard on those claims.

Section 1962(c) requires that a person "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."  In other words, the person "must have some part in directing those affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Under this "operation or management" test, liability is not limited to those "with primary responsibility for the enterprise's affairs," and a "formal position within the enterprise" is not required.  *Id.*  The test does not require "significant control," only *some* part in directing the enterprise's affairs.  *Id.* at 179 & n.4.  Thus, those in "upper management" as well as "lower rung participants who are under the direction of upper management" can operate the enterprise.  *Id.* at 184. This includes those lower-level participants who "knowingly implement" and "make decisions" that are related to the affairs of the enterprise under the direction of upper management.  *Browne*, 505 F.3d at 1277.

As one of Defendants' cases demonstrates, professionals and professional service firms are not immune from RICO liability.  *See Handeen v. Lemaire*, 112

F.3d 1339, 1348-49 (8th Cir. 1997) ("Neither *Reves* nor RICO itself exempts professionals, as a class, from the law's proscriptions . . .").[17]

Here, Defendants focus on three paragraphs of the FAC, arguing that those allegations are conclusory. Mot. at 41 (citing FAC ¶¶ 259-60, 276(1)[18]). But those allegations merely summarize more detailed allegations from the body of the FAC. *See* FAC ¶ 260.[19] Without identifying any of the more detailed allegations set forth in the FAC, Defendants argue in conclusory fashion that the "remaining allegations in the FAC" merely show the provision of ordinary professional services. Mot. at 41. But, when read as a whole, the FAC alleges a level of control over the enterprise by each Defendant that satisfies the *Reves* test and goes beyond routine professional activities. The following chart collects those allegations by Defendant-group:

| Defendant(s) | SAC Paragraphs |
|---|---|
| Old Ivy Defendants | ¶¶ 4, 5, 7, 8, 46, 51, 53, 60-61, 83, 86-87, 90-93, 95, 97-98, 111, 114, 117, 122, 169, 172-73, 179-82, 187, 204-08, 210-14, 217-20, 222, 226, 228-29. |

---

[17] *See also, e.g., Bocciolone v. Solowsky*, No. 08-20200-CIV, 2009 WL 936667, at *4 (S.D. Fla. Apr. 6, 2009) (denying motion to dismiss and holding that an "attorney who in the course of representation, crosses the line between traditional rendition of legal service and active participation in directing the enterprise is not shielded from his RICO liability"); *Avrahami v. Clark*, CV-19-04631, 2020 WL 2319922, at *3, 7 (D. Ariz. May 8, 2020) (denying motion to dismiss RICO claim against law firms, an accounting firm, and an insurance actuary in tax shelter case); *Jones v. Deutsche Bank AG*, C 04-05357 JW, 2005 WL 1683614, at *3 (N.D. Cal. July 19, 2005) (denying investment bank and advisory firm's motion to dismiss in tax shelter case).
[18] Paragraph 276(1) does not directly concern the operation or management test, but rather the predicate acts committed by the Defendants.
[19] Paragraph 260 contains a typo—the last sentence should end, "in paragraphs 4-5, 8-10, and 46-**229**."

| Defendant(s) | SAC Paragraphs |
|---|---|
| Peachtree Defendants | ¶¶ 4, 5, 7, 8, 46, 51, 53, 54-59, 81-82, 83-84, 86, 88-93, 95-96, 99, 101, 104-05, 112, 114-115, 117, 122-28, 130, 132-33, 135, 137, 140-42, 152-54, 156-59, 162-63, 165-69, 172-74, 179-82, 186-87, 195-96, 198, 202, 204-29. |
| Tennille Defendants | ¶¶ 4, 5, 7, 8, 46, 51, 53, 62-65, 81-82, 83, 86, 91, 101-02, 108, 109, 122, 124-26, 128, 135, 137-38, 146, 169, 171-82, 187-91, 204-08, 210-14, 217-18. |
| Bryan Cave | ¶¶ 4, 5, 7, 8, 46, 51, 53, 72-75, 83, 86, 92-93, 115, 117-22, 124-25, 127, 157-60, 162-63, 165-69, 172-73, 179-82, 195-208, 210-14, 216-18, 224-25. |
| Warren Averett | ¶¶ 4, 5, 7, 8, 46, 51, 53, 76-79, 107-112, 122, 145-54, 169, 172-73, 179-82, 187, 191, 204-08, 210-14, 217-18. |
| Foothills Defendants | ¶¶ 4, 5, 7, 8, 46, 51, 53, 66-71, 83, 85-86, 90, 98, 100, 103-05, 106, 108-09, 122, 124-25, 133, 135-36, 139-44, 146, 150-51, 169, 172-73, 179-87, 191-94, 204-08, 210-14, 217-18. |

