IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM R. PESKIN; MARK PERKINS; KENNETH L. KLAER; and MARIE R. KLAER, on behalf of themselves and all other similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>PEACHTREE INVESTMENT SOLUTIONS, LLC, et al.<br><br>   Defendants. | CIVIL ACTION FILE NO.<br><br>1:21-CV-00002-SCJ |

## ORDER

This matter appears before the Court on the various Motions to Dismiss filed jointly and individually by the named Defendants (Doc. Nos. [112]–[118]) as well as Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence (Doc. No. [127]).[1]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

I.   **BACKGROUND**

This case involves an alleged "multi-state, multi-party fraudulent scheme" to design, promote, implement and sell a flawed and defective tax savings strategy (i.e., the Syndicated Conservation Easement Strategy (the "SCE Strategy"))² to Plaintiffs and numerous other individuals (the "Class")."³ Doc. No. [105], ¶ 1.

---

² The structure of the SCE Strategy is defined in ¶ 47 of the Complaint as follows:

> [T]he SCE Strategy involves the syndication of a conservation easement transaction through the use of an entity taxed as a partnership under subchapter K of the Code. Each SCE Strategy thus involves a limited liability company ("LLC") formed under state law to serve as the "Syndicate," or the entity that holds the subject property on which a conservation easement will be placed. In most or all cases, the individuals participate in the Syndicate through a "Fund," another LLC formed for the purpose of acquiring an interest in the Syndicate and thereby allowing for several individuals to participate in a single conservation easement transaction.

Doc. No. [105], ¶ 47.

³ The proposed class is defined in relevant part as:

> All Persons, from January 1, 2011 to the present, inclusive, (i) who have been assessed back-taxes, penalties, and/or interest (via a settlement with the IRS, an amended tax return renouncing the SCE Strategy deduction and accepted by the IRS, a final Tax Court decision, or a Notice of Computational Adjustment from the IRS), or (ii) for which

2

"Conservation easements are encumbrances placed on real estate to preserve property for conservation purposes." Id. ¶ 2. "When such easements are placed on property in strict compliance with § 170(h) of the Internal Revenue Code . . . , donors of such easements may realize a noncash charitable contribution deduction for the value by which the easement impairs the fair market value of the property." Id. "When properly implemented, conservation easements can and do confer legitimate tax advantages to the donor." Id.

In the case *sub judice*, Plaintiffs allege that the two SCE Strategy transactions at issue (i.e., the "High Point" transaction and the "TOT"

---

> the IRS has made its final determination (via a Statutory Notice of Deficiency or [Final Partnership Administrative Adjustment, "FPAA"]) that the person (via the entity through which he/she participated in the SCE Strategy) is liable for back-taxes, penalties, and/or interest, as a result of their involvement, either directly or indirectly through an ownership stake in another entity, in a SCE Strategy designed, marketed, sold, implemented or managed by the Peachtree Defendants, the Foothills Defendants or any of their respective affiliates . . . .

Doc. No. [105], ¶ 234. In addition to this case, there are three other cases involving SCE Strategy transactions pending in the Northern District of Georgia that involve different properties. See Doc. Nos. [105], 83 ¶¶ 60 n.5; 162 n.10 (citing Andrew Lechter, et al., v. Aprio, LLP f/k/a Habif, Arogeti & Wynne, LLP, et al., No. 1:20-CV-01325-AT (N.D. Ga.), Hoover et al. v. Strategic Capital Partners, LLC, et al., No. 1:21-cv-01299-SDG (N.D. Ga.); see also Doc. No. [154], 2 (citing Turk v. Morris, Manning & Martin, LLP, No. 20-cv-2815 (N.D. Ga. Mar. 24, 2022)).

transaction) were not properly implemented and were never intended to be. Id. ¶¶ 3, 82. Plaintiffs allege that each of the named Defendants, who are a group of conservation easement professionals and advisors, deliberately banded together to give only the appearance of legitimacy to the SCE Strategy for their own financial gain by generating substantial fees and land interests for themselves. Id. ¶ 4. Plaintiffs state that "Defendants knew, the SCE Strategy was a complete sham." Id. ¶ 52. Plaintiffs further state that "Defendants were doing nothing more than packaging and selling grossly overvalued and ineffectively structured federal tax deductions that the IRS already was carefully scrutinizing and indicating to conservation easement professionals it would disallow." Id.

