# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| WILLIAM R. PESKIN, MARK PERKINS, KENNETH L. KLAER, and MARIE R. KLAER, on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>PEACHTREE INVESTMENT SOLUTIONS, LLC, et al.<br><br>   *Defendants*. | C.A. No. 1:21-cv-00002-SCJ<br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
PEACHTREE INVESTMENT SOLUTIONS, LLC, DWAYNE PETERSON
DAVIS, AND J. STEPHEN BUSH'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

BACKGROUND ........................................................................................2

LEGAL STANDARD..............................................................................6

ARGUMENT ...........................................................................................8

I.      Plaintiffs Continue to Violate Basic Pleading Rules.....................8

II.     The SAC Fails to Satisfy Rule 9(b). ............................................10

III.    Plaintiffs Fail to State a Claim Against Any Peachtree Defendant...............12

         1.      Fraud-Based Claims .......................................................12

         2.      Fiduciary Duty Claims ...................................................13

         3.      Professional Malpractice ................................................14

         4.      Rescission .......................................................................15

         5.      Civil Conspiracy.............................................................15

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
    482 F.3d 1309 (11th Cir. 2007) ...................................................................10, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................7

*Barmapov v. Amuial*,
    986 F.3d 1321 (11th Cir. 2021) .........................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................7

*Berry v. Indianaplis Life Ins. Co.*,
    600 F.Supp.2d 805, 819 (N.D. Tex.2009) ..........................................................13

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ........................................................................7

*Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc.*,
    No. 1:04-CV-3537-GET, 2006 WL 2842733 (N.D. Ga. Sept. 29,
    2006) .............................................................................................................15

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ........................................................................7

*Drawdy v. Dep't of Transp.*,
    228 Ga.App. 338 (1997) ..................................................................................15

*Grace Bros., Ltd. v. Farley Indus., Inc.*,
    264 Ga. 817 (1994) ........................................................................................13

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ........................................................................7

*Hewitt v. Walker*,
226 Ga.App. 764 (1997) ..................................................................15

*Mustaqeem-Graydon v. SunTrust Bank*,
258 Ga.App. 200 (2002) ..................................................................15

*Next Century Commc'ns Corp. v. Ellis*,
171 F.Supp.2d 1374 (N.D. Ga. 2001).......................................3, 12, 14

*Patel v. 2602 Deerfield, LLC*,
347 Ga.App. 880 (2018) ..................................................................13

*Singleton v. Petland Mall of Ga. LLC*,
No. 1:19-CV-01477-ELR, 2020 WL 3400194 (N.D. Ga. Mar. 18,
2020) ...............................................................................................10

*Techjet Innovations Corp. v. Benjelloun*,
203 F.Supp.3d 1219 (N.D. Ga. 2016).................................................11

*Weiland v. Palm Beach Cty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ..........................................................9

*Zarrella v. Pacific Life Ins. Co.*,
755 F.Supp.2d 1231 (S.D. Fla. 2011).................................................13

**Statutes**

O.C.G.A. § 9–11–9.1(g)....................................................................15

O.C.G.A. § 14-7-2(2).......................................................................15

O.C.G.A. § 14-10-2(2).....................................................................15

O.C.G.A. § 14-11-303......................................................................14

O.C.G.A. § 43-1-24.........................................................................15

This remains a case of sour grapes. With the risks fully disclosed, Plaintiffs made real estate investments that may not pan out. Rather than accept the downside of their risk, they now accuse everyone else involved of conspiring to dupe them.

After the Court dismissed their 190-page First Amended Complaint ("FAC") for violating basic pleading rules, Plaintiffs are now on their third attempt to state a valid claim. Yet, Plaintiffs continue to mistake volume for specificity. Instead of providing clarity, their Second Amended Complaint ("SAC") doubles down on the confusion, adding 47 pages of repetitive and conclusory allegations—all without fixing *any* of their fundamental pleading defects.

