**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WILLIAM R. PESKIN, MARK PERKINS; KENNETH L. KLAER; and MARIE R. KLAER, on behalf of themselves and all other similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>PEACHTREE INVESTMENT SOLUTIONS, LLC; DWAYNE PETERSON DAVIS; J. STEPHEN BUSH; OLD IVY CAPITAL PARTNERS, LLC; DANIEL S. CARBONARA; BRYAN CAVE LEIGHTON PAISNER, LLP; JOHN PAUL BARRIE; TENNILLE & ASSOCIATES, INC.; JEAN H. ROBERTS, in her capacity as Personal Representative for THE ESTATE OF DAVID R. ROBERTS; FOOTHILLS LAND CONSERVANCY, INC.; WILLIAM C. CLABOUGH, SR. and WARREN AVERETT, LLC,<br><br>      Defendants. | CIVIL ACTION FILE NO. 1:21-cv-00002-SCJ |

**DEFENDANTS FOOTHILLS LAND CONSERVANCY AND WILLIAM C. CLABOUGH, SR.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................... ii

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT AND CITATION TO AUTHORITY ...............................2

    A.     The Court Lacks Personal Jurisdiction Over the FLC
        Defendants..........................................................................2

        1.     The Court lacks general jurisdiction over the FLC
            Defendants ..........................................................3

        2.     The Court lacks specific jurisdiction over the FLC
            Defendants ..........................................................4

    B.     Plaintiffs' RICO Claims Fail............................................6

        1.     No predicate acts are plausibly or particularly stated
            against the FLC Defendants.......................................6

        2.     The FAC fails to plead that the FLC Defendants
            operated or managed the alleged RICO enterprise ...................9

    C.     The Negligence Claim Fails Against the FLC Defendants.................10

    D.     The SAC Fails to State an Actionable Claim for Fraud......................12

III.   CONCLUSION...........................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2016) .........................8

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309
　　(11th Cir. 2007) ...........................................................................8

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
　　137 S. Ct. 1773 (2017).................................................................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116
　　F.3d 1364 (11th Cir. 1997) .........................................................8

*Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347 (N.D. Ga. 2018)......................2, 3

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................4

*Cisnereos v. Petland, Inc.*, 341 F. Supp. 3d 1365 (N.D. Ga. 2018),
　　*aff'd in part, rev'd in part on other grounds*,
　　972 F.3d 1204 (11th Cir. 2020) ..........................................................9

*Consol. Dev. Corp. v. Sherritt, Inc.*,
　　216 F.3d 1286 (11th Cir. 2000) .........................................................3

*Courboin v. Scott*, 596 F. App'x 729 (11th Cir. 2014)............................................6

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).....................................................3

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
　　593 F.3d 1249 (11th Cir. 2010) ........................................................2

*Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.*, ,
　　999 F.3d 1284 (11th Cir. 2021) ........................................................4

*Gen. Elec. Credit Corp. v. Scott's Furniture Warehouse
　　Showroom, Inc.*, 699 F. Supp. 907 (N.D. Ga. 1988) .......................................6

*Hanson v. Denckla*, 357 U.S. 235 (1958) ...................................................4

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................2

*Lamensdorf v. New York Univ.*, 2010 WL 11519546 (M.D. Ga. Mar. 24, 2010) .....5

*Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1325 (N.D. Ga. 2021) ........... 7, 13, 14

*Parm v. Nat'l Bank of Cal. N.A.*, 242 F. Supp. 3d 1321 (N.D. Ga. 2017) ...............9

*Perrigo Co. v. Merial Ltd.*, 215 F. Supp. 3d 1329 (N.D. Ga. 2016).........................5

*Rapaport v. Robin S. Weingast & Assocs.*,
    859 F. Supp. 2d 706 (D.N.J. 2012)................................................................11

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) .........................................................9

*Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 2014 WL 688134
    (N.D. Ga. Feb. 21, 2014) ..................................................................................6

*Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788 (11th Cir. 2016) ...............6

*Turk v. Morris Manning & Martin*, 593 F. Supp. 3d 1258,
    1308 (N.D. Ga. 2022) ........................................................................... 7-8, 13

*U.S. v. Starrett*, 55 F.3d 1525 (11th Cir. 1995) .......................................................9

*United Technologies Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009)....................2

# I.   <u>INTRODUCTION</u>

The only involvement of Foothills Land Conservancy[1] ("FLC") and its Executive Director, William C. Clabough, Sr. ("Clabough") (collectively, "FLC Defendants") in this matter is fulfilling FLC's legitimate nonprofit mission of conserving land for the benefit of the public. FLC accepted donations of the conservation easements described in the Second Amended Class Action Complaint ("SAC").  FLC did not provide Plaintiffs with any advice or information regarding their ability to obtain a tax benefit or the proper value of the land being donated.  The documents memorializing the transactions at issue confirm this and *expressly disclaim* any intent by the FLC Defendants to make any such representations.

