IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM R. PESKIN; MARK PERKINS; KENNETH L. KLAER; and MARIE R. KLAER, on behalf of themselves and all other similarly situated, | )<br>)<br>)<br>)<br>)<br>) |
| *Plaintiffs*, | ) CASE NO. 1:21-cv-00002-SCJ |
| v. | )<br>) |
| PEACHTREE INVESTMENT SOLUTIONS, LLC, et al., | )<br>)<br>) |
| *Defendants*. | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS FOOTHILLS LAND CONSERVANCY AND WILLIAM C. CLABOUGH, SR.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT[1]**

---

[1] Plaintiffs file this Response to the Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Dkt. 174) and Memorandum of Law in Support (Dkt. 174-1) filed by Defendants Foothills Land Conservancy, Inc. ("Foothills") and William C. Clabough Sr. ("Clabough") (the Memorandum of Law will be called "Motion" or "Mot."). Plaintiffs' Consolidated Response is incorporated as if fully set forth herein. Plaintiffs use capitalized terms defined in Plaintiffs' Second Amended Complaint (Dkt. 166) ("SAC") and the Consolidated Response.

# TABLE OF CONTENTS

I. INTRODUCTION & RELEVANT FACTS ...................................................... 1

II. ARGUMENTS AND AUTHORITIES ........................................................... 1

    A. The Court has personal jurisdiction over Foothills and Clabough. ................................................................................................. 1

        1. The Court has RICO jurisdiction. ................................................. 1

        2. The Court also has general jurisdiction. ...................................... 2

        3. The Court also has specific jurisdiction. ..................................... 3

        4. The forum selection clause in the Conservation Easement Deeds does not defeat the Court's personal jurisdiction. ........... 5

    B. Plaintiffs have properly stated their RICO claims. .............................. 7

        1. Plaintiffs have sufficiently pleaded predicate acts ...................... 7

        2. Plaintiffs have sufficiently pleaded that Foothills and Clabough operated or managed the RICO enterprise. ................ 9

    C. Plaintiffs state a negligence claim. ..................................................... 11

    D. Plaintiffs state a fraud claim. .............................................................. 13

III. CONCLUSION ............................................................................................ 15

CERTIFICATE OF COMPLIANCE ................................................................... 17

CERTIFICATE OF SERVICE ............................................................................. 17

## I. INTRODUCTION & RELEVANT FACTS

The SAC alleges that Foothills and Clabough were central to a scheme to sell SCE Strategy transactions to unsuspecting participants such as Plaintiffs. Foothills and its Executive Director, Clabough, identified landowners who might sell their properties to be used in the scheme (*see, e.g.*, SAC ¶¶ 51(a)-(b), 66-71) as well as (a) prepared documents—such as draft and final BDRs, Conservation Easement Deeds, and Appraisal Summaries—that Foothills and Clabough knew failed to meet Tax Code requirements, (b) misrepresented the legitimacy of the conservation easements, and (c) misrepresented the value of those easements. For their involvement, Foothills and Clabough earned donations of land, cash contributions, and fees. SAC ¶¶ 70, 51(h)(ii)-(iii). The Motion ignores these and other allegations and should be denied.

## II. ARGUMENTS AND AUTHORITIES

### A. The Court has personal jurisdiction over Foothills and Clabough.

The Motion incorrectly asserts that the Court does not have personal jurisdiction over Foothills and Clabough. Mot. at 6-10.

#### 1. The Court has RICO jurisdiction.

As set forth in the Consolidated Brief, Plaintiffs pleaded a RICO conspiracy. 18 U.S.C. § 1965(d) provides for nationwide service of process. As the Eleventh Circuit explained, "[w]hen a federal statute provides for nationwide service of

process," that is "the statutory basis for personal jurisdiction." *Republic of Panama v. BCCI Holdings S.A.,* 119 F.3d 935, 942 (11th Cir. 1997).[2]

### 2. The Court also has general jurisdiction over Foothills.

Foothills is a Tennessee corporation. SAC ¶ 29. As the website of the Corporations Division of the Georgia Secretary of State makes clear, Foothills was registered to do business in Georgia and has maintained a registered agent in Georgia since at least May 15, 2013, before Plaintiffs' claims arose. *See* https://ecorp.sos.ga.gov/BusinessSearch, last visited January 31, 2023. Under Georgia law, Foothills consented to general jurisdiction in Georgia by registering to do business there. *Allstate Ins, Co. v. Klein*, 262 Ga. 599, 601 (1992) (Georgia courts have general personal jurisdiction over any corporation that is "authorized to do or transact business in this state at the time a claim arises"); *see also Cooper Tire & Rubber Co. v. McCall,* 2021 WL 4268074, at *9 (Ga., Sept. 21, 2021) (reaffirming *Klein's* holding that foreign corporations that register to do business in Georgia consent to personal jurisdiction); *Matthews v. Tenet Healthcare Corp.*, 2009 WL

