## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM R. PESKIN; MARK
PERKINS; KENNETH L. KLAER;
and MARIE R. KLAER, on behalf of
themselves and all other similarly
situated,

    **Plaintiffs,**

**v.**

PEACHTREE INVESTMENT
SOLUTIONS, LLC, et al.

    **Defendants.**

CIVIL ACTION FILE NO.

 1:21-CV-00002-SCJ

## <u>ORDER</u>

    This matter appears before the Court on the various Motions to Dismiss

filed jointly and individually by the named Defendants (Doc. Nos. [167]–[175]),

as well as Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence (Doc.

No. [183]).[1]

---

[1] All citations are to the electronic docket unless otherwise noted and all page numbers are those imprinted by the Court's docketing software.

# I.   BACKGROUND

This case involves an alleged "multi-state, multi-party fraudulent scheme" to design, promote, implement and sell a flawed and defective tax savings strategy (i.e., the Syndicated Conservation Easement Strategy (the "SCE Strategy")) [2] to Plaintiffs and numerous other individuals (the "Proposed Class").[3] Doc. No. [166], ¶ 1.

_____

[2] The structure of the SCE Strategy is defined in ¶ 47 of the Second Amended Complaint as follows:

> The SCE Strategy involves the syndication of a conservation easement transaction through the use of an entity taxed as a partnership under subchapter K of the Code. Each SCE Strategy thus involves a limited liability company ("LLC") formed under state law to serve as the "Syndicate," or the entity that holds the subject property on which a conservation easement will be placed. In most or all cases, the individuals participate in the Syndicate through a "Fund," another LLC formed for the purpose of acquiring an interest in the Syndicate and thereby allowing for several individuals to participate in a single conservation easement transaction.

Doc. No. [166], ¶ 47.

[3] The proposed class is defined in relevant part as:

> All Persons, from January 1, 2011 to the present, inclusive, (i) who have been assessed back-taxes, penalties, and/or interest (via a settlement with the IRS, an amended tax return renouncing the SCE Strategy deduction and accepted by the IRS, a final Tax Court decision, or a Notice of Computational Adjustment from the IRS), or (ii) for which

"Conservation easements are encumbrances placed on real estate to preserve property for conservation purposes." Id. ¶ 2. "When such easements are placed on property in strict compliance with § 170(h) of the Internal Revenue Code . . . , donors of such easements may realize a noncash charitable contribution deduction for the value by which the easement impairs the fair

_____

> the IRS has made its final determination (via a Statutory Notice of Deficiency or [Final Partnership Administrative Adjustment ("FPAA")] that the person (via the entity through which he/she participated in the SCE Strategy) is liable for back-taxes, penalties, and/or interest, as a result of their involvement, either directly or indirectly through an ownership stake in another entity, in a SCE Strategy designed, marketed, sold, implemented, or managed by Peachtree, Davis, Bush or any of Peachtree's respective affiliates. Excluded from the Class are: Defendants; Defendants' parents, subsidiaries, affiliates, partners, and employees; anyone receiving referral fees from the SCE Strategy transactions; federal governmental entities; the Other Participants; the Other Participants' parents, subsidiaries, affiliates, partners, and employees; any entity or individual receiving referral fees from the SCE Strategy transactions; and federal government entities.

Doc. No. [166], ¶ 231. In addition to the case *sub judice*, there are three other cases involving SCE Strategy transactions pending in the Northern District of Georgia that involve different properties. See Doc. Nos. [166], 38 n.5; 162 n.10 (citing Lechter v. Aprio, LLP f/k/a Habif, Arogeti & Wynne, LLP, et al., No. 1:20-CV-01325-AT (N.D. Ga.), Hoover v. Strategic Capital Partners, LLC, et al., No. 1:21-cv-01299-SDG (N.D. Ga.); see also Doc. No. [167-1], n.1 (citing Turk v. Morris, Manning & Martin, LLP, No. 1:20-cv-02815 (N.D. Ga.)).

market value of the property." Id. "When properly implemented, conservation easements can and do confer legitimate tax advantages to the donor." Id.

In the case *sub judice*, Plaintiffs allege that the two SCE Strategy transactions at issue (i.e., the "High Point"[4] transaction and the "TOT" transaction)[5] were not properly implemented and were never intended to be. Id. ¶¶ 3, 82. Plaintiffs state that "the IRS has disallowed the charitable deductions at the partnership (i.e., the Syndicate) level and made clear its intent to also disallow the charitable contribution deductions at the individual level and assess Plaintiffs and the Class with back taxes, interest, and penalties for the underpayment of taxes due to filing tax returns reflecting the promised tax benefits of the SCE Strategy." Id. ¶ 259.

---

[4] The High Point transaction involved 840 acres of property spanning across Van Buren County and/or Warren County in Tennessee. Doc. No. [166], ¶ 82.

[5] As stated in the operative complaint, "another subdivision . . . which was adjacent to the High Point Parcel would be used to promote another SCE Strategy: the TOT Syndicate transaction. The TOT Parcel totaled 652.16 acres in Van Buren County, Tennessee. The conservation easement was to extend over 637.16 acres of the TOT Parcel (with three five-acre inholdings excluded)." Id. ¶ 123.

More specifically, Plaintiffs Peskin and Perkins state that "[b]ased on the Promotional Materials[6] and Defendants' collective advice and representations concerning the legality and benefits of the High Point Syndicate transaction . . . on or about April 12, 2013, Plaintiffs Peskin and Perkins each paid $200,000 to participate in the High Point Syndicate." Id. ¶ 94.[7] Plaintiff state that "[a]bsent a favorable result in the Tax Court, Plaintiffs Peskin and Perkins will pay back taxes, penalties, and interest as a result of their participation in the High Point Syndicate transaction." Id. ¶ 122.

The Klaer Plaintiffs state that "[b]ased on the Promotional Materials[8] and Defendants' collective advice and representations concerning the legality of the

---

[6] "The Promotional Materials included (i) a two-page summary of the High Point Syndicate transaction jointly prepared by Peachtree, Davis, and Bush ("Summary"), and (ii) the LCV Fund XVI Private Placement Memorandum ("PPM") and several exhibits thereto, all prepared by Bryan Cave, at the direction of Bush and Davis on their own behalf and Peachtree's behalf. The Promotional Materials also incorporated a preliminary valuation of the conservation easement donation prepared by Roberts on behalf of himself and Tennille." ¶ 86; see also id. ¶¶ 90–92 (describing the contents of the promotional materials).

[7] "On May 16, 2017, Bryan Cave filed a petition on behalf of the High Point Syndicate in Tax Court challenging the adjustments proposed in the [Final Partnership Administrative Adjustment]." Doc. No. [166], ¶ 118.

[8] "The Promotional Materials included the PES Fund VI PPM and several exhibits thereto, all prepared by Bryan Cave, at the direction of Bush and Davis on behalf of themselves and Peachtree. The Promotional Materials also incorporated a preliminary

TOT Syndicate transaction . . . on October 14, 2013, the Klaer Plaintiffs paid $100,000 to participate in the TOT Syndicate." Id. ¶ 130. Plaintiffs state: "[t]he Klaer Plaintiffs have paid significant back taxes, penalties, and interest to the IRS as a result of their participation in the TOT Syndicate transaction." Id. ¶ 170.[9]

---

valuation of the conservation easement donation prepared by Roberts and Tennille." Id. ¶ 125. "The PES Fund VI PPM described in further detail the TOT Syndicate transaction and the associated tax benefits." Id. ¶ 126. "The PES Fund VI PPM made specific reference in Exhibit C to the Initial Appraisal prepared by Roberts and Tennille dated September 16, 2013, relating to 2,363.42 acres of . . . property which included the 649-acre TOT Parcel." Id. ¶ 127. "[T]he PPM also made specific reference to the availability of a draft Legal Opinion by Bryan Cave with respect to the TOT Syndicate transaction and the Fund's intention to obtain a final Legal Opinion if the Fund chooses to donate a conservation easement." Id. ¶ 128. "However, because the Legal Opinion for the TOT Syndicate transaction was not ready for distribution at the time marketing efforts began, Bush used and sent a copy of Bryan Cave's Legal Opinion for the High Point Syndicate transaction. Bush represented on behalf of himself and Peachtree that this Legal Opinion involved an adjacent property to the TOT Parcel and thus the substance would remain largely the same as what would be included in the eventual Legal Opinion for the TOT Syndicate transaction." Id.

[9] The TOT Syndicate tax litigation history is as follows. "On March 7, 2017, Bryan Cave filed a petition on behalf of the TOT Syndicate in Tax Court challenging the adjustments proposed in the [Final Partnership Administrative Adjustment]." Doc. No. [166], ¶ 161. "On November 22, 2019, the Tax Court issued a bench opinion, entering a decision in favor of the IRS." Id. ¶ 165. "[O]n June 23, 2021, the Eleventh Circuit affirmed all aspects of the Tax Court's decision in TOT Property Holdings." Id. ¶ 169; see also TOT Prop. Holdings, LLC v. Comm'r of IRS, 1 F.4th 1354, 1361 (11th Cir. 2021). Defendant Bryan Cave has filed a Notice of Supplemental Authority that shows that on December 29, 2021, the Eleventh Circuit issued an opinion that later invalidated the regulation that was at issue in TOT. Doc. No. [150] (citing Hewitt v. Comm'r of IRS, 21 F.4th 1336, 1344 (11th Cir. 2021)); see also Doc. No. [167-1], 24. The Eleventh Circuit stated: "while we agreed with the Commissioner's interpretation of the proceeds regulation in TOT, we expressly did not consider the validity of the regulation under

Plaintiffs summarize their alleged injury as follows:

> Plaintiffs and the Class have suffered injury in that they (1) paid substantial sums to participate in the SCE Strategy, (2) paid significant fees to Defendants and the Other Participants, (3) have been exposed to liability to the IRS for substantial back-taxes, interest, and/or penalties, (4) lost the opportunity to avail themselves of other legitimate tax-savings opportunities, (5) spent substantial funds in connection with the IRS audits and in Tax Court proceedings, and (6) have and will continue to incur substantial additional costs to rectify the situation.

Id. ¶ 346.

Plaintiffs allege that each of the named Defendants, who are a group of conservation easement professionals and advisors, deliberately banded together to give only the appearance of legitimacy to the SCE Strategy for their own financial gain by generating substantial fees and land interests for themselves. Id. ¶ 4. Plaintiffs state that "Defendants knew, the SCE Strategy was a complete sham." Id. ¶ 52. Plaintiffs further state that "Defendants were doing nothing

_____

the [Administrative Procedures Act], as the taxpayers there did not make such a challenge." Hewitt, 21 F.4th at 1344. The Eleventh Circuit then "conclude[d] that the Commissioner's interpretation of § 1.170A-14(g)(6)(ii), to disallow the subtraction of the value of post-donation improvements to the easement property in the extinguishment proceeds allocated to the donee, is arbitrary and capricious and therefore invalid under the APA's procedural requirements." Id. at 1353. This Court will address the effect of Hewitt, as well as standing and ripeness in the analysis section of this Order.

more than packaging and selling grossly overvalued and ineffectively structured federal tax deductions that the IRS already was carefully scrutinizing and indicating to conservation easement professionals it would disallow." Id.