## F.   Plaintiffs have sufficiently pleaded their breach of fiduciary duty and aiding and abetting claims.

Plaintiffs allege that the Peachtree Defendants, Old Ivy Defendants, Tennille Defendants, Bryan Cave and Warren Averett (collectively the "Fiduciary Defendants") breached fiduciary duties owed to Plaintiffs by *inter alia* "their failures to disclose their conflicts of interest." FAC ¶ 334. Plaintiffs further allege that the remaining Defendants aided and abetted these breaches of fiduciary duty. *See id.* ¶¶ 349-53. Defendants begin their argument for dismissal of these claims by stating in general terms that "Plaintiffs' claims for breach of fiduciary duty and aiding and abetting breaches of fiduciary duty are largely based on allegations of fraud and thus

fail for the reasons explained above." Mot. at 42.[20] Defendants do not elaborate at all on how the fiduciary claims are "largely based" on allegations of fraud and, conversely, what remaining aspects of these fiduciary claims are not based on allegations of fraud. This is a critical distinction for Defendants to make as the heightened pleading requirements of Rule 9(b) only apply to a claim of breach of fiduciary duty *to the extent that* claim of breach of fiduciary duty "consist[s] in fraud." *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1366 n.4 (N.D. Ga. 2004). Defendants' unspecified and unsupported assertion that the fiduciary claims are "largely based" on fraud provides no basis for Plaintiffs to effectively respond to, nor for this Court to effectively rule on this issue. In any event, as set out above in Section III.C, Plaintiffs' fraud-based claims are properly pleaded.

Defendants also contend Plaintiffs have failed to adequately plead the existence of a fiduciary duty on the part of the Fiduciary Defendants. Mot. at 42-43. In making this argument, Defendants isolate four sentences from the FAC regarding the contents of the PPMs and seek to confine the analysis of whether Plaintiffs have sufficiently alleged the existence of a duty ***solely*** to these four sentences. Mot. at 42-43. However, Plaintiffs have not based the existence of a fiduciary duty on this

---

[20] Plaintiffs address Defendants' requests for dismissal of Plaintiffs' breach of fiduciary duty claim and aiding and abetting claim collectively as Defendants offer no arguments for dismissal of the aiding and abetting claim other than that Plaintiffs did not sufficiently allege their breach of fiduciary duty claim.

language in the PPMs and a proper review of Plaintiffs' allegations demonstrates that this element of the claim is properly pleaded.

A fiduciary relationship can arise from a confidential professional relationship, which is broadly defined under Georgia law. O.C.G.A. § 23-2-58 ("[W]here one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith…."). Georgia law does not require a contract, but instead "look[s] at the factual circumstances in order to determine whether a confidential relationship existed." *Atlanta Mkt. Ctr. Mgmt., Co.v. McLane*, 296 GA. 604, 606-08 (1998).

Plaintiffs' allegations against each of the Fiduciary Defendants establish interactions and dealings between these Defendants and Plaintiffs sufficient to meet the definition of a confidential relationship directly related to the promotion and/or implementation of the SCE Strategy. *See, e.g.*, FAC at ¶¶ 57, 86, 88-93, 97-98, 123-28, 132-33 (for the Peachtree Defendants); 61, 87 (for the Old Ivy Defendants); 64, 101-02, 107, 137-38 (for the Tennille Defendants); 73-75, 86 (for Bryan Cave); and 78-79, 107-12, 145-54 (for Warren Averett).[21]   Plaintiffs also allege that these