More specifically, the named Defendants are characterized and collectively referred to in the Complaint as follows:

The Sponsor and/or Promoter: Defendants Peachtree Investment Solutions, LLC ("Peachtree"), Dwayne Peterson Davis ("Davis"), and J. Stephen Bush ("Bush") are collectively referred to as the "Peachtree Defendants." Id. ¶¶ 24, 54. Plaintiffs state that "[t]he Peachtree Defendants are the key developers and organizers of the SCE Strategy, and they agreed to act as the Sponsor and at

times also the Promoter for each of the transactions they were involved in." Id. ¶ 54.

The Promoter: Defendants Old Ivy Capital Partners, LLC and Daniel Carbonara are collectively referred to as the "Old Ivy Defendants." Id. ¶¶ 26, 60. Plaintiffs allege "[u]pon information and belief" that "the Old Ivy Defendants agreed to act as the Promoter of any SCE Strategy for which the Old Ivy Defendants referred a sufficient number of participants." Id. ¶ 61.

The Appraiser: Defendants Tennille & Associates, Inc. ("Tennille") and Jean H. Roberts, in her Capacity as Personal Representative for the Estate of David R. Roberts are collectively referred to as the "Tennille Defendants." Id. ¶¶ 28, 62. Plaintiffs state that "[a]s Appraiser, the Tennille Defendants performed the Initial Appraisal to help promote the SCE Strategy and then the final Appraisal to support the valuation of the conservation easement and the charitable deduction taken by each Syndicate (which, in turn, flowed through to each Syndicate member)." Id. ¶ 64.

The Land Trust: Foothills Land Conservancy, Inc. ("Foothills") and Defendant William C. Clabough, Sr. ("Clabough") are collectively referred to the

"Foothills Defendants." Id. ¶ 66.[4] Plaintiffs state that Foothills was the land trust for the SCE Strategy, identified potential real estate for the placement of conservation easements and connected landowners to sponsors and promoters. Id. ¶ 68.

The Attorney: Defendant Bryan Cave Leighton Paisner LLP ("Bryan Cave") is the sole named defendant for the attorney role. Id. ¶¶ 31, 72. Plaintiffs state that "Bryan Cave agreed to act as the Attorney for the Syndicate and Syndicate members (as well as for the Sponsor) in connection with the SCE Strategy." Id. ¶ 73. Plaintiffs further state that Bryan Cave "drafted the Legal Opinion to affirm the legality of the SCE Strategy and the tax deduction generated therefrom." Id.

The Accountant: Defendant Warren Averett, LLC ("Warren Averett") is the sole named defendant for the accountant role. Id. ¶¶ 32, 76. Plaintiffs state that Defendant Warren Averett "agreed to play the Accountant in the SCE Strategy and knew the stringent requirements to properly claim a charitable contribution deduction for conservation easements." Id. ¶ 77.

---

[4] Said Defendants indicated that Plaintiffs incorrectly refer to them as "Inc." and in fact, its corporate name is simply "Foothills Land Conservancy." Doc. No. [118-1], 6.

Plaintiffs allege a "racketeering enterprise" among the named Defendants from which Plaintiffs were injured "by causing them to pay substantial fees and transaction costs, be exposed to interest and penalties from the IRS,[5] and incur additional accounting and legal fees and expenses to deal with the IRS fallout." Id. ¶ 11.[6]

---

[5] In their briefing, Defendants note that "Plaintiffs do not allege that their own deductions have been denied." Doc. No. [112-1], 31. Plaintiffs only state that the IRS has "made clear its intent to also disallow the charitable contribution deductions at the individual level and assess Plaintiffs and the Class with back taxes, interest, and penalties for the underpayment of taxes due to filing tax returns reflecting the promised tax benefits of the SCE Strategy." Doc. No. [105], ¶ 262.