Also as before, the SAC does not just violate Rules 8(a)(2) and 10(b). Despite grounding several claims in fraud, Plaintiffs fail to satisfy Rule 9(b). The SAC lacks *any* specific allegations against Peachtree Investment Solutions, LLC ("Peachtree"). The claims against Pete Davis and Steve Bush fare no better, as Plaintiffs offer only vague, conclusory, and obscure allegations of wrongdoing. Procedural infirmities aside, Plaintiffs also fail to state a claim. For these reasons, and as explained in more detail below, all claims against the Peachtree Defendants should be dismissed.[1]

---

[1] The Peachtree Defendants also fully adopt and incorporate herein Defendants' Motion to Dismiss Second Amended Complaint and supporting arguments. *See* ECF No. 167.

## BACKGROUND

According to the SAC, Plaintiffs are unit members of two different real estate investment funds involving conservation easements. SAC at ¶¶ 84(b), 124(b). Conservation easements consist of encumbrances placed on land to preserve the property for conservation purposes. *Id.* at ¶ 2. As Plaintiffs concede, conservation easements can and do confer legitimate tax advantages to the land donor in the form of charitable contribution deductions. *Id.* Through certain types of real estate investments, multiple investors may be able to share jointly in the tax benefits that arise from a single conservation easement. *Id*. at ¶ 3.

The two real estate investments at issue here, the High Point transaction and the Trail of Tears ("TOT") transaction, arose out of the purchase and donation of parcels of land in Tennessee. *Id.* at ¶ 82. As Plaintiffs allege, each transaction primarily involved three corporate entities: (1) High Point Holdings, LLC and TOT Property Holdings, LLC (together, the "Holding Companies") served as holding companies for the land on which the conservation easement would be placed, *id.* at ¶¶ 84(a), 124(a); (2) LCV Fund XVI, LLC and PES Fund VI, LLC (together, the "Funds") served as the funds in which participants, like Plaintiffs, would invest by becoming unit members, *id.* at ¶¶ 84(b), 124(b); and (3) High Point Land Manager, LLC and TOT Land Manager, LLC (together, the "Land Managers") were the

Managers and Tax Matters Partners of the Funds, responsible for overseeing the day-to-day operations of the investment, *id.* at ¶¶ 84(c), 124(c).

Plaintiffs concede that, before investing, they received materials—including Private Placement Memoranda ("PPMs")—describing the investments in detail. *Id.* at ¶¶ 86–92, 125–127. These materials, as well as Subscription Agreements that Plaintiffs signed, contained extensive disclosures about the transactions' risks and repeatedly instructed investors to retain their own advisers for tax guidance. *See* ECF No. 167-2, Exs. D–F.[2]

For example, the PPMs and exhibits disclosed applicable risks, such as the disclosure that "THERE CAN BE NO ASSURANCE THAT THESE INVESTMENT OBJECTIVES WILL BE ACHIEVED." *Id.* at Exs. A–C at 1; *see also* SAC at ¶¶ 90–92, 126–28 (discussing the PPM at length). The PPMs disclosed, among other risks, that "[i]t is possible that the tax benefits to be claimed by the Fund or the allocation of items of income, gain, loss, deduction and credit among Members will be challenged by the IRS and that such challenge will be upheld by the courts." *Id.* at Exs. A–C at 15. Plaintiffs' own Subscription Agreements

---

[2] The Private Placement Memoranda, accompanying exhibits, and Subscription Agreements may be considered by the Court on a motion to dismiss because they are referenced in the SAC, and are thus incorporated by reference into the allegations. *See Next Century Commc'ns Corp. v. Ellis*, 171 F.Supp.2d 1374, 1379 (N.D. Ga. 2001).

contained even more extensive disclosures and disclaimers, including the risk that IRS might contest, and ultimately disallow, the tax benefits sought. *Id.* at Exs. D–F.

Plaintiffs Peskin and Perkins allege that on April 12, 2013—over eight years ago—they each invested $200,000 in the High Point transaction. SAC at ¶ 94. The Klaer Plaintiffs allege that on October 14, 2013, they invested $100,000 in the TOT transaction. *Id.* at ¶ 130. Plaintiffs concede that for each transaction, the investors voted to pursue the conservation easement. *Id.* at ¶¶ 98–99, 134–35. Plaintiffs further allege that a series of IRS audits began in 2014, resulting in a disallowance of both Funds' charitable deduction in 2017 arising from the conservation easement. *Id.* at ¶¶ 113–17, 156–60.