Afforded yet another chance to plead their claims, Plaintiffs <u>expanded</u> their shotgun pleading to 237 pages and 399 paragraphs, many with voluminous subparagraphs. The repetitive and conclusory allegations in the SAC continue to skirt the detail commanded by the pleading requirements set forth in *Twombly*, *Iqbal*, and Fed.R.Civ.P. 9.  The FLC Defendants also are entitled to dismissal because the Court lacks personal jurisdiction over them.  Moreover, Plaintiffs' allegations of fraud, RICO, negligence and negligent misrepresentation set forth in the SAC still

---

[1] Plaintiffs incorrectly refer to Foothills Land Conservancy as "Inc." when, in fact, its corporate name is simply "Foothills Land Conservancy."

fail to meet the pleading requirements of Rule 9(b) or to state required elements of a claim against the FLC Defendants.  In particular, Plaintiffs' RICO claims fail to identify any predicate acts of illegal activity by the FLC Defendants.[2]

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    The Court Lacks Personal Jurisdiction Over the FLC Defendants

On a Rule 12(b)(2) motion, the plaintiff "bears the initial burden of alleging . . . sufficient facts to make out a prima facie case of jurisdiction." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). The fundamental inquiry for personal jurisdiction is whether the defendant has "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[M]inimum contacts for the purposes of exercising personal jurisdiction over a nonresident Defendant may be satisfied if the Court has either general or specific jurisdiction." *Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347, 1350 (N.D. Ga. 2018). Here, exercising personal jurisdiction over the nonresident FLC Defendants would violate due process.[3]

---

[2] The FLC Defendants join Defendants' Joint Memorandum of Law in Support of Defendants' Motion to Dismiss Second Amended Complaint ("Joint Brief") (Doc. 167-1), and incorporate herein all its arguments, authorities, and exhibits.

[3] Because personal jurisdiction would violate due process, the Court need not address Georgia's long-arm statute. *See Brown*, 347 F. Supp. 3d at 1350.

1.  **The Court lacks general jurisdiction over the FLC Defendants**

The standard for general jurisdiction is rigorous: even "continuous and systematic" contacts between a nonresident defendant and the forum are insufficient unless those contacts are so significant that they render the defendant "at home" in the jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

Here, Plaintiffs admit that the FLC Defendants are neither incorporated, reside, nor have a principal place of business in Georgia. (SAC ¶¶ 29-30.) In fact, FLC is incorporated/organized and has its principal place of business in Tennessee. (Declaration of William C. Clabough, Sr., at ¶ 4, attached hereto as Exhibit 1; *see also* Doc. 118-2).  Clabough resides in Tennessee. (*Id.*, ¶ 5.) Plaintiffs do not allege facts to suggest that the FLC Defendants maintain a regular place of business in Georgia (SAC, ¶¶ 29-30),[4] and their vague and conclusory allegations that FLC and Clabough conducted other, unspecified business in Georgia—unrelated to the claims at issue here—do not give rise to personal jurisdiction. *Brown*, 347 F. Supp. at 1350 ("Normal in-state business does not suffice to convey general jurisdiction.").

---

[4] The Eleventh Circuit has held that "[t]he casual presence of a corporate agent in the forum is not enough to subject the corporation to suit. . ." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (quoting *International Shoe*, 326 U.S. at 317).

## 2.      The Court lacks specific jurisdiction over the FLC Defendants

For a court to exercise specific jurisdiction over a nonresident defendant, the suit must arise out of or relate to the defendant's contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). Moreover, "it is essential in each case that there be some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added). Plaintiffs have not made that showing here.