---

[2] The Motion contends that the RICO claims do not grant pendent jurisdiction over the remaining claims, citing *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1781 (2017). Mot. at 10 n.5. But that case does not even discuss pendent personal jurisdiction. 28 U.S.C. § 1367(a) gives this Court personal jurisdiction over Plaintiffs' state law claims. *See also NCI Grp., Inc. v. Cannon Servs., Inc.*, No, 1:09-CV-0441-BBM, 2009 WL 2411145, at *6-7 (N.D. Ga. Aug 4, 2009).

10699758, at *2-3 (N.D. Ga. June 17, 2009) (following *Klein*); *Drake v. JWN, Inc.*, 2018 WL 9415068, at *2 (N.D. Ga. July 30, 2018) (same).³

### 3. The Court also has specific jurisdiction.

This Court also has specific jurisdiction over Foothills and Clabough because Plaintiffs allege the requisite nexus between those Defendants, Georgia, and the litigation. *See Walden v. Fiore*, 571 U.S. 277, 285-86 (2014). As part of the Defendants' conspiracy, Foothills and Clabough prepared for the High Point and TOT Syndicate transactions fraudulent draft BDRs and Conservation Easement Deeds as well as other information that they knew and intended would become part of the Promotional Materials sent to and relied on by potential participants, such as Plaintiffs, who resided in Georgia. *E.g.,* SAC ¶¶ 15, 18-21, 66-69, 86, 103-06, 108-10, 123, 125, 134, 136, 140-45, 147, 151-55. Foothills and Clabough thereafter prepared final BDRs and Conservation Easement Deeds for the High Point and TOT Syndicate transactions that they knew and intended would be sent to, and relied on by, members of the Syndicates, including the Plaintiffs. *Id.* ¶¶ 103-04, 140-41.⁴

---

³ While the Motion cites *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1289, 1293 (11th Cir. 2000), to argue that the "casual presence" of an agent for service of process is not sufficient, *Sherritt* did not address Georgia's conclusion that a corporation's registration to do business constitutes a consent to general jurisdiction.
⁴ Foothills and Clabough prepared the BDRs and Conservation Easement Deeds with knowledge that they failed to conform with the IRS Code and applicable regulations. *Id.* ¶¶ 142, 190-92. As a result, the Strategies failed to generate legitimate tax deductions for Plaintiffs. *Id.*

Foothills also sent letters—signed by Clabough—to the High Point and TOT Syndicates in Georgia acknowledging their donations. *Id.* ¶¶ 106, 144-45, 270(f-g). Foothills and Clabough thereafter prepared Appraisal Summaries (Forms 8283) for the High Point and TOT Syndicates and their members that they knew would be forwarded to the members, including Plaintiffs in Georgia, and which they knew the members would use to substantiate their deductions. *Id.* ¶¶ 109, 151, 154, 185, 189.[5] Foothills and Clabough also sent letters to the High Point and TOT Syndicates, which are located in Georgia, acknowledging the conveyances of the conservation easements. *See id.* ¶¶ 106, 144.  Finally, Plaintiffs' injuries—caused by Foothills and Clabough's actions—were and will be felt in Georgia. *See id.* ¶¶ 107, 116, 120, 145, 159, 165, 169.  These are all purposeful contacts with Georgia.

The Motion wrongly suggests that the acts of other Defendants have no bearing on the Court's jurisdictional analysis. Mot. at 10.  But the very case cited by the Motion acknowledges that Georgia recognizes a "conspiracy theory of personal jurisdiction," where "the in-state acts of a resident co-conspirator may be imputed to a nonresident co-conspirator so as to satisfy the specific contact requirements of the Georgia Long Arm Statute." *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 2014 WL 688134, at *7 (N.D. Ga. Feb. 21, 2014).  A plaintiff may

---

[5] Foothill and Clabough knew that the Appraisal Summaries were defective, *inter alia*, because the Summaries did not report the cost basis for the properties or the date or manner of the donor's acquisition of them. *Id.* ¶¶ 109, 151, 185-89.