More specifically, the named Defendants are characterized and collectively referred to in the Second Amended Complaint as follows:

The Sponsor and/or Promoter: Defendants Peachtree Investment Solutions, LLC ("Peachtree"), Dwayne Peterson Davis ("Davis"), and J. Stephen Bush ("Bush") are labeled as the "Sponsor and/or Promotor" in the Second Amended Complaint. Id. ¶ 54. Plaintiffs state that said defendants were "key developers and organizers of the SCE Strategy, and they agreed to act as the Sponsor and at times also the Promoter for each of the transactions they were involved in." Id. ¶ 54.

The Promoter: Defendants Old Ivy Capital Partners, LLC ("Old Ivy") and Daniel Carbonara ("Carbonara") are labeled as "the Promoter" in the Second Amended Complaint. Id. ¶ 60. Plaintiffs allege that "[a]s a Promoter, Old Ivy and Carbonara helped identify potential participants of the SCE Strategy; distributed the Promotional Materials; and acted as the primary point of contact for Syndicate members by facilitating communications, providing updates and other

information, and answering questions about the SCE Strategy, all in coordination with Peachtree, Bush, and Davis to ensure a consistent message was being conveyed." Id. ¶ 61.

The Appraiser: Plaintiffs label Defendants Tennille & Associates, Inc. ("Tennille") and Jean H. Roberts, in her Capacity as Personal Representative for the Estate of David R. Roberts ("Roberts") as "the Appraiser." Id. ¶ 62. Plaintiffs state that "Roberts and Tennille performed the Initial Appraisal to help promote the SCE Strategy and then the final Appraisal to support the valuation of the conservation easement and the charitable deduction taken by each Syndicate (which, in turn, flowed through to each Syndicate member)." Id. ¶ 64. Plaintiffs allege, inter alia, that Roberts and Tennille flouted the Tax Code and regulation requirements by providing incomplete or incorrect information because disclosing the correct information would raise "red flags" to the IRS, including that the properties at issue were overvalued. Id. ¶ 65.

The Land Trust: Foothills Land Conservancy, Inc. ("Foothills")[10] and Defendant William C. Clabough, Sr. ("Clabough") are labeled as "The Land

---

[10] Said Defendant indicated that Plaintiffs incorrectly refer to it as "Inc." and in fact, its corporate name is simply "Foothills Land Conservancy." Doc. No. [174-1], 5 n.1.

Trust" in the Second Amended Complaint. Id. ¶ 66. Plaintiffs allege that "Foothills, and in particular Clabough, were instrumental to the SCE Strategy because they helped identify potential real estate on which conservation easements could be placed and connected landowners with Sponsors and Promoters like Peachtree and Old Ivy." Id. ¶ 68.

The Attorney: Defendant Bryan Cave Leighton Paisner LLP ("Bryan Cave") is an international law firm and is labeled as "The Attorney" in the Second Amended Complaint. Id. ¶ 72. Plaintiffs state that "Bryan Cave agreed to act as the Attorney for the Syndicate and Syndicate members (as well as for the Sponsor) in connection with the SCE Strategy." Id. ¶ 73. Plaintiffs further state that Bryan Cave "drafted the Legal Opinion to affirm the legality of the SCE Strategy and the tax deduction generated therefrom." Id.

The Accountant: Defendant Warren Averett, LLC ("Warren Averett") is labeled as "The Accountant" in the Second Amended Complaint. Id. ¶ 76. Plaintiffs state that Defendant Warren Averett "agreed to play the Accountant in the SCE Strategy and knew the stringent requirements to properly claim a charitable contribution deduction for conservation easements." Id. ¶ 77.

Plaintiffs allege a "racketeering enterprise" among the named Defendants from which Plaintiffs were injured "by causing them to pay substantial fees and transaction costs, be exposed to interest and penalties from the IRS, and incur additional accounting and legal fees and expenses to deal with the IRS fallout." Id. ¶ 11.

On September 30, 2022, the Court found that the Plaintiffs' First Amended Complaint constituted shotgun pleading and ordered repleading in accordance with Federal Rules of Civil Procedure 8, 9, and 10 to delete the shotgun pleading. Doc. No. [160].

Plaintiffs filed a Second Amended Complaint on October 21, 2022. Doc. No. [166]. The Second Amended Complaint is 237 pages and 399 paragraphs, with approximately 250 additional subparagraphs. In their Second Amended Complaint, brought under the Class Action Fairness Act of 2005, Plaintiffs assert the following twelve causes of action on behalf of themselves and a putative class of investors against all of the named Defendants (unless otherwise specified): (1) violations of the Racketeer Influenced and Corrupt Organizations Act "RICO," 18 U.S.C. § 1962(c); (2) violations of RICO, 18 U.S.C. § 1962(d)) by conspiring to violate 18 U.S.C. § 1962(c); (3) violations of Georgia RICO, O.C.G.A.

§ 16-14-4(a)&(b); (4) conspiracy to violate Georgia RICO, O.C.G.A. § 16-14-4(c);

(5) fraud; (6) breach of fiduciary duty and disgorgement (against Peachtree,

Davis, Bush, Old Ivy, Carbonara, Tennille, Roberts, Bryan Cave and Warren

Averett); (7) aiding-and-abetting breaches of fiduciary duty; (8) professional

malpractice (against Peachtree, Bush, Davis, Old Ivy, Carbonara, Tennille,

Roberts, Bryan Cave and Warren Averett); (9) negligence (against Foothills and

Clabough); (10) negligent misrepresentation (in the alternative to the fraud

claim); (11) rescission (in the alternative); and (12) civil conspiracy. Doc. No.

[166].[11]

Defendants have filed joint and individual Motions to Dismiss the Second

Amended Complaint. Doc. Nos. [167]; [169]; [170]; [171]; [173]; [174]; [175]. On

January 31, 2023, Plaintiff filed a Motion to Exclude Extrinsic Evidence in relation

to the Court's consideration of the pending dismissal motions. Doc. No. [183].

The pending Motions to Dismiss and the Motion to Exclude have been

fully briefed and are now ripe for review.[12]

---

[11] The Second Amended Complaint is the operative complaint and will be referred to as the Complaint or "SAC" throughout this Order. Additional factual allegations from the Second Amended Complaint will be discussed in the analysis section of this Order.

[12] The Court has also considered the Notices of Supplemental Authority and responses

## II.   LEGAL STANDARDS[13] AND ANALYSIS

The Court begins by considering preliminary jurisdictional issues. Thereafter, the Court addresses Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence and the remaining dispositive grounds of Defendants' joint and individual Motions to Dismiss.

### A.   Preliminary Issues

#### 1.   *Standing/Ripeness*

Because it is jurisdictional and implicates the authority of a federal court to decide a case, this Court must consider standing first. Rojas v. City of Ocala, 40 F. 4th 1347, 1350 (11th Cir. 2022).

In Defendants' *original* Motions to Dismiss, the issue of standing was raised or inferred. See Doc. Nos. [112-1], 31 n.8; [113], 13; [114-1], 10; [118], 13. Those arguments were not reasserted in the Motions to Dismiss concerning the Second Amended Complaint, but Defendants do state: "[a]lthough the [Second

_____

at Doc. Nos. [186]; [187]; [188]; [199]; [201]; [202]; [204].

[13]   The parties have applied Georgia law and this Order does as well. See also Doc. No. [166], ¶ 29 (indicating that the "brunt of the harm was felt" in Georgia); Luigino's Int'l, Inc. v. Miller, 311 F. App'x 289, 292 (11th Cir. 2009) ("Under Georgia's choice of law doctrine of lex loci delictis, the law of the state where the injury occurred governs the fraud action.").

Amended Complaint] alleges that the Klaers paid back taxes, Peskin and Perkins have not repaid anything—and they may never have to pay, given the <u>Hewitt</u> decision."[14] Doc. No. [167-1], 26 (citing Doc. No. [166], ¶¶ 122, 170). Defendants also state: "[a]lthough the deductions claimed by the holding companies have been denied, that does not mean deductions claimed by individual investors have been denied." Doc. No. [167-1], 25. The Court considers these statements as relating to imminent harm or ripeness. Because standing was previously raised, the Court deems it proper to consider standing in this Order.

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" <u>CAMP Legal Def. Fund, Inc. v. City of</u>

---

[14]  In their Joint Motion, Defendants state that through <u>Hewitt</u>, the Eleventh Circuit "has thus nullified the grounds on which the IRS relied to deny the partnerships' deductions at issue here." Doc. No. [167-1], 12, 24. In opposition, Plaintiffs assert that Defendants have overstated the impact of <u>Hewitt</u> to this case. Doc. No. [176], 58. More specifically, Plaintiffs state that <u>Hewitt</u> does not bar Plaintiffs' claims, and the claims are ripe. <u>Id.</u> Plaintiffs state that "the fact that the IRS identified, and the Tax Court ruled on, only one of the flaws does not mean the bona fides of the SCE Strategy transactions were otherwise upheld, or that they are in fact legitimate." <u>Id.</u> at 60. Plaintiffs further assert that Defendants' Motion "fails to recognize that although the Tax Court based its ruling in TOT in part on the extinguishment issue, the Tax Court imposed a gross valuation misstatement of 40% based on its finding that the TOT Syndicate's easement deduction was worth only $496,000 and not the over $6.8 million value claimed." <u>Id.</u> As it appears that the <u>Hewitt</u> decision is not determinative of the case *sub judice*, the Court will proceed to consider the remainder of the pending arguments.

Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). Article III of the United States Constitution limits the courts to hearing actual "Cases" and "Controversies." U.S. Const. Art. III § 2; see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 559–60 (1992). Standing is typically determined by analyzing the plaintiff's situation as of the time the complaint is filed, and subsequent events do not alter standing. Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003) (collecting authorities); Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1267 (11th Cir. 2001); Charles H. Wesley Educ. Found., Inc. v. Cox, 408 F.3d 1349, 1352 n.3 (11th Cir. 2005).

To establish standing, a plaintiff must show three things:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560–61 (internal quotations, citations, and alterations omitted). [15] "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. The burden by which a plaintiff must show these elements depends upon the stage of litigation at which it is challenged. Id.; see also CAMP Legal Def. Fund, 451 F.3d at 1269. At the motion-to-dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" as there is a presumption that such general allegations are based on specific facts necessary to support the claim. Lujan, 504 U.S. at 561.

The injury-in-fact requirement ensures that persons involved in the litigation have a direct stake in its outcome. Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1340 (11th Cir. 2014). As such, the injury must be particularized (affecting

---

[15] The RICO standing provision is as follows:

> The standing provision of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . ." 18 U.S.C. § 1964(c). This Court has interpreted that provision to include a requirement that the party's injuries be the direct result of the alleged racketeering activity. Therefore, a plaintiff has RICO standing only if his injuries were proximately caused by the RICO violation.

Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 906 (11th Cir. 1998).

the plaintiff in a personal way) and concrete (actual as opposed to abstract). Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016). Harms can be tangible or intangible and meet the "concrete and particularized" criteria. Id. at 1549. Likewise, harms can be direct or indirect. Focus on the Family, 344 F.3d at 1273 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 260–61 (1977)). Even the risk of future harm can meet these criteria when that harm is "imminent." Clapper, 568 U.S. at 409.[16]

––––––––––––––––––––

[16] The concept of imminence is "somewhat elastic," and only requires "that the anticipated injury occur with[in] some fixed period of time in the future." Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153, 1161 (11th Cir. 2008). Therefore, "probabilistic harm is 'enough injury in fact to confer . . . standing in the undemanding Article III sense.'" 522 F.3d at 1163 (quoting Tenn. Valley Auth. v. U.S. Envtl. Protection Agency, 278 F.3d 1184, 1207 (11th Cir. 2002)). Relatedly, "[t]he ripeness doctrine 'prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Wilderness Soc'y v. Alcock, 83 F.3d 386, 390 (11th Cir. 1996) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 148–49 (1967)) (second alteration in the original). Courts must determine "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995). The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. Abbott, 387 U.S. at 149. "The fitness prong is typically concerned with questions of finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." Harrell v. Florida Bar, 608 F.3d 1241, 1258 (11th Cir. 2010). "The hardship prong asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." Id.

At the pleading stage, the causation and redressability requirements are easily satisfied where the facts alleged indicate a "fairly traceable" link to the defendants' conduct and the potential for redress of the injury. See Ga. Latino All. for Human Rights v. Governor, 691 F.3d 1250, 1260 (11th Cir. 2012). In evaluating Article III causation, something less than proximate cause is required. Focus on the Family, 344 F.3d at 1272. "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." Id. Finally, a plaintiff must properly plead that it is likely as opposed to merely speculative that a favorable court decision will redress the injury. Lujan, 504 U.S. at 561.

In opposition to Defendants' briefing alluding to standing issues and in prior briefing on standing issues, Plaintiffs argued that they have "direct injuries" and have standing as they were the targets of Defendants' alleged scheme and they have alleged that "they paid fees and suffered personal tax losses because of the Peachtree Defendants' wrongdoing." Doc. Nos. [123], 14; [126], 15; see also Doc. No. [166], ¶ 346 (setting forth Plaintiffs' allegations of injury); Doc. No. [176], 58–61 (discussing the Hewitt decision and ripeness).

18

After review, the Court finds that Plaintiffs have satisfied the pleading standards of Article III and RICO standing, as Plaintiffs have alleged facts that indicate a "fairly traceable" link to Defendants' conduct and the potential for redress of the injury. Ga. Latino All. for Human Rights, 691 F.3d at 1260. Plaintiffs have also alleged facts from which it appears that their asserted injuries are concrete and particularized, actual or imminent as illustrated by paragraph 259 of their Second Amended Complaint in which they state that "the IRS has disallowed the charitable deductions at the partnership (i.e., the Syndicate) level and made clear its intent to also disallow the charitable contribution deductions at the individual level and assess Plaintiffs and the Class with back taxes, interest, and penalties for the underpayment of taxes due to filing tax returns reflecting the promised tax benefits of the SCE Strategy." Doc. No. [166], ¶ 259.

Lastly, the Court considers standing as to the fiduciary duty claims. In their individual briefing, Defendant Peachtree Investment Solutions, LLC, Davis, and Bush argue that Plaintiffs lack standing to bring fiduciary duty claims in their individual capacities. Doc. No. [169-1], 18. Said Defendants argue that Plaintiffs do not allege a "separate and distinct" injury (different from the other

shareholders or independently of the corporation) resulting from the alleged breach of fiduciary duty. Id. at 17.

In response, Plaintiffs argue that they have standing because they have alleged direct injuries based on their allegations that they paid fees and suffered personal tax losses because of Peachtree's, Davis's, and Bush's alleged wrongdoing. Doc. No. [177], 16 (citing Doc. No. [166], ¶ 350). More specifically, Plaintiffs argue that they have standing "because they do not claim that Peachtree, Davis, and Bush injured the entities in which Plaintiffs invested and thereby diminished the value of Plaintiffs' LLC membership interests." Id. at 15.

In reply, Defendants Peachtree, Davis, and Bush argue that based on their own pleadings, Plaintiffs do not allege they were "injured in a way which is different from the other shareholders." Doc. No. [192], 12 (quoting Grace Bros., Ltd. v. Farley Indus., Inc., 264 Ga. 817, 819 (1994)).

Here, the Court will adopt the reasoning of the Turk case and conclude that "[f]or purposes of the pleading stage . . . Plaintiffs have plausibly alleged injuries distinct from the injuries to the Syndicates under the standards adopted by the Supreme Court and the Eleventh Circuit, assuming that they actually can also prove their substantive claims." Turk v. Morris, Manning & Martin, LLP, 593

F. Supp. 3d 1258, 1290 (N.D. Ga. 2022), <u>reconsideration denied</u>, No. 1:20-CV-2815-AT, 2023 WL 2359692 (N.D. Ga. Feb. 13, 2023).

### 2.    *Personal Jurisdiction*

The Foothills Defendants raised the defense of lack of personal jurisdiction in their initial Motion (Doc. No. [174]), but subsequently concede "general jurisdiction" in its reply brief, Doc. No. [194], 5 n.2. In light of this concession, the Court deems the lack of personal jurisdiction defense waived. <u>See</u> <u>Day v. Persels & Assocs., LLC</u>, 729 F.3d 1309, 1326 (11th Cir. 2013) ("Our law is clear that 'objections to personal jurisdiction—unlike subject matter jurisdiction—are waivable.'").

### 3.    *Shotgun Pleading*

In their Joint Motion to Dismiss, Defendants argue that Plaintiffs' Second Amended Complaint remains a shotgun pleading and should be dismissed with prejudice. Doc. No. [167-1], 28. Defendants argue that in their Second Amended Complaint, Plaintiffs took a "kitchen-sink approach" to pleading that includes conclusory, vague, and immaterial facts that are not obviously connected to any particular cause of action. <u>Id.</u> Defendants further assert that the Second Amended Complaint "still repeatedly charges multiple Defendants collectively without

specifying which specific Defendant committed which act." <u>Id.</u> at 29. Defendants assert that "[r]ather than clarify their allegations, Plaintiffs' primary change to their [Second Amended Complaint] is to add six prolix paragraphs that assert, over and over, that every Defendant engaged in the same, boilerplate 'fraudulent omissions.'" <u>Id.</u> Defendants further argue that Plaintiffs' Second Amended Complaint "incorporates by reference hundreds of paragraphs of allegations in support of all 12 counts." <u>Id.</u> at 29. Defendants state that "the only way to determine which incorporated allegations support each element is to 'sift each count for the allegations that pertain to the cause of action purportedly stated.'" <u>Id.</u> (citations omitted).

Complaints that violate the Federal Rules of Civil Procedure on proper pleading, "either Rule 8(a)(2)[17] or Rule 10(b),[18] or both, are often disparagingly referred to as 'shotgun pleadings.'" <u>Weiland v. Palm Beach Cty. Sheriff's Office,</u>

---

[17]  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[18]  Rule 10(b) states that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

792 F.3d 1313, 1320 (11th Cir. 2015).[19] The Eleventh Circuit has identified four

categories of shotgun pleadings as follows:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Weiland, 792 F.3d at 1321–23 (footnotes omitted).

---

[19] "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). This is because "[t]hey waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" Id.

A dismissal on shotgun-pleading grounds is appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Id. at 1325 (citations and quotations omitted).

The Court first considers Defendants' incorporation arguments and citations of authority. It appears that there is conflicting authority on incorporation by reference in the Eleventh Circuit.

As this Court has previously recognized,[20] in Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997), the Eleventh Circuit indicated in a footnote that a complaint with four counts containing two numbered paragraphs and that incorporated by reference "all forty-three paragraphs of factual allegations" was a shotgun pleading. The Court also noted that many of the factual allegations were vague and "appear[ed] to relate to only one or two counts, or to none of the counts at all . . ." and that the reader had to "'speculate' as to which factual allegations pertain[ed] to which count." Id.; see also Worldspan Marine Inc. v. Comerica Bank, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021) (affirming the district court's shotgun pleading dismissal

---

[20] See Fair Fight Action, Inc. v. Raffensperger, 413 F. Supp. 3d 1251, 1291 (N.D. Ga. 2019).

of a 138 page, 487 paragraph complaint where "the [a]mended [c]omplaint exhibited many of the vices described in <u>Weiland</u>. For starters, most of the counts in the [a]mended [c]omplaint incorporated by reference the more than 400 paragraphs of its long-winded and repetitive factual background section."); <u>see also</u> <u>McLaughlin v. Fla. Int'l Univ. Bd. of Trustees</u>, No. 21-11453, 2022 WL 1203080, at *5 (11th Cir. Apr. 22, 2022) (concluding that a 115 page, 1064 paragraph complaint was a shotgun pleading for several reasons to include: "the amended complaint contains eleven distinct 'CAUSE[S] OF ACTION.' But each cause of action expressly adopts the first 757 paragraphs of the complaint, which contain numerous, unrelated factual allegations supporting multiple unrelated claims against each and every defendant.").

However, in <u>Weiland</u>, the Eleventh Circuit recognized that while re-alleging factual paragraphs "at the beginning of each count looks, at first glance, like the most common type of shotgun pleading . . . it is not . . . [because] [t]he allegations of each count are not rolled into every successive count on down the line." <u>Weiland</u>, 792 F.3d at 1324; <u>see also</u> <u>Barmapov v. Amuial</u>, 986 F.3d 1321, 1325 (11th Cir. 2021) ("[Plaintiff's] second amended complaint does not fall into the first category [of shotgun pleading] because although nine of the 19 counts

25

incorporate almost every factual allegation in the complaint, none of them adopts the allegations in the preceding counts."); <u>Burke v. Custom Marine Grp.</u>, 847 F. App'x 578, 581 (11th Cir. 2021) ("Although each of the counts realleged the generalized allegations, they did not reallege the preceding counts. This Court does not categorize complaints as shotgun pleadings where '[t]he allegations of each count are not rolled into every successive count on down the line.'") (citing <u>Weiland</u>, 792 F.3d at 1324).[21]

It is not clear to the Court that these two lines of authority can be reconciled.[22] However, because the earlier binding, published opinion by the

---

[21] Defendants' citation of authority actually falls within this line of authority as the cited cases involve incorporation by reference of counts (and factual allegations) as opposed to just factual allegations. <u>See</u> <u>U.S. ex rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) ("Count Two incorporates Count One and adds six paragraphs. Count Three incorporates Count Two and adds eight paragraphs."); <u>Jackson v. Bank of Am., N.A.</u>, 898 F.3d 1348, 1354–56 (11th Cir. 2018) ("The amended complaint swelled to twenty-three pages ***and 123 paragraphs*** . . . . At twenty-eight pages long and having incorporated ***all 123 paragraphs*** of allegations into all sixteen counts, it is neither 'short' nor 'plain.'") (emphasis added).