---

[21] The impact of the K-1s prepared by Warren Averett on Plaintiffs' tax returns was so "substantial" that it is properly considered Plaintiffs' "tax return preparer." *See* FAC at ¶¶ 49-50; *Adler & Drobny, Ltd. v. United States*, 9 F.3d 627, 629-30 (7th Cir. 1993) ("[T]he sole preparer of a partnership … or a small business corporation income tax return is considered a preparer of a partner's or a shareholder's return if

Defendants had superior knowledge about the law and facts underlying the SCE Strategy, further supporting the existence of a confidential fiduciary relationship. *See, e.g.*, FAC at ¶¶ 206-29 (for all Defendants); ¶¶ 54-59 (for the Peachtree Defendants); ¶¶ 60-61 (for the Old Ivy Defendants); ¶¶ 62-65 (for the Tennille Defendants); ¶¶ 56, 72-75 (for Bryan Cave); and ¶¶ 76-79 (for Warren Averett).[22] Based on these allegations, Defendants cannot prevail on their motion to dismiss the fiduciary claims under Rule 12(b)(6).  *See, e.g.*, *Yarbrough v. Kirkland*, 249 Ga. App. 523, 527 (2001) (the existence of a confidential relationship is ordinarily question of fact for the jury and not appropriate for determination on pleadings).

## G.     The Court should not dismiss Plaintiffs' civil conspiracy claim.

To plead a cause of action for civil conspiracy, a plaintiff must allege "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.,* 716 F. Supp. 2d 1275, 1288 & n.7 (N.D. Ga. 2010)  To that end, there must be

---

the entry or entries on the… return reportable on the partner's or shareholder's return constitute a substantial portion of the partner's or shareholder's return").

[22] These detailed allegations stand in stark contrast to the conclusory allegation that was deemed insufficient in *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009), the only case cited by Defendants for their fiduciary duty arguments. *Id.* at 959 (noting sole allegation to support claim was "This is also an action under the law of the State of Georgia for the intentional breach of fiduciary duties by the defendants as a result of the defendants willfully failing and refusing to account to plaintiff for plaintiff's share of profits from the sale and other commercial exploitation of plaintiff's song, musical composition and sound recording by the defendants") (cited in Mot. 42).

a "common design," which may be shown if "two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design." *Diverse Power, Inc., v. City of LaGrange, GA*, No. 3:17-cv-3-TCB, 2018 WL 9651475, at *7 (N.D. Ga. Feb. 21, 2018).  As this Court has noted:

> Civil conspiracy is an act which is by its very nature covert and clandestine, and usually not susceptible of proof by direct evidence. Concert of action, amounting to conspiracy, may be shown by circumstantial evidence, as well as direct evidence.  To show a conspiracy it is not necessary to show an express contract between the conspirators, or that the parties met together either formally or informally or entered into any explicit or formal agreement.  An agreement among the conspirators may be inferred from proof of the circumstances alone and by inferences that may be fairly drawn from the behavior of the alleged conspirators.  The existence of a conspiracy may be inferred from the nature of the acts done, the relation of the parties, or the interests of the alleged conspirators and, other circumstances.

*Coface N.A. Ins. Co. v. Davis*, No. 1:19-cv-0242-AT, 2019 WL 7831142, * 8 (N.D. Ga. June 21, 2019) (cleaned up).

> Here, Plaintiffs allege that Defendants,

> knowingly acted in concert and had a common and mutual design to design, promote, sell, and implement the SCE Strategy [and that][i]n furtherance of their conspiracy, the Defendants [and others] conspired to perpetrate fraud on Plaintiffs [and] acted with full knowledge and awareness that the SCE Strategy was designed to give the false impression that a complex series of transactions were legitimate business transactions, when the transactions in fact lacked those features that were necessary for a legitimate conservation easement charitable contribution deduction.

FAC ¶ 388.  Plaintiffs further allege the specific role each of the Defendants played in the conspiracy and additional facts (all of which are incorporated into the civil

conspiracy claim) that, at the very least, give rise to an inference of a conspiracy. *See e.g.*, FAC ¶ 51, 53-79, 80-83, 230-33.   These allegations are sufficient to overcome a motion to dismiss.[23]  *See, e.g.*, *Pullar v. Gen. MD Grp.,* No. 1:12–CV–4063–TWT, 2013 WL 5284684, at *5 (N.D. Ga. Sept. 17, 2013); *Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC,* 741 F. App'x 612, 620-21 (11th Cir. 2018).