[6] As stated in the Complaint, "[o]n March 7, 2017, Bryan Cave filed a petition on behalf of the TOT Syndicate in Tax Court challenging the adjustments proposed in the [Final Partnership Administrative Adjustment]." Doc. No. [105], ¶ 160. "On November 22, 2019, the Tax Court issued a bench opinion, entering a decision in favor of the IRS." Id. ¶ 164. "[O]n June 23, 2021, the Eleventh Circuit affirmed all aspects of the Tax Court's decision in TOT Property Holdings." Id. ¶ 168; see also TOT Prop. Holdings, LLC v. Comm'r of IRS, 1 F.4th 1354, 1361 (11th Cir. 2021). Defendant Bryan Cave has filed a Notice of Supplemental Authority that shows that on December 29, 2021, the Eleventh Circuit issued an opinion that later invalidated the regulation that was at issue in TOT. Doc. No. [150] (citing Hewitt v. Comm'r of IRS, 21 F.4th 1336, 1344 (11th Cir. 2021)). The Court stated, "while we agreed with the Commissioner's interpretation of the proceeds regulation in TOT, we expressly did not consider the validity of the regulation under the [Administrative Procedures Act], as the taxpayers there did not make such a challenge." Id. at 1344. The Eleventh Circuit then "conclude[d] that the Commissioner's interpretation of § 1.170A-14(g)(6)(ii), to disallow the subtraction of the value of post-donation improvements to the easement property in the extinguishment proceeds allocated to the donee, is arbitrary and capricious and therefore invalid under the APA's procedural requirements." Id. at 1353. In opposition, Plaintiffs state that the Hewitt case does not mandate dismissal as none of their "claims against Bryan Cave turn solely on [the] alleged defect in the Deeds." Doc. No. [152], 2 (emphasis omitted).

In their First Amended Complaint, brought under the Class Action Fairness Act of 2005, Plaintiffs assert the following twelve causes of action on behalf of themselves and a putative class of investors against all of the named Defendants (unless otherwise specified): (1) violations of the Racketeer Influenced and Corrupt Organizations Act "RICO," 18 U.S.C. § 1962(c); (2) violations of RICO, 18 U.S.C. § 1962(d)) by conspiring to violate 18 U.S.C. § 1962(c); (3) violations of Georgia RICO, O.C.G.A. § 16-14-4(A)&(B); (4) conspiracy to violate Georgia RICO, O.C.G.A. § 16-14-4(C); (5) fraud; (6) breach of fiduciary duty and disgorgement; (7) aiding-and-abetting breaches of fiduciary duty; (8) professional malpractice (against the Peachtree Defendants, the Old Ivy Defendants, the Tennille Defendants, Bryan Cave and Warren Averett); (9) negligence (against the Foothills Defendants); (10) negligent misrepresentation (in the alternative to the fraud claim); (11) rescission; and (12) civil conspiracy. Doc. No. [105].[7]

Defendants have filed a Joint Motion to Dismiss and individual Motions to Dismiss. Doc. Nos. [112]; [113]; [114]; [115];[116];[117];[118].

---

[7] The First Amended Complaint is the operative complaint and will be referred to as the Complaint or "FAC" throughout this Order.

On October 22, 20221, Plaintiffs filed a Motion to Exclude or Disregard Extrinsic Evidence. Doc. No. [127].

The pending Motions to Dismiss and the Motion to Exclude have been fully briefed and are now ripe for review.[8]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir.

---

[8] The Court has also considered the Notices of Supplemental Authority and responses at Doc. Nos. [150], [151], [152], [153], [154], [155], [158], [159].

2018). First, the court identifies "the allegations that are 'no more than conclusions,' [as] [c]onclusory allegations are not entitled to the assumption of truth." Id. (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . .") and Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

"Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 556. A complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements." Id. at 545. Although Rule 8(a)(2) does not require a complaint to contain "'detailed factual allegations,'" the Rule does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 545).[9]

As to the fraud claims, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Eleventh Circuit has held that:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

---

[9] Other legal standards will be discussed as needed in the context of the Order.

11

Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008) (citations omitted).

The Court recognizes that Defendants have raised affirmative defenses. The Eleventh Circuit has stated that "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss" unless the defense appears on the face of the complaint. Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984), on reh'g, 764 F.2d 1400 (11th Cir. 1985) ("Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.").

### III. ANALYSIS

The Court begins by considering shotgun pleadings issue. In their individual motions, various defendants have argued that Plaintiffs' First Amended Complaint constitutes a shotgun pleading. See Doc. Nos. [113-1], 14; [114-1], 7; [115-1], 2; Doc. No. [117-1], 6.