Based on all this, Plaintiffs filed suit against 11 individuals and entities involved with their investments, alleging a vast conspiracy and purporting to represent a sweeping class of all investors in their transactions, plus investors in unrelated real estate investments. The complaint was first amended to include the Klaers as Plaintiffs and to add a recission claim. It has now been amended another time, with no meaningful change in the Defendants, allegations, theories, or claims.

Notably absent from the SAC and this litigation, however, are *any* of the entities involved in Plaintiffs' transactions. Plaintiffs have not named any of the following entities as a party: the Funds in which Plaintiffs invested; the Land

Managers which served as Managers and Tax Matters Partners of those Funds; or the Holding Companies. Instead, Plaintiffs allege claims against, among others, Peachtree Investment Solutions LLC and its principals Pete Davis and Steve Bush. *Id*. at ¶ 22–24.[3]

The SAC identifies no specific action taken, or misstatement made, by Peachtree. Instead, as Plaintiffs concede, Peachtree is a parent company two levels removed from any entity involved in either transaction. *Id.* at ¶ 56; ECF No. 112-1 at 12 (chart of transaction structure).

Concrete allegations about Davis and Bush are similarly threadbare. Plaintiffs identify no specific action taken, or misstatement made, by either Davis or Bush. Instead, Plaintiffs allege that Davis is Peachtree's "Managing Principal" and that Bush is its "Principal." SAC at ¶ 55. Plaintiffs further allege that Davis and Bush "serve as Principals of PCEV and LCV," the corporate parents to the Land Managers of the Funds in which Plaintiffs invested. *Id.* at ¶ 56. The Klaers also allege that Bush, or "Bush and Peachtree," provided various materials and sent emails relating to the investments. *E.g., id.* at ¶¶ 125; 337(1), (4)–(8), (10), (12)–(14), (17).

Starting from those allegations, they then conflate Davis and Bush with the corporate entities actually involved in the transaction. *E.g.*, *id.* at ¶ 90(f) ("The

---

[3] All claims except Count 9 are asserted against the Peachtree, Davis, and Bush.

Manager of LCV Fund XVI, *i.e.*, Davis for HP Land Manager . . . ."); ¶¶ 84, 124 (alleging that Bush "formed" non-party entities), 90(e)–(f), 126 (e)–(f) (making the conclusory allegations that Davis and Bush "controlled and managed" non-party entities). They do not, however, suggest that Davis or Bush abused any entity's corporate form or that any such form should be disregarded.

Instead, Plaintiffs make blanket allegations that Peachtree, Davis, and Bush developed, organized, and controlled an investment "strategy" related to conservation easements and have acted as the sponsor for each conservation easement in which they were involved. *Id.* at ¶¶ 22–24, 54–58. Plaintiffs premise their claims on the theory that the supposedly common strategy behind these distinct real estate transactions was so "fatally flawed" that the Peachtree Defendants and their co-Defendants knew it would not survive IRS scrutiny. *E.g.*, *id.* at ¶ 171. Despite this knowledge, Plaintiffs allege, Peachtree, Davis, and Bush duped Plaintiffs to invest in a grand racketeering scheme. Plaintiffs further allege that these three Defendants concealed these purported flaws by, among other ways, failing to keep Plaintiffs apprised of the IRS audit and court proceedings. *Id.* at ¶¶ 204–226.

## LEGAL STANDARD

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion

to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, while all well-pleaded *facts* must be accepted as true, the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. *Id.*[4]

Rule 9(b) further provides that, when a claim sounds in fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must allege, at a minimum, the time, place, and content of the alleged misrepresentation; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).