*First*, the forum selection clause in the Conservation Easement Deeds mandates dismissal. *See Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.*, 999 F.3d 1284, 1296-1300 (11th Cir. 2021) (affirming dismissal of RICO action based, in part, on forum selection clause mandating litigation of dispute in foreign jurisdiction). Here, Plaintiffs' claims against the FLC Defendants are based on alleged errors and omissions contained in these two deeds. (SAC, ¶¶ 103-104, 140-143, 340(3), 340(8), 340(9).)  Both deeds have a forum selection clause providing for exclusive jurisdiction in either Blount County Tennessee or the United States District Court for the Eastern District of Tennessee for any dispute arising out of the deeds.  (Clabough Decl., Ex. B, p. 31; Ex. E, p. 32).

*Second*, the mere preparation of documents for the LLCs—the donor entities (who are not Plaintiffs)—does not establish personal jurisdiction. These documents were not prepared in Georgia, and the mere fact that these documents relate to a transaction involving certain parties who live in Georgia does not create personal jurisdiction. *See, e.g.*, *Perrigo Co. v. Merial Ltd.*, 215 F. Supp. 3d 1329, 1340-41 (N.D. Ga. 2016) ("Contracting with a party who itself resides in Georgia for an agreement . . . does not alone give rise to a Georgia-based business transaction.") (citations omitted); *see also Diamond Crystal*, 593 F.2d at 1260.

The real property at issue in the transactions is located in Tennessee, not Georgia. (SAC, ¶¶ 80-82, 90(a), 90(d), 101, 105, 125(a), 125(d), 137, 142; *see also* Clabough Decl. ¶ 9.) Further, all work done on behalf of the FLC Defendants in connection with the donated easements was done in Tennessee. (*Id.*, ¶ 10.) *See Lamensdorf v. New York Univ.*, 2010 WL 11519546, at *6 (M.D. Ga. Mar. 24, 2010) (noting lack of physical presence is significant in assessing whether specific jurisdiction exists).

Plaintiffs allege, in conclusory fashion, that the FLC Defendants "contracted with a Georgia resident," "committed torts, in whole or in part," in Georgia, and "ha[ve] purposely availed [themselves]" of the Georgia forum (SAC, ¶¶ 29-30.) Conclusory statements such as these, however, "cannot be relied upon to establish

5

the prima facie case on the issue of personal jurisdiction." *Gen. Elec. Credit Corp.*

*v. Scott's Furniture Warehouse Showroom, Inc.*, 699 F. Supp. 907, 910 (N.D. Ga.

1988). Nor can Plaintiffs overcome these deficiencies by pointing to the alleged acts

of other Defendants or their federal RICO claims because any actions imputed to the

FLC Defendants do *not* satisfy the due process analysis. *See, e.g.*, *Sprint Nextel*

*Corp. v. Ace Wholesale, Inc.*, 2014 WL 688134, at *7 (N.D. Ga. Feb. 21, 2014).

Likewise, Plaintiffs cannot rely on the federal RICO statute because their claims

against the FLC Defendants fail as a matter of law.[5] *See, e.g.*, *Courboin v. Scott*, 596

F. App'x 729, 733-34 (11th Cir. 2014).

**B.     Plaintiffs' RICO Claims Fail**

> **1.     No predicate acts are plausibly or particularly stated against the FLC Defendants**

The SAC's RICO claims (Counts I–IV) against the FLC Defendants still do

not plausibly plead that they committed even a single predicate act. *See*

*Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 790 (11th Cir. 2016)

(affirming dismissal with prejudice of complaint that "failed to allege a single

predicate act of racketeering activity").

---

[5] Plaintiffs' RICO claims do not permit this Court to exercise pendent jurisdiction over Plaintiffs' remaining claims. Personal jurisdiction is a claim-specific inquiry. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017).

The SAC contains a lengthy list of purported RICO predicate acts of mail fraud and wire fraud.  (SAC, ¶¶ 270(a)-(dd), 271-279). However, only two of these alleged acts pertain to the FLC Defendants: sending a January 9, 2014 letter to TOT Property Holdings, LLC ("TOT Holdings") acknowledging the donation of a conservation easement and another January 9, 2014 letter to TOT Holdings acknowledging a cash donation. (SAC, ¶¶ 270(f) and (g)). Plaintiffs allege that these two letters "falsely" represented that no goods or services have been or will be provided by FLC as consideration for the conservation easement or the cash donation. (*Id.*)