4

allege the conspiracy had the requisite contact with Georgia, *i.e.*, a "purposefully sought activity with or in Georgia by the nonresident," to establish the Court's jurisdiction. *Id.* That is what Plaintiffs allege here. *See, e.g.*, SAC ¶¶ 86-95, 97-98, 107-09, 111, 124-30, 132-34, 136, 146-47, 151. Thus, Foothills and Clabough are also properly subject to personal jurisdiction because of the Georgia-directed contacts of their co-conspirators. *See Rudo v. Stubbs*, 221 Ga. App. 702, 703-04 (1996) ("When the purpose of a conspiracy is to commit an intentional tort against a Georgian, all of the coconspirators are purposefully directing their activities toward Georgia and should reasonably anticipate being haled into court there"); *Earthlink, Inc. v. Pope*, 2006 WL 2583066, at *5-6 (N.D. Ga. Aug. 31, 2006) (considering the activities of all alleged co-conspirator defendants "as a whole in determining whether they had sufficient contacts with Georgia"); *Nat'l Egg Co. v. Bank Leumi le-Israel, B.M.*, 514 F. Supp. 1125, 1127-28 (N.D. Ga. 1981).[6]

In the alternative, Plaintiffs request leave to conduct targeted discovery before the Court decides the personal jurisdiction issue.

### 4. The forum selection clause in the Conservation Easement Deeds does not defeat the Court's personal jurisdiction.

The Motion incorrectly asserts that the Court lacks specific personal jurisdiction over Foothills and Clabough because the forum selection clause in the

---

[6] The Motion cites *Sprint Nextel*, 2014 WL 688134, at *7, for the assertion that actions imputed to Foothills and Clabough cannot satisfy due process. However,

5

Conservation Easement Deeds purportedly mandates a Tennessee forum. Mot. at 8. First, the only authority provided in the Motion on this point is a case where the court affirmed dismissal under *forum non conveniens*, not because the forum selection clause deprived the court of personal jurisdiction. *Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.,* 999 F.3d 1284, 1295-1300 (11th Cir. 2021). As set forth herein, the service of Foothills and Clabough pursuant to 18 U.S.C. § 1965(d), their contacts with Georgia, including through the contacts of their co-conspirators, and their registration and consent to general jurisdiction in Georgia establish the Court's personal jurisdiction over Foothills and Clabough.

Second, Plaintiffs are not bound by the forum selection clauses because they were not parties to the Deeds. As this District has previously stated:

> As a general rule, a party who does not sign a contract is not bound to the terms of that contract. Therefore, absent a valid exception, a party cannot enforce a forum selection clause in a contract against an adverse party who was not a party to the contract.

*Gondolier Pizza Intern., Inc. v. CRT Too, LLC*, 2009 WL 3152183, at *5 (N.D. Ga. Sept. 29, 2009) (internal citations omitted).[7] Plaintiffs also seek rescission of the

---

*Sprint Nextel* does not stand for such an expansive assertion. *Id.* Rather, this District recognized that "conspiracy jurisdiction permits personal jurisdiction over a defendant whose own acts might be insufficient to establish minimum contacts" but stated that the conspiracy must also be directed at Georgia. *Id.* Here, Defendants' conspiracy and actions were directed specifically at Plaintiffs in Georgia.

[7] Federal courts have recognized an exception may apply if a non-signatory's rights are "completely derivative of those of the signing parties and thus directly related to, if not predicated upon, the interests of the signing parties." *Id.* (cleaned up).

6

Conservation Easement Deeds, making any dismissal based on their terms premature. SAC at Count XI, ¶¶ 387-91.

**B.   Plaintiffs have properly stated their RICO claims.**

    **1.   Plaintiffs have sufficiently pleaded predicate acts.**

The Motion asserts that the SAC fails to plead any predicate acts against Foothills and Clabough. Mot. at 10-12. But those Defendants ignore the predicate acts alleged in the SAC. First, Plaintiffs alleged representative examples in their RICO claim of Foothills and Clabough's predicate acts:

    e. On December 20, 2013, Bush and Peachtree emailed Marie Klaer and other TOT Syndicate members a ballot to cast a vote to determine whether the TOT Syndicate should pursue the conservation plan or development plan, despite knowing the SCE Strategy was designed to accommodate only the former plan, and also attached a copy of *the draft TOT Deed prepared by Foothills (and signed by Clabough)* containing the misrepresentations and omissions set forth above;

    f. On January 9, 2014, *Clabough and Foothills* sent a letter to TOT Property Holdings, LLC acknowledging the donation of a conservation easement on the TOT Parcel and falsely representing that no goods or services have been or will be provided by Foothills as consideration for the grant of the easement;

    g. On January 9, 2014, *Clabough and Foothills* sent a letter to TOT Property Holdings acknowledging its charitable contribution of $25,252 in cash and falsely representing that no goods or services were given in exchange for this donation;

    i. On March 22, 2014, Bush and Peachtree emailed Marie Klaer and the other TOT Syndicate members a link to the supplemental information to be filed with their respective K-1s from PES Fund VI, including a completed Form