[22] The approach for resolving conflicts in Eleventh Circuit precedent is as follows:

> This Circuit has a well-established approach to resolving conflicts in our precedent. We are "obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule." <u>United States v. Hogan</u>, 986 F.2d 1364, 1369 (11th Cir. 1993). When making this determination, we are mindful that only the holdings of prior decisions bind us.

<u>Chudasama</u> court did not require that the case be dismissed on shotgun pleading grounds, this Court will follow the example and move on to consider the remaining types of shotgun pleading.

The next category of shotgun pleading is a complaint that "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." <u>Weiland</u>, 792 F.3d at 1322. In a recent published opinion, the Eleventh Circuit used this second category to condemn a complaint as a shotgun pleading by stating:

> [T]he second amended complaint indiscriminately incorporates and repeats 249 numbered paragraphs of factual allegations—spanning 50 pages—into nine of the 19 counts, without any effort to connect or separate which of those 249 factual allegations relate to a particular count. As a result, these nine counts include factual allegations that are immaterial to the underlying causes of action.

<u>Barmapov v. Amuial</u>, 986 F.3d 1321, 1325 (11th Cir. 2021).

---

> <u>See</u> <u>CSX Transp., Inc. v. Gen. Mills, Inc.</u>, 846 F.3d 1333, 1338 (11th Cir. 2017). If we cannot reconcile our caselaw, we must follow the earliest precedent that reached a binding decision on the issue. <u>See</u> <u>id.</u>; <u>see also</u> Bryan A. Garner et al., <u>The Law of Judicial Precedent</u> § 36, at 303 (2016).

<u>Williams v. Aguirre</u>, 965 F.3d 1147, 1163 (11th Cir. 2020).

After review, it appears to the Court that Plaintiffs' Second Amended Complaint is analogous to the complaint at issue in the <u>Barmapov</u> case. Here, Plaintiffs' Second Amended Complaint is not short and incorporates by reference hundreds of paragraphs of factual allegations (that span approximately 132 pages) in support of all twelve counts.[23] <u>See</u> Doc. No. [166], ¶¶ 293, 303, 314, 324, 335, 348, 354, 359, 370, 378, 387, 392. As correctly stated by Defendants, "every count incorporates every factual allegation (apart from those alleging jurisdiction and the parties' identities) without regard for whether any of the hundreds of incorporated allegations is relevant." Doc. No. [190], 8.

And while, Plaintiffs have used headers and titles in the factual background section of the Second Amended Complaint, this Court takes judicial notice of the second amended complaint in <u>Barmapov</u> and notes that said complaint included bolded organizational headers in the general factual allegations; however, that was still insufficient to place the complaint outside of

---

[23] Shotgun pleadings "do not provide a short and plain statement of a claim under Rule 8." <u>Philippeaux v. Miami Apartments Invs., LLC</u>, No. 22-11692, 2023 WL 2989831, at *1 (11th Cir. Apr. 18, 2023) (citing <u>Magluta v. Samples</u>, 256 F.3d 1282, 1284 (11th Cir. 2001)).

shotgun pleading. <u>See</u> <u>Barmapov v. Amuial</u>, No. 9:18-cv-80390, ECF No. 161 (S.D. Fla. Dec. 27, 2018); Fed. R. Evid. 201.

The Second Amended Complaint is also problematic in that as noted by the Old Ivy and Carbonara Defendants, the Second Amended Complaint alleges that they were involved with the High Point Syndicate transaction (Doc. No. [166], ¶¶ 60, 86); however, "[i]n each claim against Old Ivy and Carbonara, Plaintiffs incorporate by reference 48 paragraphs" that deal with the TOT transaction. Doc. No. [196], 5–6 (citing ¶¶ 123–170, 293, 303, 314, 324, 335, 348, 354, 359, 370, 378, 387, 392).

Here, in light of the <u>Barmapov</u> decision, the Court finds that the reader is required to speculate in part as to which factual allegations pertain to which count. And "[j]ust because the district court and the defendants were able, after considerable time and effort, to ascertain [plaintiff's] claims at the pleadings stage does not automatically mean that [plaintiff] has satisfied Rule 8." <u>McLaughlin v. Fla. Int'l Univ. Bd. of Trustees</u>, No. 21-11453, 2022 WL 1203080, at *5–6 (11th Cir. Apr. 22, 2022).

The final category[24] of shotgun pleading at issue in this case involves "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1323.[25] In their opposition brief, Plaintiffs assert that the Second Amended Complaint's "list of omissions varies by and is specific to each Defendant." Doc. No. [176], 17. However, Plaintiffs acknowledge that in the introductory section (¶¶ 1–12) and the legal sections (¶¶ 227–399) of the Second Amended Complaint, they "use the term "Defendants" to avoid having to repeat the more specific factual allegations

---

[24] Another category of shotgun pleading (i.e., of not separating into a different count each cause of action or claim for relief) is not at issue in this case.

[25] A recent example is found in Mathis v. City of Lakeland, No. 22-12426, 2023 WL 2568814, at *4 (11th Cir. Mar. 20, 2023) in which the Eleventh Circuit stated:

> [Plaintiff] sued twelve defendants, but his amended complaint largely failed to identify which of them took which actions and which claims were raised against which defendants. Instead, Counts 1–3 lumped the defendants together by alleging that "the unlawful actions of the defendants constitute a violation of [federal law]." (Emphasis added.) The lumping of defendants does not give any defendant fair notice of the allegations brought against that defendant.

30

in paragraphs 33–226, although at times those sections break out conduct by Defendant [citing ¶¶ 8, 337]." Doc. No. [177], 8 n.3; see also Doc. No. [182], 9 n.4.[26]

The Court recognizes that in the non-Rule 9(b), fraud context, the Eleventh Circuit has stated that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997);[27] see also Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000) (holding in a § 1983 case that "[t]he fact that

---

[26] As stated by Defendants:

> Although [the Second Amended Complaint] includes some allegations regarding individual Defendants, many allegations indiscriminately charge all Defendants (or groups of Defendants) with the same alleged acts. E.g., SAC ¶ 51(d) (alleging all "Defendants" are responsible for everything in "Promotional Materials"); id. ¶¶ 94, 130 (alleging all "Defendants" gave "collective advice"); id. ¶ 171 (alleging all Defendants—this time identified in a lengthy list—were "aware" of "errors and defects" in documents); id. ¶ 172 (alleging Plaintiffs "relied on" all Defendants); id. ¶ 175 (alleging all Defendants "failed to disclose" problems with appraisals); id. ¶¶ 248–65, 274–83 (lumping all "Defendants" together in RICO allegations).

Doc. No. [190], 9.

[27] The complaint in the Crowe case addressed trespass and nuisance claims. Crowe, 113 F.3d at 1539 n.1.

31

defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").

However, in a case involving multiple defendants in the fraud context, the Eleventh Circuit has held that Rule 9(b)'s particularity standard demands "specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (citing Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1317 (11th Cir. 2007)).

The fraud/Rule 9(b) authority is applicable to the case *sub judice* as it involves fraud claims and RICO predicate acts sounding fraud.[28] Accordingly, the Court finds that in light of the above-stated deficiencies, Plaintiffs' Second Amended Complaint is a shotgun pleading and is subject to dismissal with

---

[28] The Court recognizes that the parties dispute whether Rule 9(b) applies to the entirety of the RICO cause of action. After review of the Eleventh Circuit's most recent authority, the Court concludes that it does. See Rubinstein v. Yehuda, 38 F.4th 982, 989 (11th Cir. 2022) (mentioning "the heightened Rule 9(b) standard that applies to civil RICO claims"); Mandala v. Tire Stickers, LLC, 829 F. App'x 896, 901 (11th Cir. 2020) ("Because [plaintiff's] RICO claims are predicated on wire fraud, they are subject to the heightened pleading standard of Rule 9(b).").

prejudice. The Court is unable to uphold Plaintiffs' arguments in opposition. In addition, Plaintiffs' request for amendment is denied as the Court has already afforded Plaintiffs an opportunity to amend the complaint to remedy the shotgun pleading defects. See Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1358 (11th Cir. 2018) ("If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds.").[29]

### 4.   Extrinsic Evidence

The Court now considers Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence. Doc. No. [183]. In their Motion, Plaintiffs challenge the exhibits and supporting materials that Defendants offered in support of their Motions to Dismiss. Id. at 183.[30] Plaintiffs assert four grounds: (1) the Court

---

[29] The Court notes that the above-stated ruling is distinguishable from its 2019 ruling in the Fair Fight case (relied upon by Plaintiffs) as the Fair Fight case did not involve fraud/RICO allegations. Further, the above-stated ruling is derived from additional guidance in the post-2019 jurisprudence and this Court is not bound by its prior rulings. See McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions. A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.") (citations omitted).

[30] Said documents are: three private placement memoranda ("PPMs"), three

33

should not take judicial notice of any of the exhibits offered by Defendants in support of their Motions to Dismiss; (2) a number of the exhibits offered by Defendants are "not central" to the allegations of the operative complaint and should thus be excluded or disregarded; (3) the private placement memoranda ("PPMs") and the Subscription Agreements[31] are not complete and should thus be excluded or disregarded; and (4) virtually all of the extrinsic evidence is offered to support affirmative defenses and should not be considered at this juncture. Id.

### a)   Judicial notice

The Court recognizes Plaintiffs' judicial notice arguments; however, Defendants state that in their briefing on the pending Motions to Dismiss, they did not invoke judicial notice as a basis for ruling. Doc. No. [191], 9 n.1. Thus, the Court gives no consideration to Plaintiffs' judicial notice argument.

---

subscription agreements, two Bryan Cave Legal Opinion attached to the Declaration of Brian Underwood, a lawyer from Defendant Bryan Cave and the Conservation Easement Deeds, Baseline Documentation Reports, Forms 8283, and the signed Letter of Intent with High Point Holding, LLC, attached to the declaration of Defendant William C. Clabough, Sr. Doc. No. [183], 10. (Plaintiffs do not challenge the Clabough exhibits to the extent that they are solely being offered for the jurisdictional dispute raised by Defendant Foothills and Clabough. Doc. No. [183], 10.)

[31] Defendants state that the Subscription Agreements are the "investment contracts." Doc. No. [191], 5.

### b)    <u>Centrality</u>

Next, Plaintiffs assert that a number of the exhibits offered by Defendants are "not central" to the allegations of the Complaint and should thus be excluded or disregarded. Doc. No. [183], 12. Plaintiffs do not specifically list the exhibits that they seek to exclude. It appears to the Court that Plaintiffs are not challenging the PPMs, Bryan Cave opinion letters, Baseline Documentation Reports, and Appraisal Summaries in this section of their Motion. <u>See</u> Doc. No. [183], 13–14.[32] Plaintiffs only challenge the "remaining exhibits," which appear to be the letter of intent attached to the Clabough Declaration and the Subscription Agreements attached to the Underwood Declaration. <u>Id.</u>

"A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." <u>Bickley v. Caremax RX, Inc.</u>, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).