## H.    Plaintiffs' state law claims are timely.

Plaintiffs' state law claims are timely either because the claims did not accrue until the IRS issued a Final Partnership Administrative Adjustment ("FPAA") or because the limitations period was tolled.[24]  *See Lechter,* 2021 WL 4564816 at * 13 (finding a pre-FPAA accrual date, but also finding that Plaintiffs had properly pleaded tolling).  Further, because the statute of limitations is an affirmative defense, it is rarely a basis for dismissal on the pleadings.  *See* Fed. R. Civ. P. 8(c); *see also*

---

[23] As noted earlier in Section III.C., Plaintiffs' fraud claims have been adequately and specifically pleaded, but even if they were not as to any particular Defendant, all Defendants are still liable for conspiracy to defraud. *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 573-74 (2019).

[24] The limitations periods for all of Plaintiffs' state law claims are four years or longer from the date of accrual. *See Jones, Day, Reavis & Pogue v. Am. Envirecycle, Inc.*, 217 Ga. App. 80, 81 (1995) (four year for malpractice under O.C.G.A. § 9-3-25); *Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 288 Ga. 236, 238 (2010) (six years for malpractice under O.C.G.A. § 9-3-24); *Hamburger v. PFM Cap. Mgmt., Inc.*, 286 Ga. App. 382, 387 (2007) (four years for fraud under O.C.G.A. § 9-3-31); *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997) (four years for negligent misrepresentation under O.C.G.A. § 9-3-31) *Crosby v. Kendall*, 247 Ga. App. 843, 849 (2001) (six years for breach of fiduciary duty under O.C.G.A. § 9-3-24); *Kothari v. Patel*, 262 Ga. App. 168, 174 (2003) (four years for breach of fiduciary duty under O.C.G.A. § 9-3-31).

*Cervantes v. Invesco Holding Co. (US), Inc.*, No 1:18-cv-2551, 2019 WL 5067202, at *10 (N.D. Ga. Sept. 25, 2019).   For these reasons, the Court should reject Defendants' statute of limitations arguments.

### 1.   Defendants assert an incorrect accrual date.

In Georgia, an action in tort cannot lie unless there is a "violation of a private duty, *accompanied by damage*."   O.C.G.A. § 51-1-8 (emphasis added).   This means that a claim does not accrue until the plaintiff could "have successfully maintained the action" by suffering "[a]ny appreciable and actual harm."   *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 806 (1980).   A bare breach of duty is not enough.   *See, e.g., Amstead v. McFarland*, 287 Ga. App. 135, 139 (2007).

The Georgia Supreme Court recently reiterated that a legal malpractice plaintiff must have suffered a "cognizable loss" before a claim will accrue. *Armstrong v. Cuffie*, 860 S.E.2d 504, 508 (Ga. 2021).   When the malpractice claim turns on how the attorney-defendant performs in an underlying proceeding, the claim accrues when the plaintiff "lost her interest in the [underlying] claim."   *Id.* at *3. This is because until the underlying action is resolved "the action may terminate favorably for the client."   *Mauldin v. Weinstock*, 201 Ga. App. 514, 518 (1991).

The Georgia Supreme Court has not opined on when claims against tax advisors accrue when underlying proceedings with the IRS and in Tax Court remain pending.   But the growing majority of state supreme and appellate courts to examine

the question hold that accrual cannot occur earlier than the date the IRS makes a final assessment as to penalties.[25]  This rule acknowledges that until there is a final assessment as to penalties, the malpractice plaintiff has "received the promised tax benefits," *Khan*, 978 N.E.2d at 1036.  It also accords with Georgia law on proximate causation, which holds that a malpractice plaintiff cannot prove proximate causation until the "suit within a suit"—in this case the suit against the IRS—is over.  *See Leibel v. Johnson*, 291 Ga. 180, 182 (2012).[26]