More specifically, the Peachtree Defendants assert that instead of Rule 8's short, plain statement, the Complaint "spans 394 paragraphs, incorporates and

12

realleges hundreds of allegations into each claim, and improperly lumps together defendants." Doc. No. [113-1], 6. They further assert that Plaintiffs improperly lump together their allegations and claims against the entity, "Peachtree Investment Solutions with individuals Davis and Bush." Doc. No. [113-1], 14. The Peachtree Defendants further state: "[b]y not specifying which Peachtree Defendant was responsible for which specific act, the FAC makes it virtually impossible to ascertain what factual allegations correspond with each claim or which claim is directed at which Peachtree Defendant, resulting in confusion." Id. The Peachtree Defendants further assert that the Complaint "often muddles the allegations even further, grouping the Peachtree Defendants with every other co-Defendant in the case—11 Defendants, in total—and making allegations against 'Defendants' collectively." Id. The Peachtree Defendants also state: "[b]y 'lump[ing] together several defendants,' Plaintiffs fail 'to identify with sufficient particularity 'who' exactly made the statements that they allege to be fraudulent.'" Doc. No. [113-1], 17.

The Old Ivy Defendants similarly argue that Plaintiffs improperly seek to lump Defendants together in their Complaint's allegations of wrongdoing. Doc. No. [114-1], 8. More specifically, the Old Ivy Defendants assert that "[i]t is

13

impossible to tell which allegations are being made against [Defendant] Carbonara, individually, which allegations are being made against the Old Ivy entity and which claims apply to which Old Ivy Defendant." Id. at 9.

The Warren Averett Defendant asserts that the Complaint is a shotgun pleading due to its use of incorporation by reference, indiscriminate lumping of the Defendants together collectively or in smaller groups "without specifying which defendant is responsible for which acts or omissions, or which defendant the claim is brought against." Doc. No. [117-1], 6.[10]

In opposition, Plaintiffs argue that "[t]he practice of occasionally referring to Defendants collectively is . . . not grounds for dismissal." Doc. No. [123], 9. They further state: "Plaintiffs do not rely solely on the term Defendants in a manner that makes it difficult for a particular defendant to discern the allegations specific to it." Id. Plaintiffs further state that they "use the shorthand when necessary to avoid writing out a list of 11 defendants[,] [b]ut when discussing conduct specific to a defendant or group of defendants, Plaintiffs identify the defendant by name or group-." Id. at 9–10. Plaintiffs state that mere use of the

---

[10] The Tennille Defendants mention the term "shot-gun" in their brief, but do not provide a detailed analysis. Doc. No. [115-1], 2.

term "Defendants" and "sub-grouping of them does not change the fact that the [Complaint] pleads in detail each Defendant's role in the SCE scheme and the exact misconduct they engaged in . . . ." Doc. No. [125], 7.

Complaints that violate the Federal Rules of Civil Procedure on proper pleading, "either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has also held that "[i]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (citing Ambrosia Coal & Const. Co. v. Page Morales, 482 F.3d 1309, 1317 (11th Cir. 2007).

The Eleventh Circuit has held that "a defendant faced with a shotgun pleading should 'move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 n.10 (11th Cir. 2015) (citations omitted). The Eleventh Circuit has also "advised that when a defendant fails to do so, the district court ought to take

15

the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead." Id. Here, the Court agrees that the pleading is a shotgun pleading and should be replead to address the shotgun pleading grounds of Defendants' motions comply with the requirements of Federal Rules of Civil Procedure 8, 9, and 10. The Court does not find that a dismissal with prejudice for shotgun pleading is appropriate at this time.

### IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** Plaintiffs to replead their Complaint in accordance with Federal Rules of Civil Procedure 8, 9, and 10 to delete the shotgun pleading. Said repleading shall occur within **TEN DAYS** of the entry of this Order. The Clerk shall term the following motions as **MOOT**: Doc. Nos. [112], [113], [114], [115], [116], [117], [118], [127].

The stay of deadlines (Doc. No. [111], Aug. 23, 2021 Docket order) remains.

**IT IS SO ORDERED** this 30th day of September, 2022.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**