---

[4] In deciding a motion to dismiss, a court may consider any document if its contents are alleged in the complaint and "central to the plaintiff's claim." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). When a conflict exists between a complaint's allegations and the facts contained in a document incorporated by reference into the complaint, the document governs. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

## ARGUMENT

### I.  Plaintiffs Continue to Violate Basic Pleading Rules.

The FAC was an improper shotgun pleading that violated Rules 8, 9 and 10. ECF No. 160 at 16. That is, Plaintiffs improperly lumped together the 11 Defendants into various groups—e.g., "the Peachtree Defendants," "the Professional Defendants," and "Defendants"—making it impossible to understand which allegation or claim is directed at a given Defendant or who made the statements alleged to be fraudulent. Each claim also improperly incorporated over 260 paragraphs (many containing numerous sub-paragraphs) of factual allegations into each count. For these reasons, the Court dismissed the FAC but allowed Plaintiffs to replead. *Id.*

Plaintiffs have squandered their opportunity.  Rather than specifying who—exactly—they claim did what, Plaintiffs mechanically disaggregate the lumped-together Defendant groups. For example, they routinely replace the "Peachtree Defendants" with "Peachtree, Davis, and Bush" or "Peachtree, through Davis and Bush." *Compare*, *e.g.*, FAC at ¶¶ 56, 86 *with* SAC at ¶¶ 56, 86.  But swapping defined Defendant groups for a rote list of the parties those groups were defined to include does not address the root problem. Each Defendant still lacks "adequate

notice of the claims against them and the grounds upon which each claims rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)*.*

The same issue infects Plaintiffs' amended articulation of their fraud claim, where the bulk of their amendments reside. There, Plaintiffs take the same set alleged omissions and repeat them verbatim across multiple Defendant groups. Plaintiffs say, for example, that "Peachtree, Davis, and Bush" fraudulently omitted that "the value of the conservation easement and associated tax benefits in the SCE Strategy constitute a gross valuation overstatement, thus subjecting Plaintiffs to penalties." SAC at ¶ 337(18)(a). Paragraphs later, they then levy that same allegation against four other Defendant groups, ultimately attributing the exact same alleged omission to *nine of the 11 Defendants* in the case. *See id.* at ¶¶ 338(11)(a), 339(6)(a), 341(8)(a), 342(11)(a). This is no isolated example. *See* Exhibit A.[5]

This approach is worse than lumping Defendants together. Each Defendant— Peachtree, Davis, and Bush included—now must not only trudge through Plaintiffs' massive pleading to try to piece together what Plaintiffs say each of them did wrong, but must also mix-and-match paragraph after identical paragraph to see how their alleged conduct can be distinguished from that of each other Defendant. This task is

---

[5] In addition, many of these allegations also appear to have been copied (often verbatim) from the FAC. FAC at ¶¶ 276, 337.

made all the more difficult by the supposed incorporation of hundreds of paragraphs and sub-paragraphs of factual allegations into each of their twelve counts (SAC at ¶¶ 293, 303, 314, 324, 335, 348, 354, 359, 370, 378, 387, 392) and by Plaintiffs' continued liberal use of empty phrases like "Defendants' misrepresentations and material omissions" and "misrepresentations and omissions set forth above" (*e.g.*, *id.* at ¶¶ 270(a), 283).

Put bluntly, Plaintiffs have refused to remedy their shotgun pleading problems (problems they have been aware of since—at the latest—Defendants' first round of motions to dismiss in June 2021 (*e.g.*, ECF No. 97-1 at 8–10)).  Instead, Plaintiffs have worked to obscure those problems, which has only made them worse.  After three failed attempts to comply with the rules, their SAC should be dismissed with prejudice. *See Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021).

## II.   The SAC Fails to Satisfy Rule 9(b).

Plaintiffs allege RICO, fraud, fiduciary duty and negligent misrepresentation claims, which must be pleaded with the particularity required under Rule 9(b). *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007); *Singleton v. Petland Mall of Ga. LLC*, No. 1:19-CV-01477-ELR, 2020 WL 3400194, at \*3 (N.D. Ga. Mar. 18, 2020).  But Plaintiffs do not identify with the

required specificity any misrepresentation or omission made by Peachtree, Davis, or Bush.