Yet, the SAC does not include <u>any</u> allegation that FLC provided any goods or services or other consideration to TOT Holdings in exchange for the land donation or the cash donation.  The SAC is devoid of any allegation that the two FLC letters were anything other than standard letters to a donor, or even that these letters made any representation as to the value of the conservation easement, which was the ground upon which the IRS disallowed the desired tax deductions.  *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1325 (N.D. Ga. 2021) (finding no predicate act by land trust in sending letter confirming conveyance of conservation easement and representing that it was "fully tax deductible," because land trust did not make any representation as to value of easement or potential tax benefits to plaintiffs); *Turk v. Morris Manning &*

*Martin*, 593 F. Supp. 3d 1258, 1308 (N.D. Ga. 2022) (no predicate act because no allegations that land conversation defendants made misrepresentations about value of conservation easements in donation receipt letter or elsewhere).

Plaintiffs' group pleading allegations contained in subparagraphs (z) through (dd) of paragraph 270 do not save their RICO claims against the FLC Defendants. These additional catch-all allegations, which reference several categories of documents sent by "Defendants or Other Participants" to unspecified recipients on unspecified dates, fail to plead fraud against the FLC Defemdants with particularity. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007). They fail not only to satisfy the *who*, *when*, and *where* requirements of Rule 9(b), but also the more material requirements of what was misrepresented, *how* Plaintiffs were misled, or "what the [FLC] Defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2016).

The same is true for the generic list of conduct in ¶¶ 271-279, which also fail to describe any particulars and fail to serve Rule 9(b)'s purposes of "alerting [the FLC] defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370–71 (11th Cir. 1997) (internal punctuation omitted).

8

**2.    The FAC fails to plead that the FLC Defendants operated or managed the alleged RICO enterprise**

The SAC also fails to allege that the FLC Defendants participated in the operation or management of the RICO enterprise, meaning they had "some part in directing the enterprise's affairs . . . ." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *U.S. v. Starrett*, 55 F.3d 1525, 1547 (11th Cir. 1995) (applying *Reves* test). In fact, the FLC Defendants are not alleged to have directed or managed anything at all. They are alleged to have conducted normal business activity of a land trust. Although Plaintiffs summarily allege that the "Defendants and the Other Participants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity" (SAC, ¶ 255), Plaintiffs' factual allegations do not support these conclusory allegations with respect to the FLC Defendants.

Rather, Plaintiffs merely allege that the FLC Defendants engaged in typical land trust activities, such as taking legal ownership and stewardship over property for the benefit of the general public, in furtherance of its own affairs, which does not support Plaintiffs' allegation that the FLC Defendants were operating or managing a RICO Enterprise. *See Parm v. Nat'l Bank of Cal. N.A.*, 242 F. Supp. 3d 1321, 1348 (N.D. Ga. 2017); *Cisnereos v. Petland, Inc.*, 341 F. Supp. 3d 1365, 1372 (N.D. Ga. 2018), *aff'd in part*, *rev'd in part on other grounds*, 972 F.3d 1204 (11th Cir. 2020).

**C.**      **The Negligence Claim Fails Against the FLC Defendants**

Plaintiffs allege that "[a]s advisors who provided services and advice to Plaintiffs . . . the Foothills Defendants owed Plaintiffs . . . a duty to comply with the applicable standards of care." (SAC, ¶ 371.) Plaintiffs also make general assertions that the FLC Defendants" failed to meet their applicable standards of care and their failure to do so proximately caused damages to the Plaintiffs." (Id., ¶ 373). However, the SAC is devoid of any allegations as to what the standard of care was, what specific conduct of the FLC Defendants breached it or how any such alleged breach caused damage to Plaintiffs. (Id., ¶¶ 371-377). More specifically, the SAC is devoid of any allegation that the IRS disallowed the desired tax deductions because of any acts or omissions by the FLC Defendants that breached the applicable standard of care.