---

However, Plaintiffs assert their own claims directly, not derivatively. And Foothills and Clabough fail to assert or establish any other exception to the general rule.

>   8283, Form 8283 Supplemental Statement, the TOT Appraisal, the TOT BDR, the TOT Deed, and the two January 9, 2014, *letters from Foothills to TOT Property Holdings*, each and all of which contained the misrepresentations and omissions set forth above.

SAC ¶ 270(e, f, g, i) (emphasis added). Foothills and Clabough focus on the donation letters, contending that those letters were mere "standard letters to a donor" and did not "ma[k]e any representation as to the value of the conservation easement." Mot. at 11. But this argument ignores that the documents sent by Foothills and Clabough need only have furthered Defendants' fraudulent scheme to constitute a predicate act. *See Atl. Postal Credit Union v. Johnson*, 2017 WL 4890539, at \*3 (N.D. Ga. Aug. 15, 2017). The letters did so by giving the false impression that the donation was a legitimate transaction when Foothills and Clabough both knew it was not. SAC ¶¶ 340(4, 10). These examples sufficiently detail predicate acts committed by Foothills and Clabough.

But the examples are exactly that—a non-exhaustive list of the types of predicate acts that Defendants engaged in. Elsewhere, Plaintiffs describe in detail Foothills and Clabough's predicate acts in furtherance of the fraudulent SCE Strategy scheme, including their preparation and/or verification of fraudulent BDRs, Deeds, and Appraisal Summaries, all of which were transmitted to Plaintiffs. *See, e.g.*, SAC at ¶¶ 80, 103-04, 106, 125, 140-41, 145, 190-92, 340.

Although the Motion points to *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1325 (N.D. Ga. 2021), and *Turk v. Morris Manning & Martin*, 593 F. Supp. 3d 1258,

8

1308 (N.D. Ga. 2022), as justifying dismissal of the RICO claims, here, the SAC alleges more involvement by Foothills and Clabough than the landowners in *Lechter* and *Turk* such as visiting landowners and communicating with them about acquiring the land for the Strategies, facts which would have made them aware of the cost basis of the properties that were improperly withheld from the Appraisal Summaries and show that they would have realized that the valuations in the Appraisal Summaries were grossly inflated.  SAC ¶¶ 67-68, 71, 85, 123.  Further, pursuant to Rule 9(b), the SAC need only allege knowledge generally.  Fed. R. Civ. P. 9(b).

> **2. Plaintiffs have sufficiently pleaded that Foothills and Clabough operated or managed the RICO enterprise.**

Under 18 U.S.C. § 1962(c)'s "operation or management" test, liability is not limited to those "with primary responsibility for the enterprise's affairs," and a "formal position within the enterprise" is not required. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "Significant control" is not required, only *some* part in directing the enterprise's affairs. *Id.* at 179 & n.4. Thus, both those in "upper management" as well as "lower rung participants who are under the direction of upper management" can operate the enterprise. *Id.* at 184. This includes those lower-level participants who "knowingly implement" and "make decisions" that are

related to the affairs of the enterprise under the direction of upper management. *United States v. Browne*, 505 F.3d 1229, 1277 (11th Cir. 2007).

The Motion argues that the SAC merely accuses Foothills and Clabough of performing ordinary business services. Mot. at 13. But the Motion again recharacterizes and ignores the allegations. Foothills and Clabough were part of the operation and management of the enterprise because they directed tasks in furtherance of Defendants' scheme that were far different from those land trusts ordinarily perform. In addition to identifying properties used for the SCE Strategies (SAC ¶¶ 66-68, 80-83), these tasks also included, among other things: preparing BDRs that contained misrepresentations and omissions (*id.* ¶¶ 8, 67, 69, 103, 140, 171, 190-92, 340(3, 8); preparing Conservation Easement Deeds that contained misrepresentations and omissions (*id.* ¶¶ 8, 67, 69, 104-05, 141-43, 162, 340(3, 8, 9)); signing Appraisal Summaries (Form 8283) with grossly inflated values and which failed to comply with reporting requirements (*id.* ¶¶ 8, 38-39, 108-09, 147, 151, 154, 169, 185-89, 340(5, 11)); and prioritizing fees over land conservation (*id.* ¶¶ 51(h)(ii), 70). Many of these tasks were also performed, in part, at the direction of Peachtree, Davis, and Bush, including where Foothills and Clabough knowingly

implemented the decision of Peachtree, Davis, and Bush to find a valid conservation purpose where there was not one.