The Eleventh Circuit recognizes an exception to this rule. The Court may consider materials outside of the four corners of the complaint without converting the motion to dismiss to a motion for summary judgment "in cases in

---

[32]   As Plaintiffs' challenge is not clear, the Court's ruling, <u>infra</u>, encompasses these documents as well.

which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." <u>Fin Sec. Assur., Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1284 (11th Cir. 2007); <u>see also</u> <u>Maxcess, Inc. v. Lucent Techs., Inc.</u>, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

In determining whether a document is central to a plaintiff's case, the Eleventh Circuit has "considered whether the plaintiff would have to offer the document to prove his case" and also stated that "[a] document is undisputed if its authenticity is not challenged." <u>Lockwood v. Beasley</u>, 211 F. App'x 873, 877 (11th Cir. 2006); <u>see also</u> <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005). "A plaintiff can dispute the authenticity of a document simply by saying the proffered document is not the one referred to in [the] complaint." <u>Kalpakchian v. Bank of Am. Corp.</u>, 832 F. App'x 579, 583 (11th Cir. 2020) (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125 (11th Cir. 2002) (holding that a document's authenticity was disputed where the transcript excerpts attached to defendant's answer were not, according to plaintiff, the transcripts referred to in plaintiff's complaint)). "Documents that are relevant to the defendant[s'] affirmative defenses, rather

than the plaintiff's claim[s], will fail to meet the centrality requirement." <u>Miranda</u>, 148 F. Supp. 3d at 1343 (citing <u>Lockwood</u>, 211 F. App'x 873).

After review, the Court upholds Defendants' arguments to this regard and finds that all of the documents at issue (which range from promotional materials to relationship-forming contracts to donation documents) are central to Plaintiffs' case. More specifically, as to subscription agreements/investment contracts, the Court notes that the Eleventh Circuit has held that "contracts such as [purchasing agreements] . . . are central to a plaintiff's claim." <u>Maxcess</u>, 433 F.3d at 1340 n.3 (citations omitted). There is also Eleventh Circuit authority which holds that it was not error for a district court to consider a document despite a plaintiff's argument that "the document was not incorporated by reference into the complaint and that, even if it was, the document was not central to its claims." <u>SFM Holdings, Ltd. v. Banc of Am. Sec., LLC</u>, 600 F.3d 1334, 1337 (11th Cir. 2010); <u>see also</u> <u>Bamert v. Pulte Home Corp.</u>, 445 F. App'x 256, 267 (11th Cir. 2011) (holding that it was not error to consider certain purchase agreements which were not attached to the complaint and stating "[w]ithout considering the agreements, it would be impossible for the [d]istrict [c]ourt to evaluate properly" a crucial issue in the case).

Accordingly, Plaintiffs' Motion (Doc. No. [183]) is denied on the centrality ground.

### c)   Completeness

Next, Plaintiffs argue that the PPMs and the Subscription Agreements are not complete and should therefore be excluded or disregarded. Doc. No. [183], 14. More specifically, Plaintiffs allege that the PPMs and Subscription Agreements are missing exhibits (referred to as Exhibit B/"Disclosure Material") and thus not authentic. Id. Plaintiffs state that "absent from Defendants' submission is this Disclosure Material, which contains the very information provided to Plaintiffs in connection with the promotion of the SCE Strategy." Id.

As noted above, "[a] plaintiff can dispute the authenticity of a document simply by saying the proffered document is not the one referred to in [the] complaint." Kalpakchian, 832 F. App'x at 583.

As correctly noted by Defendants, the "Disclosure Materials themselves are not part of the Subscription Agreements; they are separate documents that are merely listed in Exhibit B." Doc. No. [191], 16. Defendants also state that "the disclaimers are in the Subscription Agreements, part of Plaintiffs' signed contracts, and Plaintiffs do not allege their signatures are inauthentic. Id. at 18.

Defendants further state that "Plaintiffs do not dispute that the Subscription Agreements submitted to the Court are the very same investment agreements they signed when entering into the transactions described in the [Second Amended Complaint]." Id. at 19.

After review, the Court again upholds Defendants' arguments to this regard as Plaintiffs have not disputed authenticity by saying that the proffered document is not what it purports to be and Plaintiffs' completeness arguments lack merit for purposes of authenticity considerations.[33]

---

[33] The Court also declines to uphold Plaintiffs' arguments based on the attorney affidavit submitted with the documents at issue. Doc. No. [183], 9. Cf. Gibson v. Equifax Info. Servs., LLC, No. 5:18-CV-00465-TES, 2019 WL 4731957, at *3 (M.D. Ga. July 2, 2019) (considering a motion to dismiss and noting that "the . . . [d]eclaration simply authenticates the reinvestigation results that were mailed to [p]laintiff. It does not add any information and does not try to prove or disprove any contention by either party.") (citations omitted); Estes Exp. Lines, Inc. v. Macy's Corp. Servs., No. CIV.A 08CV3582 (PGS), 2010 WL 398749, at *5 (D.N.J. Jan. 28, 2010) (noting the "reality that filing documents pursuant to attorney declaration is a well established practice").

**d)** <u>**Affirmative defenses**</u>

Plaintiffs argue that "[v]irtually all of the extrinsic evidence is offered to support affirmative defenses and should not be considered at this juncture." Doc. No. [183], 15. Plaintiffs further assert that "this Court has discretion to not consider evidence that requires conversion to a motion for summary judgment and Plaintiffs respectfully request that it not do so." <u>Id.</u> at 16.

Without more, the Court declines to uphold Plaintiffs' argument as Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when an affirmative defense appears on the face of the complaint." <u>Singleton v. Dep't of Corrections</u>, 277 F. App'x. 921 (11th Cir. 2008).

Accordingly, Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence (Doc. No. [183]) is denied.

**B.**     **Defendants' Joint Motion to Dismiss** (Doc. No. [167])[34]

      *1.*     *Legal Standard[35]*

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than conclusions,' [as] [c]onclusory allegations are not entitled to the assumption of

---

[34]  While the shotgun pleading holding is determinative, the Court considers portions of the remaining grounds of the pending motions to dismiss in the interest of caution.

[35]  This same legal standard also applies to the individual motions to dismiss to the extent that they also raise failure to state a claim grounds.

truth." <u>Id.</u> (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" <u>Id.</u>; <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . .") and <u>Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention</u>, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 555–56. In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation

that discovery will reveal evidence" of the claim. <u>Twombly</u>, 550 U.S. at 556. A complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements." <u>Id.</u> at 545. Although Rule 8(a)(2) does not require a complaint to contain "'detailed factual allegations,'" the Rule does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 545).[36]

As to the fraud claims, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Eleventh Circuit has held that:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

---

[36] Other legal standards will be discussed as needed in the context of the Order.

<u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1237 (11th Cir. 2008) (citations omitted).

"To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (citing <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1380–81 (11th Cir.1997)).

The Court recognizes that all Defendants have raised arguments that are in the nature of affirmative defenses. As stated above, the Eleventh Circuit has held that "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss" unless the defense appears on the face of the complaint. <u>Quiller v. Barclays Am./Credit, Inc.</u>, 727 F.2d 1067, 1069 (11th Cir. 1984), <u>on reh'g</u>, 764 F.2d 1400 (11th Cir. 1985) ("Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an

affirmative defense, so long as the defense clearly appears on the face of the complaint.").[37]

### 2.   *Express Disclaimers*

Defendants argue that Plaintiffs' claims (with two exceptions)[38] are barred by their express disclaimers. Doc. No. [167-1], 30. More specifically, Defendants assert that "Plaintiffs signed investment contracts expressly disclaiming reliance on any representations by Defendants and warranting that they had obtained advice from their own advisors and were aware of the transaction's risks." Doc. No. [167-1], 31 (emphasis omitted).

Defendants state the following:

> The PPMs for both transactions make clear that investors should not rely on them as legal or tax advice: "PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL, TAX, INVESTMENT,

---

[37] Here, the affirmative defenses of disclaimer and statute of limitations appear on the face of the Second Amended Complaint, which includes a section on the "limitation period" and equitable and statutory tolling. See Doc. No. [166], § VII, ¶¶ 285-92; see also Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG, 341 F. App'x 487, 496 (11th Cir. 2009) (looking to contract's merger clause and disclaimer provisions to affirm district court's dismissal of fraud/RICO complaint).

[38] Said exceptions are the negligence claim against the Foothills Defendants and the breach of fiduciary duty claims alleged against what Plaintiffs label as the "Professional Defendants," i.e., Peachtree, Davis, Bush, Old Ivy, Carbonara, Tennille, Roberts, Bryan Cave, and Warren Averett. See Doc. No. [167-1], 34 n.8; see also Doc. No. [166], 222.

OR ACCOUNTING ADVICE." Exs. B & C, at ii.[39] The PPMs further admonish investors to engage their own advisors: "EACH PROSPECTIVE INVESTOR SHOULD CONSULT ITS ADVISORS AS TO THE FUND AND THIS OFFERING AND AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING AN INVESTMENT IN THE UNITS." Exs. B & C, at ii; <u>see also</u> Exs. B & C, at 35 (urging investors to "consult their own tax advisors").[40] The PPMs also repeatedly caution that the transactions involve numerous risks, including the risk that the claimed deductions might be rejected: "It is possible that the tax benefits to be claimed by the Fund or the allocation of items of income, gain, loss, deduction and credit among Members will be challenged by the IRS and that such challenge will be upheld by the courts." Exs. B & C, at 15;[41] <u>see also</u> Exs. B & C, at 7 ("An investment in Units is subject to substantial risks. <u>See</u> 'Risk Factors.'").[42] The PPMs likewise expressly disavow any warranty that investors will actually secure a tax benefit: "[N]o representation or warranty of any kind is made concerning any of the tax consequences of participating in the Fund." Exs. B & C, at 15.[43]

Doc. No. [167-1], 21–22.

---

[39] The Exhibits are found in the record at Doc. No. [167-2], 60, 122.

[40] The Exhibits are found in the record at Doc. No. [167-2], 60, 122.

[41] The Exhibits are found in the record at Doc. No. [167-2], 79, 141.

[42] The Exhibits are found in the record at Doc. No. [167-2], 18, 71, 133.

[43] The Exhibits are found in the record at Doc. No. [167-2], 79, 141.

Defendants also cite language in the Subscription Membership Interest Agreement signed by Plaintiffs as follows:

> Purchaser acknowledges that he and/or any Purchaser Representative, have had the opportunity to ask questions of and to receive satisfactory answers from the Company concerning the terms and conditions of an investment in the Company, have sufficient and adequate information upon which to base Purchaser's decision to acquire the Interest, and *are not relying upon any representation or warranty of the Company[44] or of anyone acting or purporting to act on its behalf*.

Doc. No. [167-1], 31 (emphasis added).[45]

Defendants assert that "[s]uch a contractual 'disclaimer' of reliance is enforceable, unless the plaintiff properly 'rescind[s] the contract,' which Plaintiffs have not done." Doc. No. [167-1], 31. Defendants assert that "[b]ecause Plaintiffs cannot establish reliance on any Defendant's representation, their claims fail as a matter of law." Id.