Without acknowledging or analyzing the *Armstrong* decision, which issued days before it rendered its decision, the Georgia Court of Appeals held that a claim against tax advisors accrues upon a bare breach of duty.  *Coe v. Proskauer, LLP,* 360 Ga. App. 68, 71 (2021).  Plaintiffs in *Coe* have petitioned the Georgia Supreme Court

---

[25] *See Thomas v. Cleary*, 768 P.2d 1090, 1093-94 (Alaska 1989); *Coulter v. Grant Thornton, LLP*, 388 P.3d 834, 839 (Ariz. Ct. App. 2017); *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323, 1326-27 (Fla.1990); *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1036 (Ill. 2012); *Cameron v. Montgomery*, 225 N.W.2d 154, 156 (Iowa 1975); *Feldman v. Granger*, 255 Md. 288, 297 (1969); *Thomas v. Grant Thornton LLP*, 478 S.W.3d 440, 445-46 (Mo. Ct. App. 2015); *Snipes v. Jackson*, 316 S.E.2d 657, 659 (N.C. App. 1984); *Chisholm v. Scott*, 86 N.M. 707, 709 (N.M. App. 1974); *Hoover v. Gregory,* 835 S.W.2d 668, 672 (Tex. App. 1992); *Clark v. Deloitte & Touche LLP*, 34 P.3d 209, 216-17 (Utah 2001); *Mills v. Garlow*, 768 P.2d 554, 558 (Wyo. 1989).

[26] On reply, Defendants may attempt to argue that there is a distinction between offering transactional advice and serving as litigation counsel.  But tax advice is not mere transactional advice because tax advice is submitted to the IRS and often examined by the IRS and the Tax Court.  Tax advisors are therefore no different from litigators who submit work product to courts or administrative tribunals for review and resolution.

for a writ of certiorari because *Coe* is not compatible with *Armstrong* or O.C.G.A. § 51-1-8. Until the Georgia Supreme Court resolves this tension, Plaintiffs respectfully submit that *Armstrong* controls the accrual analysis of Plaintiffs' claims here. Plaintiffs could not have lost their interest in their claim for tax benefits under the SCE Strategy earlier than an IRS determination disallowing these benefits.

In this case, the earliest FPAA[27] issued on January 3, 2017. *See* FAC ¶ 159. Plaintiffs filed their claims within four years on January 2, 2021. Using the earliest FPAA date as the date of accrual, Plaintiffs claims are timely. Defendants urge a 2013 accrual date because this is the date Plaintiffs "parted with their investment funds and 'paid substantial fees and investment costs.'" Mot. at 47. But they do not cite a single case, much less a tax advice or malpractice case, that uses these dates as accrual dates. And, as discussed above, numerous courts across the country have used the final assessment date or the end of Tax Court proceedings as the accrual date. This accords with the parties' expectations because Plaintiffs anticipated parting with investment funds and fees to invest in SCE Strategies. They did not anticipate losing the tax advantages of the SCE Strategy. Until the IRS disallowed their tax benefits, Plaintiffs had received the benefits of their bargain.

---

[27] An FPAA is the functional equivalent of a partnership-level notice of deficiency. A notice of deficiency is the IRS's final assessment of tax liability and penalties. *See Int'l Engine Parts, Inc. v. Feddersen & Co.*, 9 Cal. 4th 606, 621 (1995). All assessment decisions and correspondence with the IRS prior to the issuance of an FPAA or notice of deficiency are preliminary.

### 2.    The limitations period for Plaintiffs' claims were tolled.

Alternatively, the limitations period for Plaintiffs' claims was tolled until at least the issuance of FPAAs.  As this Court recognized in *Lechter*, "[w]hen plaintiffs invoke a fraudulent concealment exception, as Plaintiffs do here, the statute of limitation is tolled until such fraud is discovered or could have been discovered by the exercise of ordinary care and diligence."  *Lechter*, 2021 WL 4564816 at *14; *accord Goldston v. Bank of Am. Corp.*, 259 Ga. App. 690, 693 (2003) ("The sun never sets on fraud.").  Further "[i]n most cases issues concerning a plaintiff's diligence in discovering fraud . . . must be resolved by the trier of fact."  *Id.*