For starters, the RICO and negligent misrepresentation claims do not mention Peachtree, Davis, or Bush at all.   SAC ¶¶ at 293–334, 378–86.   And several paragraphs in Plaintiffs' fraud claim refer to "the misrepresentations and omissions set forth above," without saying what those supposed misrepresentations or omissions are.   SAC at ¶¶ 337(1), (5)–(9).   Other paragraphs allege broad, conclusory, and often implausible omissions. *E.g.*, *id.* at ¶¶ 337(3)–(5) (alleging that Davis, Bush, and Peachtree all "knew" that an actual development of the property was not "feasible," while conceding that each member received a ballot to cast an independent vote as to whether to develop or conserve the property); *id.* at ¶ 337(17) (alleging that Bush sent an email about the High Point investment without disclosing that the investment "was a fraud from the beginning").

Plaintiffs also devote 38 subparagraphs to alleged omissions made by Peachtree, Davis, *and* Bush, with no differentiation between them or, indeed, the several other Defendants who allegedly made identical omissions.   *Id.* at ¶¶ 337(18)(a)–(ll); *see also* Ex. A.   By "lump[ing] together several defendants," Plaintiffs fail "to identify with sufficient particularity 'who' exactly made the statements that they allege to be fraudulent." *Techjet Innovations Corp. v.*

*Benjelloun*, 203 F.Supp.3d 1219, 1232 (N.D. Ga. 2016); *see also Pages Morales*, 482 F.3d at 1317.

The remaining allegations are generally that Davis and Bush were principals of non-party affiliates; that they had prior contacts, and exchanged information, with co-Defendants; that they formed the entities to be used in the transactions; and that Bush provided the Klaers with information prepared by others. *See*, *e.g.*, SAC at ¶¶ 54–59, 63, 70, 73, 86, 124, 132–33. None of these allegations identify a single misstatement or omission made *to* any Plaintiff *by* Peachtree, Davis, or Bush.

## III.   Plaintiffs Fail to State a Claim Against Any Peachtree Defendant.

1.   *Fraud-Based Claims*. Plaintiffs do not identify any actionable "misrepresentations" on which they reasonably relied. Plaintiffs allege a litany of supposed false representations and omissions that, at their core, relate to whether the IRS would allow a deduction arising from Plaintiffs' investment in two real estate transactions. *See, e.g., id.* at ¶¶ 9, 52, 114, 157, 171, 337(18)(a), 337(18)(ii). But courts have held that predictive or opinion statements about future events, such as potential tax treatment, cannot be actionable. *Ellis*, 171 F.Supp.2d at 1380. In fact, multiple courts have held in the context of tax investments that "[a]s a matter of law, any representation or prediction by any [defendant] as to how the IRS would treat the [tax] plans . . . in the future is either an unactionable opinion or was unjustifiably

relied upon." *Berry v. Indianaplis Life Ins. Co.*, 600 F.Supp.2d 805, 819 (N.D. Tex. 2009); *see also Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp.2d 1231, 1237 (S.D. Fla. 2011) (dismissing claims arising from statements about "favorable future tax consequences" as "statements of opinion regarding future events"). This Court should follow the lead of Federal courts across the country and hold that such predictive statements are not actionable.

2.    ***Fiduciary Duty Claims***. Under Georgia law, a managing member owes a fiduciary duty to the company as a whole "because the injury is to the corporation and its shareholders collectively." *Patel v. 2602 Deerfield, LLC*, 347 Ga.App. 880, 884 (2018). Direct actions, by contrast, require a "special injury" such that the plaintiff was "injured in a way which is different from the other shareholders or independently of the corporation." *Grace Bros., Ltd. v. Farley Indus., Inc.*, 264 Ga. 817, 819 (1994).

Plaintiffs do not allege a "separate and distinct" injury resulting from the alleged breach of fiduciary duty. On the contrary, Plaintiffs seek to represent *a class of similarly situated investors* with "only minor, if any, variations" in the "resulting harm to Plaintiffs and the Class." SAC at ¶ 12; *see also id.* at ¶ 234 (alleging that all investors' injuries "originate from the same fraudulent transaction"). Plaintiffs

therefore lack standing to bring fiduciary duty claims in their individual capacities. *See Ellis*, 171 F.Supp.2d at 1381.

Moreover, Plaintiffs allege no facts to suggest that either Peachtree or Bush owed them a fiduciary duty. As for Davis, Plaintiffs conflate him with non-party managing members, alleging that "[t]he Manager of LCV Fund XVI, *i.e.*, Davis for HP Land Manager, 'will be accountable to the Fund as fiduciary.'" SAC at ¶ 90(f); *see also id.* at ¶ 126(f) (same for PES Fund VI).