In this regard, in the transactions, the donor entities specifically represented in the Conservation Easement ("CE") Deeds that they had consulted the donor's (i.e., the LLC's) attorney and accountant for advice relating to the CE and any potential tax benefits, and that the FLC Defendants had not made any warranty or representation relating to, among other things, the value of the properties nor the entitlement to any tax benefits or the amount of any such benefits. (Clabough Decl., ¶¶ 11-15, Ex. A thereto, p. 4 (counsel for FLC will draft CE and provide it to Donor and counsel for

Donor for comment and mark-up); Ex. B thereto, p. 25, ¶ 8.3;[6] Ex. E thereto, pp. 26-27, ¶ 8.3.[7]) Because of these disclaimers, there is no basis for a negligence claim against the FLC Defendants.  (See Joint Brief, pp. 20-23.)[8]

Furthermore, the allegations in the SAC fail to demonstrate that the FLC Defendants owed any duty to Plaintiffs.  There is no allegation that the FLC Defendants ever provided services or advice to any Plaintiff.  Instead, the SAC makes clear that the FLC Defendants dealt with the donor subsidiary of the transactions (i.e., High Point Holdings, LLC and TOT Holdings) in preparing the CE deeds, BDRs, and Form 8283, and that was *after* Plaintiffs purchased their interests in the LLCs. (*Compare* SAC, ¶ 100, 103-106, 108, 136-137, 139-144, (purported acts between the FLC Defendants

---

[6]  Paragraph 8.3 of the CE Deed from High Point Holdings, LLC to FLC states, "[n]either Grantee nor any of Grantee's officers, directors, employees, agents, or counsel makes any warranty, representation, or other assurance, or provides any advice regarding the value of this Easement or of the Property." (Clabough Decl., Ex. B, p. 25, ¶ 8.3) (emphasis added). Further, "As to all of the foregoing, Grantor acknowledges that Grantor is relying on Grantor's own legal counsel, accountant, financial advisor, appraiser, tax, or other consultant and not upon Grantee or any legal counsel, accountant, financial advisor, appraiser, or other consultant of Grantee." (*Id.*). The Court may consider this and other documents attached to Mr. Clabough's declaration because they are central to Plaintiffs' claims.  See Joint Brief, p. 10).

[7]  Paragraph 8.3 of the CE Deed from TOT Holdings contains the same language as that referred to in footnote 6 above.

[8] *See Rapaport v. Robin S. Weingast & Assocs.*, 859 F. Supp. 2d 706, 720-21 (D.N.J. 2012) (defendant owed no duty to plaintiffs where transaction documents specifically disclaimed any promises regarding tax implications of investments).

and the LLCs occurred between December 2013 through March 2014) *with id*., ¶¶ 94, 130 (Plaintiffs invested in the LLCs on April 12, 2013 and October 14, 2013.))  Thus, any alleged damages to Plaintiffs were not caused by the FLC Defendants.

**D.    The SAC Fails to State an Actionable Claim for Fraud**

The SAC asserts new and/or recast allegations of fraud by the FLC Defendants (SAC, ¶¶ 340 (1)-(11), 12(a)-p)) that still fall woefully short of stating a plausible fraud claim against the FLC Defendants.  For example, the SAC alleges that the FLC Defendants jointly prepared with certain other Defendants the IRS Form 8283 that included the claimed appraisal value of the CEs. (*Id*., ¶¶ 340(5) and 340(11).) However, the only part of the Form 8283 FLC filled out is a section acknowledging that it had received the property identified in a different section, and that FLC was qualified to receive the donation. (Clabough Decl., Ex. D, p. 2, § B, Part IV; id., Ex. G, p. 2, § Ex. B, Part IV.) Indeed, Form 8283 specifically instructed donees such as FLC, "This acknowledgment does not represent agreement with the claimed fair market value.  (*Id*.) (emphasis added).

Equally futile is the SAC's allegations that the promotional materials given to Plaintiffs made a "misleading" statement that FLC was a Land Trust that had "an established history of conserving property in Tennessee." (SAC, ¶¶ 340(1), 340(6).) However, the SAC does not plead any facts suggesting that this statement is false.

In any event, as Plaintiffs concede, this representation was made by other Defendants, not the FLC Defendants. (*Id*.)

The SAC also is devoid of any allegation that the FLC Defendants reviewed the promotional materials, and the SAC makes only conclusory allegations that the FLC Defendants "knew" they contained misrepresentations and omissions relating to the value of the donated parcels. *See Lechter*, 565 F. Supp. 3d at 1325 (rejecting conclusory allegations that land conservation defendants knew that appraisals for donated land were inflated and that claimed tax deductions could not withstand IRS scrutiny because "nothing in the Amended Complaint suggests that [they] had any reason to know whether the appraisals supporting Plaintiffs' claimed tax deductions had been performed accurately"); *Turk*, 593 F. Supp. 3d at 1301 (allegations that defendants knew that land appraisal was inflated "cannot be merely conclusory and unsupported by any factual allegations") (punctuation and citation omitted).