### C.  Plaintiffs state a negligence claim.

The Motion attacks nearly every element of negligence by, once again, ignoring allegations and making improper inferences. Mot. at 14-15. First, as to breach and causation, the SAC alleges that Foothills and Clabough prepared draft BDRs and Conservation Easement Deeds, and later final versions of those same documents, that they knew and intended would be sent to Plaintiffs, and upon which they knew and intended participants would (and did) rely both in participating in the Syndicates and in claiming the promised tax deductions. *See, e.g.*, SAC ¶¶ 51(c)(iii), 69, 98, 103-04, 107-11, 134, 140-43, 146-54, 156-70, 174-75, 181, 371-72.[8] Further, Foothills and Clabough prepared the BDRs, Conservation Easement Deeds, and Appraisal Summaries (Form 8283) with full knowledge of the requirements under the Tax Code and related regulations for a legal and legitimate conservation easement donation and knowing that the Appraisal Summaries contained grossly inflated values and, despite this knowledge, failed to prepare these documents to comply with the Code and applicable regulations and to reflect accurate values. *Id.*

---

[8] The Motion suggests that these documents were sent only after the fact. This is wrong for two reasons: (1) Foothills sent drafts of these documents to Plaintiffs before they ever invested in the Syndicates; and (2) Plaintiffs made the decision to claim the deductions after Foothills and Clabough prepared the final versions. *Id.*

11

¶¶ 8, 38-40, 142, 169, 174-75, 185-92, 340(3, 5, 8-9, 11), 371, 373.  Defendant Warren Averett relied upon the final versions of these documents in preparing the tax returns for the Syndicates and in preparing the K-1's for the members.  *Id.* ¶¶ 107-11, 146-54, 185, 189, 190-92.  And Plaintiffs relied upon them in filing their tax returns and claiming their conservation easement donation deductions.  *Id.*

The Motion also asserts that Plaintiffs are barred by the purported disclaimers in a letter of intent and in Conservation Easement Deeds in which the Syndicate LLCs represented that they had consulted with their (the Syndicate's) attorney and accountant and that Foothills did not make any warranty or representation regarding the tax benefits.  Mot. at 13.  However, this argument fails for at least three reasons.  First, these documents are not properly before the Court (*see* Plaintiffs' Motion to Disregard).  Second, Plaintiffs were not parties to the Conservation Easement Deeds and did not make any representations in the Deeds. *Cf. Textile Rubber & Chem. Co. v. Thermo-Flex Techs, Inc.*, 308 Ga. App. 89, 96 (2011).  Foothills and Clabough cite no law that would mandate dismissal based on language in these Deeds, especially given that Plaintiffs did not sign them.  Moreover, Foothills and Clabough fail to cite any allegations in the SAC that indicate that Plaintiffs even saw the letter of intent (and, regardless, Plaintiffs are not parties to that letter).[9]  Third, the

---

[9] The case cited in footnote 8 of the Motion is inapposite because there the disclaimers were in agreements signed by both plaintiff and defendant. *Rapaport v. Robin S. Weingast & Assocs.*, 859 F. Supp. 2d 706, 712-13 (N.D.J. 2012).

Conservation Easement Deeds refer only to what the Syndicate LLCs were relying on, *not* what *Plaintiffs* or any of the other participants were relying on. Plaintiffs further incorporate by reference the response regarding disclaimers contained in the Consolidated Response.

### D. Plaintiffs state a fraud claim.

The SAC does, in fact, allege that Foothills and Clabough made false representations to Plaintiffs. As set forth in Section II.C., those Defendants made false representations in BDRs, Conservation Easement Deeds, and Appraisal Summaries (Form 8283) that they knew and intended that participants, like Plaintiffs, would rely on.