Defendants cite a number of cases in support of their position. Doc. No. [167-1], 32–33 (citing Novare Grp., Inc. v. Sarif, 290 Ga. 186, 190, 718 S.E.2d 304, 309 (2011) ("While justifiable reliance may be a jury question in a fraud case

---

[44]  The term company was defined as the "Fund" at issue.

[45]  This language is located in the record at Doc. No. [167-2], 175, 181, 186.

where no contract exists or where the contract has become void, it is a question of law in a case where the contract language prevails and the contract's merger clause[46] precludes reliance on oral representations."); <u>TriState Consumer</u>, 823 F. Supp. 2d at 1320 (dismissing fraud claims based on a non-reliance clause, and collecting cases enforcing such clauses); <u>Landale Enters., Inc. v. Berry</u>, 676 F.2d 506, 508 (11th Cir. 1982) (holding in a case that involved an allegation of defendants' misrepresentation of the net annual income of a business during negotiations that a "specific disclaimer of reliance on the representations defeats the fraud claim[s].").

In opposition, Plaintiffs argue that the allege disclaimers do not negate justifiable reliance as a matter of law. Doc. No. [176], 17.[47] Plaintiffs argue that

---

[46] "A merger or integration clause essentially 'operates as a disclaimer of all representations not made on the face of the contract.'" <u>C & C Fam. Tr. 04/04/05 ex rel. Cox-Ott v. AXA Equitable Life Ins. Co.</u>, 44 F. Supp. 3d 1247, 1256–57 (N.D. Ga. 2014), <u>aff'd sub nom. C&C Fam. Tr. 04/04/05 v. AXA Equitable Life Ins. Co.</u>, 654 F. App'x 429 (11th Cir. 2016) (quoting <u>Thomas v. Garrett</u>, 265 Ga. 395, 456 S.E.2d 573, 574 (1995). "The purpose of a merger clause is to preclude any unilateral modification of a written contract through evidence of preexisting terms which were not incorporated therein." <u>Id.</u> (quotations omitted).

[47] Here, Plaintiffs reassert their incomplete document argument found in their Motion to Exclude. Doc. No. [176], 17. The Court's prior ruling denying said Motion controls. And Defendants argue correct that "Plaintiffs don't explain why or how those materials have anything to do with their express disclaimers of reliance." Doc. No. [190], 11.

there are numerous factual issues that preclude dismissal based on the alleged disclaimers and cite Judge Amy Totenberg's ruling in <u>Lechter v. Aprio, LLP</u>, 565 F. Supp. 3d 1279, 1322 (N.D. Ga. 2021) in support of their argument. Doc. No. [176], 18.[48] More specifically, Plaintiffs assert that while a certain paragraph of the Subscription Agreement states that "Plaintiffs consulted their own counsel and other advisors regarding the tax consequences of investing in the Syndicate, it does not in any way say that the Defendants did not provide tax advice." Doc. No. [176], 19. Plaintiffs further assert that "the PPMs contained an analysis of tax risks, which is tax advice [and] disclaimers that are contradicted by other language contained in the same document do not justify dismissal." Doc. No. [176], 19. Plaintiffs state that "[t]he so-called disclaimers contained in the Subscription Agreements and PPMs, at best, equivocally point out certain risks and suggest that investors discuss the tax consequences with their tax advisor or

---

[48] In <u>Lechter</u>, when presented with defendants' arguments concerning disclaimers in a conservation tax easement context, the court held that there were "factual questions as to whether Plaintiffs viewed any of Defendants as their own tax advisors," and that lingering factual questions rendered it "premature" to "determine how the disclaimers should be read in conjunction with any additional written or oral misrepresentations [d]efendants have made, and whether [p]laintiffs should have understood these disclaimers as qualifying any other written or oral misrepresentations [d]efendants may have made." <u>Lechter v. Aprio, LLP</u>, 565 F. Supp. 3d 1279, 1322 (N.D. Ga. 2021).

CPA." Id. at 18. Plaintiffs state that the disclaimers "do not, however, disclose that Defendants knew the deductions would be disallowed if scrutinized by the IRS." Id. at 20. Lastly, Plaintiffs argue that "Defendants have not made a showing that the benefit of any disclaimers extends to them." Id. at 22.

In reply, Defendants argue that Plaintiffs' attempt to avoid the effect of the disclaimers fail because their citation of authority is distinguishable in that the cited cases "did not consider disclaimers like those at issue here, where *Plaintiffs themselves* disclaimed reliance on *any* representations by Defendants or their agents or advisors." Doc. No. [190], 11 (emphasis in original). Defendants also assert that there is no contradiction between the broad disclaimer and the statement in their contracts about "information relating to federal income tax." Id. at 12. As to Plaintiffs' remaining arguments, Defendants argue that "Plaintiffs cannot expressly disclaim reliance on 'any representation' from Defendants, and then argue that they in fact relied on such a representation." Id. at 13 (citations omitted).

Contrary to Plaintiffs' arguments, the Court finds that this issue can be determined as a matter of law. See Sarif, 290 Ga. at 190, 718 S.E.2d at 309 ("While justifiable reliance may be a jury question in a fraud case where no contract exists

50

or where the contract has become void, it is a question of law in a case where the

contract language prevails and the contract's merger clause precludes reliance on

oral representations."). [49] The Court agrees that Plaintiffs' citation of authority in

_____

[49] Here, the Court sets forth opinions of the Eleventh Circuit and the Georgia Court of Appeals from which the Court has derived guidance on the question of whether reliance is at issue for the RICO claims:

> We found that a plaintiff does not have to prove reliance on a fraudulent omission of material information to sustain a claim for mail or wire fraud. Id. at 1361. But finding that a defendant committed a predicate racketeering offense, such as mail or wire fraud, is not the same as finding that it committed a RICO violation. Civil RICO plaintiffs must sufficiently plead both racketeering activity and that the activity caused them some injury. "This is true even when a criminal conviction for the underlying racketeering activity would not require a showing of actual injury, as is the case with mail and wire fraud." Beck v. Prupis, 162 F.3d 1090, 1095 (11th Cir. 1998); see also Pelletier, 921 F.2d at 1499. Thus, Kemp provides no relief from the requirement that civil RICO plaintiffs properly plead proximate cause for their injuries. Because the plaintiffs have not pled that they or anyone else relied on Spirit's alleged misrepresentations in purchasing their tickets—and, thus, have not shown that they were injured "by reason of" a RICO violation—they have failed to state a claim upon which relief may be granted.

Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1351 (11th Cir. 2016).

> With respect to the predicate acts of federal mail and wire fraud, it is true that a plaintiff is not required to prove "first-party reliance" to sustain a civil RICO claim; that is, the plaintiff is not required to prove that he himself reasonably relied on the alleged fraudulent misrepresentations of the defendant made by mail or wire. Pollman v. Swan, 314 Ga.

opposition to Defendants' arguments is distinguishable on the ground that the disclaimers in the cited cases were not comprehensive as compared to the disclaimers at issue in the case *sub judice*. <u>See</u> <u>Raysoni</u>, 296 Ga. at 158 ("[T]he scope of [the defendants' disclaimer] is not comprehensive"); <u>Lechter</u>, 565 F. Supp. 3d at 1322 (holding that defendants' non-comprehensive disclaimers left questions

---

> App. 5, 6, 723 S.E.2d 290 (2011). <u>See</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 650–653, 128 S. Ct. 2131, 170 L.Ed.2d 1012 (2008); <u>Pollman v. Swan</u>, 289 Ga. 767, 768(1), 716 S.E.2d 191 (2011). But a plaintiff still must show proximate causation, namely, that a RICO violation "led directly to the plaintiff's injuries." (Citations and punctuation omitted.) <u>Pollman</u>, 314 Ga. App. at 7, 723 S.E.2d 290. And given this proximate cause requirement, even though a plaintiff need not always prove "first-party reliance," none of this is to say that a RICO plaintiff who alleges injury "by reason of" a pattern of mail [or wire] fraud can prevail without showing that someone relied on the defendant's misrepresentations. In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. (Emphasis in original.) <u>Pollman</u>, 314 Ga. App. at 6, 723 S.E.2d 290, quoting <u>Bridge</u>, 553 U.S. at 658, 128 S. Ct. 2131.
>
> <u>Vernon v. Assurance Forensic Acct., LLC</u>, 333 Ga. App. 377, 392–93, 774 S.E.2d 197, 211 (2015); <u>see also</u> <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F.3d 1330, 1348 (11th Cir. 2011) ("Where the highest court [in the state] . . . has spoken on the topic, we follow its rule. Where that court has not spoken, however, we must predict how the highest court would decide this case. Decisions of the intermediate appellate courts . . . provide data for this prediction. As a general matter, we must follow the decisions of these intermediate courts. But we may disregard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise.") (citations omitted).

regarding whether plaintiffs relied on other "advice and representations" and plaintiffs' allegations raised a plausible inference that they viewed defendants' as their own tax advisors).

Under Georgia law, when an allegedly defrauded party elects to not rescind the contract, but instead, affirms the contract and sues for damages resulting from fraud, "that party is bound by the contract's terms and is subject to any defenses which may be based on the contract." Hightower v. Century 21 Farish Realty, 214 Ga. App. 522, 524, 448 S.E.2d 271, 273 (1994).

Also "under Georgia law, 'the mere presence of a disclaimer,' regardless of whether or not the plaintiff saw it, can 'render . . . reliance unreasonable.'" Middleton v. Int'l Bus. Machines Corp., 787 F. App'x 619, 622 (11th Cir. 2019) (citing Atwater v. Nat'l Football League Players Ass'n, 626 F.3d 1170, 1183 (11th Cir. 2010)) (cleaned up). In addition, "[w]here a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract." Novare Grp., Inc., 290 Ga. at 190, 718 S.E.2d at 309. "The clause 'operates as a disclaimer, establishing that the written contract completely and comprehensively represents all of the parties' agreement and thus bars plaintiffs from asserting reliance on the alleged

misrepresentation not contained within the contract.'" Klopfenstein v. Deutsche

Bank Sec., Inc., No. 1:14-CV-278-TCB, 2014 WL 12521383, at *7 (N.D. Ga. May 13,

2014), aff'd, 592 F. App'x 812 (11th Cir. 2014) (citations omitted); see also First

Data POS, Inc. v. Willis, 273 Ga. 792, 794–95, 546 S.E.2d 781, 784–85 (2001)

("Where a conflict exists between oral and written representations, . . . if the

parties have reduced their agreement to writing, all oral representations made

antecedent to execution of the written contract are merged into and extinguished

by the contract and are not binding upon the parties . . . . It is for this reason that

our own Court of Appeals has recently held that a RICO count alleging theft by

deception based upon pre-contractual representations is foreclosed by the

written terms of a valid contractual merger clause."); cf. Extra Equipamentos E

Exportacao Ltda. v. Case Corp., 541 F.3d 719, 724 (7th Cir. 2008) ("No-reliance

clauses serve a legitimate purpose in closing a loophole in contract law . . . . The

purpose of such a clause is to head off a suit for fraud . . . .").