In *Klopfenstein v. Deutsche Bank Sec., Inc.*, the Eleventh Circuit held that the plaintiffs there could not have discovered their claims until issuance of the FPAA: "Klopfenstein received an IRS audit notice in January 2000 and a related 'Statutory Notice of Deficiency' that fall …. In the *fall of 2000*," not the January 2000 date of the audit notice, "he was on notice that the Deutsche Bank entities' representation may have been false."  592 F. App'x 812, 813, 815 (11th Cir. 2014) (emphasis added).  And in *Lechter*, this Court held that whether the notice of audit date would put plaintiffs on notice is at the very least a question of fact where, as here, the plaintiffs are not tax professionals.  *Lechter*, 2021 WL 4564816, at *13.

Plaintiffs allege that Defendants committed numerous acts of fraudulent concealment in addition to committing fraud.  *See* FAC ¶¶ 120-21, 159, 204-29, 291.

These acts of fraudulent concealment include fiduciary silence regarding the issuance of the FPAAs, the filing of the Tax Court Petitions, and adverse rulings by the Tax Court. *Id.* They include partial or incomplete disclosures regarding the existence of the audits. *Id.* ¶¶ 206, 209. They include attempts to downplay adverse Tax Court rulings when certain plaintiffs became aware of these rulings. *Id.* ¶ 215. And they include continued silence even as the Tax Court began disallowing deductions in early test cases of similar SCE Strategies. *Id.* 214-15, 220-21.

Defendants attempt to avoid these allegations by arguing that the notice of audit sufficed to put alert Plaintiffs to their claims. Mot. at 48-50. But *Lechter* rejected this argument. *Lechter*, 2021 WL 4564816, at *13. And the *Coe* court also relied on more than the mere notice of audit—namely, the criminal guilty pleas of certain accountants—to find plaintiffs could have discovered their claims. *Coe,* 360 Ga. App. at 73. Defendants also attempt to rehash their arguments that they were not fiduciaries and that Plaintiffs have not pleaded fraud with particularity. Mot. at 48-50. For reasons already discussed, these arguments fail. But this argument also ignores reality: Plaintiffs were not the tax matters partners for the entities used to implement the SCE Strategies. Plaintiffs therefore could not have learned of audit developments regarding SCE Strategy entities unless Defendants informed them.

Defendants also claim that Plaintiffs have not pleaded intent to conceal. But knowledge can be pleaded generally, *see Dildine*, 389 F. Supp. 3d at 1218, and

Plaintiffs have pleaded it generally.  FAC ¶ 292.  And the Defendants' efforts to downplay bad news and as well as their continued silence even as storm clouds gathered support an inference of intent to conceal.  *See, e.g.*, *id.* ¶¶ 214-15, 220-21. Defendants also argue that matters of public record cannot be the basis of a statute of limitations toll.  Mot. at 49-50.  But the Tax Court petitions that became public records here did not commence until after January 2017.  Thus, even if these petitions could have put Plaintiffs on constructive notice, Plaintiffs filed their Original Complaint on January 2, 2021—within four years of the filing of the Tax Court petitions.  FAC ¶¶ 118, 160.

## I.      Plaintiffs' claims are not barred by the rulings of the Tax Court and Plaintiffs claims are ripe.

The Motion's fact section alludes to two other arguments against Plaintiffs' claims.  Mot. at 15-21.  Although the Motion does not argue for dismissal based on these arguments, the Motion is wrong about them regardless.

First, the Motion asserts that the IRS changed its stance on regulations regarding extinguishment proceeds and that this is what led to the unfavorable Tax Court decisions regarding the High Point and Tot Syndicates.  Mot. 15-20.  But this assertion relies on matters outside of the FAC that are inappropriate on a motion to dismiss.  It also fails to establish conclusively that Defendants—and particularly the promoter Defendants and Bryan Cave—had no (a) notice of, (b) obligation to anticipate, or (c) obligation to alter its advice concerning the impending IRS rule

change. Most importantly, the Motion fails to recognize that although the Tax Court based its ruling in part on the extinguishment issue, the Tax Court imposed a gross valuation misstatement of 40% based on its finding that the TOT Syndicate's easement deduction was worth only $496,000 and not the over $6.8 million value claimed. *TOT Prop. Holdings, LLC v. Comm'r of Internal Revenue*, No. 5600-17, 2019 WL 11880554, *10 (T.C. Nov. 22, 2019).