This Court should not credit such an obvious sleight of hand. Under Plaintiffs' own allegations, *HP Land Manager* and *TOT Land Manager* were the managing members of the Funds in which they invested, not Davis or any other Peachtree Defendant. *See* SAC at ¶¶ 84(c), 124(c); *see also* ECF No. 167 at Exs. A–C (PPMs) at 1, 26. At any rate, fundamental Georgia corporate law makes clear that the mere fact that Davis is a principal of the Land Managers does not expose him to personal liability. *See* O.C.G.A. § 14-11-303.[6]

   **3.   *Professional Malpractice*.** Plaintiffs' "Professional Malpractice" claim is predicated on Defendants' violation of "a duty to comply with their respective applicable standards of care and the applicable provisions of their respective codes

---

[6] Even assuming that Peachtree, Davis, or Bush owed a fiduciary duty and Plaintiffs could sue them directly, the SAC does not contain any actionable allegations that they committed or aided and abetted a breach, as explained above.

of professional responsibility." SAC at ¶ 360. A "professional malpractice" claim must be based on "an act or omission . . . which is a negligent deviation from a professional standard of care, established by professional and expert testimony." *Drawdy v. Dep't of Transp.*, 228 Ga.App. 338, 339 (1997). But Plaintiffs do not allege that the Peachtree Defendants are subject to any professional standard of care. *See Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc.*, No. 1:04-CV-3537-GET, 2006 WL 2842733, at *13 (N.D. Ga. Sept. 29, 2006); *Hewitt v. Walker*, 226 Ga.App. 764, 764 (1997). Nor do Peachtree, Davis or Bush come within the ambit of any of the numerous Georgia statutes defining what it means to be a "professional." *See, e.g.*, O.C.G.A. §§ 9–11–9.1(g); 14–7–2(2); 14–10–2(2); 43–1–24.

    **4.    *Rescission*.** Plaintiffs' rescission claim fails for all the reasons identified in Defendants' consolidated motion.  ECF No. 167-1 at 23–26.

    **5.    *Civil Conspiracy*.** The claim for civil conspiracy fails because Plaintiffs have not alleged a valid underlying tort claim against Peachtree, Davis, or Bush. *See Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga.App. 200, 207 (2002).

## <u>CONCLUSION</u>

    For the reasons above and the reasons stated in the Defendants' Motion to Dismiss Second Amended Complaint, the Peachtree Defendants' Motion to Dismiss should be granted.

Respectfully submitted this 14th day of December, 2022.

|                                      | /s/ David L. Purdue                          |
|--------------------------------------|----------------------------------------------|
| *Of Counsel:*                        | David L. Pardue (GA Bar No. 561217)          |
| Stephen V. Carey                     | PARKER POE ADAMS &                           |
| Michael A. Goldsticker               | BERNSTEIN, LLP                               |
| PARKER POE ADAMS &                   | 1075 Peachtree Street, N.E.                  |
| BERNSTEIN LLP                        | Suite 1500                                   |
| 301 Fayetteville Street              | Atlanta, GA 30309                            |
| Raleigh, NC 27601                    | Tel.: 678-690-5750                           |
| stevecarey@parkerpoe.com             | Fax: 404-869-6972                            |
| michaelgoldsticker@parkerpoe.com     | davidpardue@parkerpoe.com                    |

*Counsel for Defendants Peachtree Investment Solutions, LLC, Dwayne Peterson Davis, and J. Stephen Bush*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned hereby certifies that the foregoing **Memorandum of Law in Support of Defendants Peachtree Investment Solutions, LLC, Dwayne Peterson Davis, and J. Stephen Bush's Motion to Dismiss Plaintiffs' Second Amended Complaint** was prepared in Times New Roman 14-point font, pursuant to Local Rule 5.1(B).

*/s/ David L. Purdue*
David L. Pardue (GA Bar No. 561217)

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

*/s/ David L. Purdue*
David L. Pardue (GA Bar No. 561217)

18