The SAC also asserts that the Baseline Documentation Reports ("BDR") and CE deeds prepared by FLC contained "false" conservation values (SAC, ¶¶ 340(3), 340(8)), but the SAC does not explain why these conversation values were "false". Nor does the SAC allege that the IRS disallowed the requested tax deductions on this basis, or on the ground that the CE Deed allowed TOT Holdings to conduct commercial forestry on the donated property. (SAC, ¶ 340(9).) *See Lechter*, 565 F.

13

Supp. 3d at 1325 (finding no fraud by land trust for statements contained in preliminary study because tax court expressed skepticism about claimed value of easement, "not the *bona fides* of the easement's purported conservation purpose"). Moreover, neither the FLC Board actions approving acceptance of the conservation easements (SAC, ¶¶ 340(2), 340(7)), nor sending letters to the donor confirming receipt of the charitable land donations (*id.*, ¶¶ 340(4), 340(10) even remotely constitute fraudulent conduct.

Plaintiffs' laundry list of alleged fraudulent omissions by the FLC Defendants (SAC, ¶¶ 340(12)(a)-(j)) fares no better. The FLC Defendants did not have any duty to make the asserted disclosures to Plaintiffs because the SAC does not allege that the FLC Defendants had any relationship with Plaintiffs or ever communicated directly with them. Moreover, Plaintiffs have failed to assert a plausible fraud claim against the FLC Defendants with particularity under Rule 9(b) based on (1) alleged defects in the CE deeds or the related BDR documents (*id.*, ¶¶ 340(12)(a), (b), (d)-(h)), because the SAC does not allege that the IRS or the Tax Court disallowed the claimed tax deductions on this ground, or even that the FLC Defendants knew that these documents supposedly were defective; (2) Form 8283 (*id.*, ¶¶ 340(12)(i), (k), (l)) because FLC properly filled out its portion of the form (Clabough Decl., Ex. D, p. 2, § B, Part IV; Ex. G, p. 2, § B, Part IV), and the SAC does not allege that FLC

14

has specialized knowledge regarding how Form 8283 in its entirety must be filled out, or that FLC submitted the final version of the form to the IRS; (3) the fair market value of the CEs (SAC, ¶¶ 340(12)(c)) because the SAC only contains conclusory allegations that the FLC Defendants knew that the appraisals at issue were inflated;[9] (4) the ultimate outcome of litigation with the IRS regarding the disallowed deductions (SAC, ¶¶ 340(12)(m)-(o)) because the FLC Defendants are not tax advisors or litigators and repeatedly stated in the CE deeds and related documents that they were not making any representations as to the tax consequences of the transactions at issue; or (5) the alleged failure to admit that the FLC Defendants were involved in a "conspiracy" with the other Defendants (SAC, ¶ 340(12)(p)) because, as discussed in the Joint Brief at pp. 38-39, 42-43, Plaintiffs have not plausibly pled the existence of any such conspiracy.[10]

### III.   CONCLUSION

For the foregoing reasons, and as further detailed in Defendants' Joint Brief, the Court should dismiss with prejudice all of Plaintiffs' claims without leave to amend.

---

[9] Similarly, the SAC offers nothing other than conclusory allegations that the FLC Defendants knew that Roberts of Tennille was suspended previously for preparing various "sham" appraisals. (SAC, ¶ 340(12)(j)).

[10] Plaintiffs' negligent misrepresentation claim against the FLC Defendants should be dismissed for the same reasons discussed above.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 380162
bbuechner@fmglaw.com

*Attorneys for Foothills Land Conservancy and William C. Clabough, Sr.*

100 Galleria Parkway, Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 14th day of December, 2022.

FREEMAN MATHIS & GARY, LLP

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

*Attorney for Foothills Land Conservancy and William C. Clabough, Sr.*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

17

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **Defendants Foothills Land Conservancy and William C. Clabough, Sr.'s Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to all counsel of record who are CM/ECF participants.

This 14th day of December, 2022.

/s/ Dana K. Maine
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

*Attorney for Foothills Land Conservancy and William C. Clabough, Sr.*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

18