Moreover, the Promotional Materials sent to Plaintiffs included the draft BDRs and Conservation Easement Deeds. SAC ¶ 51(d). These documents were also incorporated in the Legal Opinions sent with the Promotional Materials. *Id.* ¶ 74. Defendants Old Ivy and Carbonara sent the Promotional Materials for High Point to participants, including Plaintiffs Peskin and Perkins, in or about April 2013, and Defendants Peachtree and Bush sent the Promotional Materials for TOT to Plaintiff Marie Klaer on October 11, 2013. *Id.* ¶¶ 86, 125. Defendant Warren Averett incorporated the final BDRs, Conservation Easement Deeds, and Appraisal Summaries (Form 8283) in the K-1s sent to Plaintiffs. *Id.* ¶ 78. Defendant Warren Averett, directly or through Old Ivy, sent the K-1s for High Point to Plaintiffs Peskin

13

and Perkins on or about April 13, 2014, and sent the K-1s for TOT to the Klaer Plaintiffs on or about April 13, 2014. *Id.* ¶¶ 108-11, 147-53. Defendant Bush further sent the TOT Conservation Easement Deed and Appraisal Summary to the Klaer Plaintiffs on or about March 22, 2014. *Id.* ¶ 154. Finally, the Klaer Plaintiffs included those documents with their tax returns. *Id.*

Contrary to the Motion and unlike in *Lechter* and *Turk*, the SAC makes plausible allegations that Foothills and Clabough knew about the inflated value of the donations. As noted above, Foothills and Clabough had visited the properties and were intimately involved in selecting those properties for the SCE Strategy,[10] and, thus, plausibly knew that the TOT Parcel, for instance, was a "rural and undeveloped" property that "lacked … attractive features" such as mountain views or lakes[11] and could not possibly be worth "nearly $12,000 per acre," as the Appraisal Summary represented.[12]

The Motion also wrongly contends that the false representations about the conservation purpose in the BDRs and Deeds are not actionable because (a) the SAC fails to explain why the representations were false and (b) the Tax Court did not rely on this defect to disallow the deductions. Paragraph 142 explains that the "TOT Deed" incorporated the conclusions of the BDR that the donation would "serve

---

[10] SAC ¶¶ 68, 81-83, 123.
[11] *TOT Prop. Holdings, LLC v. CIR*, 1 F.4th 1354, 1371-72 (11th Cir. 2021).
[12] SAC ¶ 139.

14

various conservation purposes;" however, "Foothills and Clabough knowingly permitted the Syndicate to reserve rights to conduct commercial forestry," which "would endanger at-risk species and ruin scenic views of the woodland." This defect was incorporated to give "favorable" forestry carve-outs to the Syndicate (and later to Foothills as the recipient of the donation) when Foothills and Clabough knew it would imperil the conservation purposes underlying the easement. And just because the Tax Court did not specifically rely on this fraudulent defect in its bench opinion does not mean the defect failed to cause Plaintiffs' damages. Indeed, the IRS sought disallowance for that *very* reason. *TOT Prop. Holdings, LLC v. CIR*, 2019 WL 11880554, at *4 (T.C. Nov. 22, 2019), aff'd, 1 F.4th 1354 (11th Cir. 2021) ("… the Commissioner argued that …the right to conduct commercial forestry … defeat [the easement's] conservation purpose"). The Tax Court reserved that issue because it disallowed the deduction based on one of the IRS's other grounds. *Id.*

### III.  CONCLUSION

Plaintiffs respectfully request that the Court deny Foothills and Clabough's Motion in its entirety, or alternatively, grant leave to amend.

Dated:  January 31, 2023.

        Respectfully submitted,

        */s/ David R. Deary*
David R. Deary*
davidd@dearyray.com
W. Ralph Canada, Jr.*
ralphc@dearyray.com
Jeven Sloan (GA Bar No. 652727)
jevens@dearyray.com
Wilson E. Wray, Jr.*
wilsonw@dearyray.com
John McKenzie*
johnm@dearyray.com
Donna Lee*
donnal@dearyray.com
Tyler M. Simpson*
tylers@dearyray.com
**DEARY RAY LLP**
12377 Merit Drive, Suite 900
Dallas, Texas 75251
(214) 572-1700 Telephone
(214) 572-1717 Facsimile
\* Admitted *Pro Hac Vice*

Edward J. Rappaport (GA Bar No. 594841)
erappaport@saylorlaw.com
**THE SAYLOR LAW FIRM LLP**
1201 W. Peachtree Street
Suite 3220
Atlanta, GA 30309
(404) 892-4400 Telephone

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1

*/s/ Tyler M. Simpson*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 31, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system.

*/s/ Tyler M. Simpson*

17