     To this regard, Plaintiffs' allegations of promises or omissions must be

viewed in the context of the written disclaimer statements contained in the PPMs

and Subscription Agreements. In the case *sub judice*, the above-stated language

of the Subscription Agreement bars Plaintiffs' fraud and fraud-based claims—

and eliminates the basis for the RICO claims. As for Plaintiffs' argument that the disclaimers do not, however, disclose that Defendants knew the deductions would be disallowed if scrutinized by the IRS, "[i]t is clearly established under Georgia law that a party may not be held liable for fraud based upon the concealment of material facts in the absence of an obligation to disclose." ADP, Inc. v. Cothern-Varnadore Chevrolet-Olds, Inc., No. CV207-46, 2008 WL 11348455, at *4 (S.D. Ga. Mar. 11, 2008) (citing Infrasource v. Hahn Yalena Corp., 272 Ga. App. 703, 705, 613 S.E.2d 144, 146 (2005)). "In the absence of a confidential relationship,[50] no duty to disclose exists between parties engaged in arms-length business transactions." Id.; see also Bogle v. Bragg, 248 Ga. App. 632, 636, 548

---

[50] Under the Georgia Code:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners; principal and agent; guardian or conservator and minor or ward; personal representative or temporary administrator and heir, legatee, devisee, or beneficiary; trustee and beneficiary; and similar fiduciary relationships.

O.C.G.A. § 23-2-58; see also ADP, 2008 WL 11348455, at *4. The Court will address confidential relationship/fiduciary duty, infra.

S.E.2d 396, 401 (2001) ("Suppression of a material fact is fraud only if there is a duty to disclose arising from a fiduciary relationship or the particular circumstances of the case.").

In addition, one court has held that under Georgia law, the relationship between merger clauses and "'fraudulent concealment' theory of liability appears limited to claims arising out of the residential purchase of property" or where there is a duty to disclose.[51] See Partner Servs., Inc. v. Avanade, Inc., No. 1:13-CV-0001-AT, 2013 WL 12180442, at *8 (N.D. Ga. Aug. 26, 2013); La Famiglia Tr. v. O'Connor, No. 1:10-CV-1438-AT, 2012 WL 12832383, at *14 (N.D. Ga. Sept. 28, 2012) ("Therefore, because the rule barring the applicability of merger clauses

---

[51] This case is not a residential property purchase case under the factual allegations of Plaintiffs' Second Amended Complaint which show that for most cases in the conservation easement context, "the individuals participate in the Syndicate through a 'Fund,' another LLC formed for the purpose of acquiring an interest in the Syndicate and thereby allowing for several individuals to participate in a single conservation easement transaction." Doc. No. [166], ¶ 47. Without more, the Court also declines to apply securities fraud litigation omission-reliance principles here. See Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) ("Finally, the [plaintiffs] contend that they were justified in relying on [d]efendant–[a]ppellee's omissions. To support this argument, the [plaintiffs] cite a federal securities fraud case where the plaintiffs were not required to prove reliance on omissions. In Affiliated, the Supreme Court held that it was sufficient for plaintiffs to prove the facts withheld were material to the investment decision. However, the [plaintiffs] point to no authority that has applied this exception to the rule of justifiable reliance to a common law fraud in the inducement claim.") (citations omitted).

to omissions or concealment of facts proposed by the [t]rust is inapplicable to this non-residential owner/seller/buyer case and also because there was no duty for the [defendant's] to disclose,[52] the [c]ourt concludes that the merger clause in the [i]nvestment [a]greement does apply to any alleged omissions or concealment of facts by the [defendant's].").

The Court also notes that in <u>Mergens v. Dreyfoos</u>, 166 F.3d 1114, 1119 & n.3 (11th Cir. 1999), the Eleventh Circuit noted that "misrepresentations can so easily be characterized as omissions" and rejected an argument that a fraud claim premised on omissions is viable in the face of a contractual merger clause.[53] <u>But see</u> <u>Miller v. Lomax</u>, 266 Ga. App. 93, 98, 596 S.E.2d 232, 239 (2004) (indicating that a merger clause did not estop plaintiffs who were not relying on express

---

[52]  As previously indicated, the Court will address duty to disclose/fiduciary duties in the latter part of this Order, <u>infra</u>.

[53] The Court recognizes that the Eleventh Circuit was considering fraud under Florida law in this case. However, the <u>Mergens</u> case still provides guidance for this Court's ruling in the case *sub judice*. The Court also recognizes that the Georgia Court of Appeals has held that "general cautionary or risk-disclosing language contained in documents supplied as part of the sale of securities does not automatically neutralize specific misstatements or omissions of fact made to the purchaser." <u>Greenwald v. Odom</u>, 314 Ga. App. 46, 54, 723 S.E.2d 305, 314 (2012). However, it appears that in the case *sub judice*, Plaintiffs are arguing that the "LLC interest" at issue is "not a security as a matter of law." (Doc. No. [176], 45) (emphasis omitted). Thus, without more, the Court relies upon the guidance provided by the Eleventh Circuit in the <u>Mergens</u> case.

misrepresentations to establish fraud, but fraud through suppression of a material fact).[54]

The Court has also reviewed Plaintiffs' factual questions and contradictory statements arguments (Doc. No. [176], 19); however, after review, the Court is unable to agree that Plaintiffs have shown contradiction or that factual questions exist such that the disclaimers should not be considered at this time.

Lastly, the Court also agrees that Defendants can invoke the disclaimers at issue even if they were not signatories to the Subscription Agreements. As correctly noted by Defendants, the disclaimers here extend to "anyone acting or purporting to act on [the Fund's] behalf." Doc. No. [190], 14; citing [167-2], 175, 181, 186. See Curtis, 341 F. App'x at 493 (reviewing an agreement that contained a merger and "no-reliance clause" and stating that the "merger clause does not apply just to the parties to the contract"); Textile Rubber & Chem. Co. v. Thermo-

_____

[54] While the Court has cited to case law concerning merger clauses, the additional clauses at issue in the case *sub judice* are the disclaimer and no-reliance clauses, which the Court has given legal effect. See Sysco Merch. & Supply Chain Servs., Inc. v. Remcoda, LLC, No. 4:22-CV-02075, 2023 WL 1781810, at *6 (S.D. Tex. Feb. 6, 2023) ("In other words, pure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement do not disclaim reliance. On the other hand, when parties expressly disclaim reliance on other representations, that disclaimer of reliance must be given legal effect.") (citations omitted) (cleaned up).

Flex Techs., Inc., 308 Ga. App. 89, 97, 706 S.E.2d 728, 735 (2011) ("It is true that under certain circumstances, an agent of a contracting party may be entitled to rely upon a disclaimer or merger clause contained in the contract to preclude claims against the individual agent for his or her alleged representations."); Yee v. Barnwell, 193 Ga. App. 820, 822, 389 S.E.2d 392, 394 (1989) ("As agent for the company, [defendant] was included within the protection of the merger clause.").

In summary, the Court upholds Defendants' argument that Plaintiffs' claims (with the exception of the negligence and fiduciary duty claims) are barred by express disclaimers at least to the extent Plaintiffs have not plausibly pled a confidential relationship/duty to disclose (to be discussed, infra).

### 3.   Recission

Defendants argue that Plaintiffs' rescission claim fails for the following three reasons: (1) Plaintiffs waived the right to seek rescission by failing to timely announce their intention to rescind and by filing their original Complaint without a claim for rescission; (2) Plaintiffs have not tendered back their membership interests in the Funds; and (3) Plaintiffs are not in privity with any Defendant. Doc. No. [167-1], 34.

"The tort of fraud[,] including fraudulent inducement[,] has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." JPMorgan Chase Bank, N. A. v. Durie, 350 Ga. App. 769, 771, 830 S.E.2d 387, 390 (2019) (citations omitted). "'In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud.'" Ekeledo v. Amporful, 281 Ga. 817, 819(1), 642 S.E.2d 20 (2007) (citations omitted). "[T]he rule requiring one who seeks the rescission of a contract on the ground of fraud to restore, or offer to restore, the consideration received, as a condition precedent to bringing the action, is settled" in the State of Georgia. Williams v. Fouche, 157 Ga. 227(1), 121 S.E. 217 (1924). "Accepting and retaining the benefits under the contract alleged to be fraudulent after discovering the alleged fraud constitutes an affirmance." Garcia v. Charles Evans BMW, Inc., 222 Ga. App. 121, 122, 473 S.E.2d 588, 589 (1996); see also GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc., 245 Ga. App. 460, 463, 537 S.E.2d 677, 681 (2000) ("To effect a complete rescission, all the parties must be returned as nearly as possible to the status quo ante; there is no room for one

party to have its cake and eat it, too. Ordinarily, then, one cannot in equity seek to rescind a contract . . . on the ground of fraud, and at the same time retain the benefits derived from that contract . . . .").

In <u>Turk</u>, Judge Totenberg concluded that "[u]nder binding case law, [p]laintiffs were required to promptly raise a rescission claim as soon as they discovered the alleged fraud," and "[t]he fact that [p]laintiffs may not have discovered that [d]efendants had a specific defense to the allegations of fraud until several months later [did] not excuse the delay." 593 F. Supp. 3d at 1315. Judge Totenberg further held that "[p]laintiffs' rescission claim fail[ed] on the ground that none of the [p]laintiffs were in privity with [d]efendants," as the agreements that plaintiffs sought to rescind were between plaintiffs and the LLCs and no defendant was a party to the agreements at issue. <u>Id.</u> at 1316.

In the case *sub judice*, in opposition to the Defendants' Motion to Dismiss, Plaintiffs acknowledge the ruling in <u>Turk</u> with respect to the rescission claim, but argue that Defendants lack standing to object to the rescission of agreements that they are not parties to. Doc. No. [176], 23. Plaintiffs also raise an inequity argument by stating: "[i]f Defendants are permitted to enforce purported

disclaimers despite not being parties to the agreements, Plaintiffs should be allowed to amend to assert a rescission claim against the Syndicates." Id.

After review, the Court agrees that the rescission claim has been waived as a matter of law by the failure to raise rescission in the initial complaint. See Turk, 593 F. Supp. 3d at 1315 (finding applicable to the facts of the case the holding of Georgia law that plaintiffs can waive "the right to bring a rescission claim by failing to include it in the original complaint") (citing Weinstock v. Novare Grp., Inc., 309 Ga. App. 351, 710 S.E.2d 150 (2011)); Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols. Inc., 823 F. Supp. 2d 1306, 1321 (N.D. Ga. 2011) ("[F]ailure to allege rescission in the original complaint would bar [plaintiff] from reviving the claim."); Megel v. Donaldson, 288 Ga. App. 510, 515, 654 S.E.2d 656, 661 (2007) (holding that plaintiff "lost her opportunity to seek rescission" of an agreement by choosing "not to pursue any claim for rescission until filing the amended complaint"); see also Holloman Horton, Inc., 241 Ga. App. 141, 146–47, 524 S.E.2d 790, 795–96 (1999) ("[B]y affirming the contract and seeking damages resulting from the alleged fraud without alleging any cause of action for rescission, [there] constituted an election of remedies and a waiver of any rescission claim. And the [plaintiff's] attempt to amend their complaint to add a count seeking equitable

relief and rescission over two years after suit was filed, and after [defendants] amended their motion for summary judgment to raise this issue, could not revive [plaintiff's] claim for rescission.").