In arriving at the $496,000 value of the easement, the Tax Court noted that TOT and TOT's appraisal expert in Tax Court discarded the claimed $6,879,000 value in favor a new value of $2.7 million and that *even that far lower amount* was "greatly inflated." *Id.* at *6-10.[28] Accordingly, no matter the responsibility of the Defendants to anticipate a changed IRS regulation, Defendants' actions and omissions, especially concerning the inflated appraisals, were responsible for Plaintiffs' investments, claiming disallowed deductions, and their damages.

---

[28] Notably, while Defendant Bryan Cave represented TOT in the Tax Court proceeding, neither the Peachtree Defendants nor Bryan Cave provided any contemporaneous information about the proceeding to the TOT participants. FAC ¶¶ 164-165; *see also TOT Prop.*, 2019 WL 11880054 at *1 (John Paul Barrie and Kwabena Yeboah of Bryan Cave represented TOT in the proceeding). It was not until several months after the TOT opinion that the Peachtree Defendants finally informed the members of the Tax Court proceeding when they raised the next step of filing an appeal with the Eleventh Circuit. FAC ¶ 166. The Eleventh Circuit denied TOT's appeal and petition for rehearing. According to the Tax Court Docket, the Tax Court has not yet determined the applicable penalty for High Point.

Second, the Motion asserts that while the deductions claimed by the High Point and TOT Syndicates have been denied at the partnership level, the individual members' deductions have not yet been denied and they theoretically retain any individual defenses they may have.  Mot. 21.  The Motion thereby may allude to, but does not make, an argument that Plaintiffs have not yet suffered any damages.  But that is not correct.  As Plaintiffs allege in the FAC, Defendants "proximately injured Plaintiffs and the Class by causing them to pay substantial fees and transaction costs, be exposed to interest and penalties from the IRS, and incur additional accounting and legal fees and expenses to deal with the IRS fallout." FAC ¶ 11, *see also, e.g.*, *id.* ¶ 341.  Even if Plaintiffs might somehow avoid the penalties, or even avoid the penalties and keep their deductions, Plaintiffs' other damages would remain.  Moreover, the Motion only speculates that Plaintiffs might prevail on some undefined individual defenses keep their deductions even though they are based on Defendants' inflated appraisals.

## IV.   CONCLUSION

Plaintiffs request that the Court deny Defendants' Motion, or alternatively, grant Plaintiffs leave to amend the FAC.[29]

---

[29] If the Court finds any pleading deficiencies in the FAC, Plaintiffs respectfully request that the Court grant them leave to amend the FAC to address any such deficiencies 45 days after the Court's order(s) ruling on Defendants' motions.  "The Court normally grants a plaintiff the opportunity to amend before dismissing claims in a complaint for pleading defects."  *Purchasing Power*, 2012 WL 3065419, at *7.

Dated:  October 22, 2021.

Respectfully submitted:

/s/ *Tyler M. Simpson*
David R. Deary*
davidd@ldsrlaw.com
W. Ralph Canada, Jr.*
ralphc@ldsrlaw.com
Jeven Sloan (GA Bar No. 652727)
jevens@ldsrlaw.com
Wilson E. Wray, Jr.*
wilsonw@ldsrlaw.com
John McKenzie*
johnm@ldsrlaw.com
Donna Lee*
donnal@ldsrlaw.com
Tyler M. Simpson*
tylers@ldsrlaw.com
**LOEWINSOHN DEARY SIMON RAY LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
(214) 572-1700 Telephone
(214) 572-1717 Facsimile
* Admitted *Pro Hac Vice*

Edward J. Rappaport (GA Bar No. 594841)
erappaport@saylorlaw.com
**THE SAYLOR LAW FIRM LLP**
1201 W. Peachtree Street
Suite 3220
Atlanta, GA 30309
(404) 892-4400 Telephone

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1.

*/s/ Tyler M. Simpson*
Tyler M. Simpson

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 22, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system.

*/s/ Tyler M. Simpson*
Tyler M. Simpson