The rescission claim also fails for failure to tender back the consideration received from the Subscription Agreements. The Court also upholds Defendants' lack of privity argument. Doc. No. [167-1], 36. The Court recognizes Plaintiffs' equitable considerations argument, but in the absence of binding authority, the Court declines to permit a third amended complaint as amendment would address the privity issue, but would not resolve (or otherwise correct) the waiver issue. See Holloman, 241 Ga. App. at 146–47, 524 S.E.2d at 795–96 ("Once a claim for rescission is waived, it cannot be revived."). The Court is also unaware of any authority that holds "that a party may be relieved of its obligation to announce its intention to rescind" prior to filing a lawsuit. Partner Servs., 2013 WL 12180442, at *4.

### 4.    Breach of Fiduciary Duty and Aiding and Abetting

In their Complaint, Plaintiffs bring a claim for breach of fiduciary duty and disgorgement (Count VI) against the following defendants: Peachtree, Davis, Bush, Old Ivy, Carbonara, Tennille, Roberts, Bryan Cave and Warren Averett.

Doc. No. [166], 222.[55] Plaintiffs bring a claim for aiding and abetting breaches of fiduciary duty (Count VII) against all Defendants. Id. at 224.

In their Joint Motion to Dismiss, Defendants assert that Plaintiffs fail to state a claim for breach of fiduciary duty and aiding and abetting fiduciary duties. Doc. No. [167-1], 51. More specifically, Defendants argue that "Plaintiffs do not plausibly allege 'the existence of a fiduciary duty'—an essential element of their claims." Id. Defendants state that Plaintiffs "do not explain how any Defendant agreed to become Plaintiffs' fiduciary, or even when these purported fiduciary relationships began." Id. Defendants acknowledge that the PPMs contain language that the Manager of the Fund will be accountable to the fund as a fiduciary, but assert that "[a]t best . . . Plaintiffs have pleaded facts identifying a fiduciary duty owed by nonparties to other nonparties (the land managers to the Funds), and do not allege these nonparties breached a duty." Id. at 52.

In response, Plaintiffs assert that they have sufficiently pleaded their breach of fiduciary duty and aiding and abetting claims. Doc. No. [176], 48.

---

[55]  Plaintiffs collectively refer to said Defendants as the "Professional Defendants" in the Second Amended Complaint (Doc. No. [166], 222) and as the "Fiduciary Defendants" in their briefing. Doc. No. [176], 48.

Plaintiffs assert that they "have not based the existence of a fiduciary duty on this language in the PPMs and a proper review of the allegations demonstrates that this element of the claim is properly pleaded." Id. at 49. Plaintiffs list certain paragraphs in their Second Amended Complaint and state that these allegations are sufficient to meet the definition of a confidential relationship directly related to the promotion and/or implementation of the SCE Strategy. Id. at 50–51. Those paragraphs are:  Doc. No. [166], ¶¶ 57, 86, 88–93, 97–98, 124–29, 133–34 (for Peachtree, Davis, and Bush); 61, 87 (for Old Ivy and Carbonara); 64, 101–02, 107, 137–38 (for Tennille and Roberts); 73–75, 86 (for Bryan Cave); and 78–79, 107–12, 146–55 (for Warren Averett). Plaintiffs also cite case law indicating that the existence of a confidential relationship is ordinarily a question for the jury. Doc. No. [176], 50 (citing Yarbrough v. Kirkland, 249 Ga. App. 523, 527 (2001)).

"A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." All Bus. Corp. v. Choi, 280 Ga. App. 618, 621,

634 S.E.2d 400, 403 (2006) (quoting <u>Bienert v. Dickerson</u>, 276 Ga. App. 621, 623(2), 624 S.E.2d 245 (2005)).[56]

As to the first element, the Court looks to O.C.G.A. § 23-2-58 which provides that a confidential, fiduciary relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." <u>Yarbrough v. Kirkland</u>, 249 Ga. App. 523, 527, 548 S.E.2d 670, 673 (2001) (citing O.C.G.A. § 23-2-58); <u>see also</u> <u>Urvan v. TVP Ventures, LLC</u>, No. 1:20-CV-153-TCB, 2021 WL 8648896, at *20 (N.D. Ga. Mar. 25, 2021), <u>on</u>

---

[56] The four elements for aiding and abetting a breach of fiduciary duty are as follows:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

<u>Cottrell v. Smith</u>, 299 Ga. 517, 532, 788 S.E.2d 772, 786 (2016).

reconsideration in part, No. 1:20-CV-153-TCB, 2021 WL 8572796 (N.D. Ga. June 29, 2021).

The Eleventh Circuit has further held:

> Business relationships are not ordinarily confidential relationships. See Williams v. Dresser Indus., Inc. 120 F.3d 1163, 1168 (11th Cir.1997). The fact that parties are friends or prior business associates, or have trust and confidence in each other's integrity, does not automatically establish a confidential relationship. See id. Examples of a confidential relationship in business include parties with "a history of business dealings with each other" or a "relationship that is not arms-length, such as a partnership or principal and agent." Id.

Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009).

After reviewing Plaintiffs' arguments and string-citations to the Second Amended Complaint, the Court upholds Defendants' arguments and concludes that Plaintiffs have not plausibly alleged the existence of a fiduciary duty. As correctly stated by Defendants, "[m]any of the cited paragraphs merely recount ordinary business relationships, which as stated above in the Wilcohombe case, 'are not ordinarily confidential relationships.'" Doc. No. [190], 26. In addition, other cited paragraphs describe relationships between Defendants and non-parties, such as the Syndicates/holding companies. Id. "Plaintiffs also offer

no authority to support their theory that Defendants' alleged 'superior knowledge' is enough to create a fiduciary duty." Id. See Dixie Diners Atlanta, Inc. v. Gwinnett Fed. Bank, FSB, 211 Ga. App. 364, 366, 439 S.E.2d 53, 56 (1993) (indicating that there was no confidential relationship even where evidence showed that agent "had experience, knowledge, and expertise in the area of SBA loans, that defendants did not, and consequently that they relied" on the agent). Further, the Court is unable to agree that this issue cannot be decided at the Motion to Dismiss stage. See Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1168 (11th Cir. 1997) ("Although the existence of a confidential relationship depends upon the circumstances and therefore is generally a jury issue, when the facts do not authorize a finding of a confidential relationship, the trial court does not err in deciding the issue as a matter of law."); see, e.g., Abdullahi v. Bank of Am., NA, 549 F. App'x 864, 868 (11th Cir. 2013) (affirming trial court's dismissal and stating that plaintiff "has failed to allege sufficiently the existence of a confidential relationship with [d]efendants"). [57]

_____

[57] The Court recognizes that in Hoover, the district court found a basis for confidential relationship for the "sponsor" category of defendants, who were "the architects of the SCE Strategy and induced [p]laintiffs to invest in the syndicates and take erroneous tax positions both through misrepresentations and by concealing facts about the bogus

### 5.   *Negligence*

Plaintiffs allege a negligence claim against Foothills and Clabough. Doc. No. [166], 228. Plaintiffs allege that "Foothills and Clabough owed Plaintiffs and the Class members a duty to comply with the applicable standards of care [and] Foothills and Clabough failed to meet their applicable standards of care." Doc. No. [166], ¶¶ 371, 373.

In their individual Motion to Dismiss, said Defendants argue that Plaintiffs have failed to state a claim. Doc. No. [174-1], 14. Defendants argue that the Second Amended Complaint is "devoid of any allegations as to what the standard of care was, what specific conduct of the FLC Defendants breached it or how any such alleged breach caused damage to Plaintiffs." Id.

In their response brief, Plaintiffs do not mention the word "duty." Plaintiffs' argument, instead, focuses on breach and causation. Doc. No. [181], 13.

---

nature of the appraisals from them." Hoover v. Strategic Capital Partners, LLC, No. 1:21-cv-1299, ECF No. 383 (N.D. Ga. Aug. 21, 2023) (citing Boyd v. JohnGalt Holdings, LLC, 294 Ga. 640, 646, 755 S.E.2d 675, 681 (2014) (looking to particular circumstances of "intentionally conceal[ing] facts from a plaintiff, 'hoping to obtain a benefit that could be secured only by silence and concealing the truth'" to determine if a confidential relationship exists). The Hoover case serves as persuasive authority for finding a plausible fiduciary duty claim as to the sponsor defendants. However, the shotgun pleading (dismissal) analysis of this Order controls.

As correctly noted by the Defendants Foothills and Clabough, "Plaintiffs have failed to cite any authority supporting their contention that [Foothills and Clabough] owed them any duty of care." Doc. No. [194], 9. "To state a cause of action for negligence in Georgia, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiffs' legally protected interest resulting from the breach." Shortnacy v. N. Atlanta Internal Med., P.C., 252 Ga. App. 321, 325, 556 S.E.2d 209, 213 (2001). In the absence of allegations showing a legal duty, Plaintiffs have failed to state a claim upon which relief can be granted as to the negligence count of the Second Amended Complaint.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Exclude or Disregard Extrinsic Evidence (Doc. No. [183]) is **DENIED.**

Defendants' Joint Motion to Dismiss (Doc. No. [167]) is **GRANTED**. In light of this ruling, the remaining individual defendant motions (Doc. Nos. [169];

[170]; [171]; [173]; [58] [174]; [175]) are **DEEMED MOOT**, with the exception that the Motion at Doc. No. [174] is **DENIED IN PART** as to the lack of personal jurisdiction ground and **GRANTED** as to the negligence claim.[59]

Plaintiffs' request for leave to amend is **DENIED**.[60]

Nothing further remaining for this Court's review, the Clerk is **DIRECTED** to enter judgment and close this civil action.

**IT IS SO ORDERED** this 27th day of September, 2023.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

---

[58] The Court notes that Defendant Warren Averett, LLC also requested oral argument. Doc. No. [173]. In light of the full opportunity for briefing (inclusive of page extensions), the Court exercises its discretion to decline to grant oral argument.

[59] "[B]ecause the Class Action Fairness Act ("CAFA") vested [this court] with original jurisdiction over this claim, 'there [is] no need for it to analyze supplemental jurisdiction.'" Cisneros v. Petland, Inc., 972 F.3d 1204, 1220 (11th Cir. 2020) (citing Wright Transp., Inc. v. Pilot Corp., 841 F.3d 1266, 1272–73 (11th Cir. 2016)).

[60] Lastly, the Court notes that there was no timely response by Peachtree Investment Solutions, LLC and Dwayne Peterson Davis to the Court's Order requiring them to comply with Local Rule 83.1(E)(4), NDGa. concerning attorney representation. (Doc. No. [200]). Said Defendants currently stand in default for such failure; however, no default judgment is issued based upon the ruling herein.